In the United States District Court
for the Southern District of Ohio
Western Division at Dayton

| | |
|---|---|
| Tammy Hatmaker, Stephen Hatmaker, and Kendall Peyton, | Case No. 3:17-cv-146 |
| *On behalf of themselves and those similarly situated*, | |
| Plaintiffs, | Judge |
| v. | |
| Papa John's Ohio, LLC; PJ Ohio, LLC; Serazen, LLC; BLD Brands, LLC; PJ Pizza Ohio, LLC; PJ Las Vegas, LLC; PJ North Carolina, LLC; and Doug Pak; | Jury Demand Endorsed Hereon |
| Defendants. | |

Class and Collective Action Complaint

1.  Tammy Hatmaker, Stephen Hatmaker, and Kendall Peyton, on behalf of themselves and all similarly-situated individuals, bring this action against Defendants Papa John's Ohio, LLC, PJ Ohio, LLC, PJ Pizza Ohio, LLC, Serazen, LLC, BLD Brands, LLC, PJ Las Vegas, LLC, PJ North Carolina, LLC, and Doug Pak (collectively "Defendants"). Plaintiffs seek appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiffs and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), the Ohio Constitution, Article II, Section 34a ("Section 34a"), O.R.C. § 4113.15 (Ohio's "Prompt Pay Act").

2. Defendants own and operate twenty-seven Papa John's Pizza restaurants in the Dayton, Ohio and Cincinnati, Ohio area, and a total of seventy-three Papa John's Pizza restaurants in Ohio, Nevada, and North Carolina, as a single integrated enterprise.

3. Serazen is the fourth largest Papa John's franchisee and the ninety-fifth largest restaurant franchise in the United States.

4. According to their website, Serazen is a multi-unit franchise investment and operations company. In addition to its seventy-three Papa John's Pizza restaurants, Serazen also owns and operates fifty Hardee's restaurants in North and South Carolina. Altogether, BLD Brands currently owns and operates 137 restaurants in ten states.

5. Plaintiff Tammy Hatmaker worked for Defendants as a pizza delivery driver at their Papa John's Pizza restaurant on Brandt Pike in Dayton, Ohio.

6. Plaintiff Stephen Hatmaker worked for Defendants as a pizza delivery driver at their Papa John's Pizza restaurant on Brandt Pike in Dayton, Ohio.

7. Plaintiff Kendall Peyton works for Defendants at their Papa John's Pizza restaurant on Airway Road in Dayton, Ohio.

8. Defendants have repeatedly violated the FLSA, Section 34a, and the Prompt Pay Act by improperly applying a tip credit to delivery driver wages, and by failing to adequately reimburse delivery drivers for their delivery expenses, and thereby failing to pay delivery drivers the legally mandated minimum wage for all hours worked, and minimum overtime rate for hours worked in excess of 40 per workweek.

9. Defendants maintain a policy and practice of failing to reimburse delivery drivers for costs and expenses essential to their employment, including but not limited to automobile

costs, gasoline, insurance, automobile maintenance expenses, cell phone expenses, GPS expenses, and other job-related expenses, causing Plaintiff's and similarly situated delivery drivers' wages to fall below minimum wage.

10.     At all relevant times, Defendants have failed to take reasonable steps to ensure delivery drivers received adequate reimbursement for their automobile and other job-related expenses.

11.     All delivery drivers at the Papa John's Pizza restaurants, including Plaintiffs, are subject to the same or similar employment policies and practices, including policies and practices with respect to wages and out-of-pocket expenses.

12.     Defendants maintain a policy and practice of underpaying their delivery drivers in violation of the FLSA, 29 U.S.C. § 201, *et seq.*, Section 34a, and the Prompt Pay Act, O.R.C. § 4113.15.

13.     Plaintiffs bring this action on behalf of themselves and similarly situated current and former delivery drivers who elect to opt in pursuant to FLSA, 29 U.S.C. § 216(b) to remedy violations of the FLSA wage and hour provisions by Defendants.

14.     Plaintiffs also bring this action on behalf of themselves and similarly situated current and former delivery drivers in Ohio, pursuant to Federal Rule of Civil Procedure 23, to remedy violations of Section 34a, the Prompt Pay Act, and O.R.C. § 2307.60.

## I.   Jurisdiction and Venue

15.     Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiffs' FLSA claims.

16.     Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Ohio law claims.

17.     Venue in this Court is proper under 28 U.S.C. § 1391(b).

## II.  Parties

### Plaintiffs

### Tammy Hatmaker

18.     Plaintiff Tammy Hatmaker is a citizen of the United States and resides in the Southern District of Ohio.  Further, at all times material herein Tammy Hatmaker worked within the boundaries of Southern District of Ohio.

19.     At all times relevant herein, Tammy Hatmaker was an "employee" of Defendants as defined in the FLSA and Section 34a.

20.     Tammy Hatmaker has given written consent to join this action, a copy of which is attached to this Class Action Complaint.

### Stephen Hatmaker

21.     Plaintiff Stephen Hatmaker is a citizen of the United States and resides in the Southern District of Ohio.  Further, at all times material herein Stephen Hatmaker worked within the boundaries of Southern District of Ohio.

22.     At all times relevant herein, Stephen Hatmaker was an "employee" of Defendants as defined in the FLSA and Section 34a.

23.     Stephen Hatmaker has given written consent to join this action, a copy of which is attached to this Class Action Complaint.

### Kendall Peyton

24.     Plaintiff Kendall Peyton is a citizen of the United States and resides in the Southern District of Ohio.  Further, at all times material herein Peyton has worked within the boundaries of Southern District of Ohio.

25.     At all times relevant herein, Peyton has been an "employee" of Defendants as defined in the FLSA and Section 34a.

26.     Peyton has given written consent to join this action, a copy of which is attached to this Class Action Complaint.

**Defendants**

27.     Defendants have jointly employed Plaintiffs and similarly situated delivery drivers at all times relevant.

28.     Each of the Defendants had control over Plaintiffs and similarly situated delivery drivers' working conditions.

29.     Defendants are part of a single integrated enterprise.

30.     At all relevant times, the Papa John's Pizza restaurants shared common management and were centrally controlled and/or owned by Doug Pak.

31.     At all relevant times, Defendants maintained control over labor relations at the Papa John's Pizza restaurants.

32.     During all relevant times, Defendants permitted employees to transfer or be shared by and between the Papa John's Pizza restaurants without retraining.

33.     Defendants suffer or permit Plaintiff and other delivery drivers to work.

34.     Defendants have direct or indirect control of the terms and conditions of Plaintiffs' work and the work of similarly situated delivery drivers.

**Papa John's Ohio, LLC**

35.     Defendant Papa John's Ohio, LLC is purportedly a foreign limited liability company, with its headquarters in California.

36.     Papa John's Ohio, LLC's owner and Chief Executive Officer is Doug Pak.

37.     Papa John's Ohio, LLC is headquartered at 20377 SW Acacia Street, 2nd Floor, Newport Beach, CA 92660.

38.     Papa John's Ohio, LLC is an "employer" of Plaintiffs and similarly situated delivery drivers as that term is defined by the FLSA and Section 34a.

39.     Upon information and belief, Papa John's Ohio, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, overtime wages, clock in/out procedures, and reimbursement of automobile expenses.

40.     Papa John's Ohio, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, expense reimbursements, and other practices.

41.     Papa John's Ohio, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

42.     Papa John's Ohio, LLC's gross revenue exceeds $500,000 per year.

**PJ Ohio, LLC**

43.     Defendant PJ Ohio, LLC is a foreign limited liability company, incorporated in Delaware, with its headquarters in California.

44.     PJ Ohio, LLC's owner and Chief Executive Officer is Doug Pak.

45.     PJ Ohio, LLC is headquartered at 20377 SW Acacia Street, 2nd Floor, Newport Beach, CA 92660.

46.     "PJ Ohio, LLC" is the corporate entity that appears on the paystubs Plaintiffs received for work they completed for Defendants.

47.     PJ Ohio, LLC is an "employer" of Plaintiffs and similarly situated delivery drivers as that term is defined by the FLSA and Section 34a.

48.     Upon information and belief, PJ Ohio, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, clock in/out procedures, and reimbursement of automobile expenses.

49.     PJ Ohio, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, expense reimbursements, and other practices.

50.     PJ Ohio, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

51.     PJ Ohio, LLC's gross revenue exceeds $500,000 per year.

**Serazen, LLC**

52.     Defendant Serazen, LLC is a foreign limited liability company, incorporated in Delaware, with its headquarters in California.

53.     Serazen, LLC's owner and Chief Executive Officer is Doug Pak.

54.     Serazen, LLC is headquartered at 20377 SW Acacia Street, 2nd Floor, Newport Beach, CA 92660.

55.     According to their website, bldbrands.com, Serazen, LLC "currently owns and operates 73 Papa John's in Las Vegas, Ohio, and North Carolina, and 50 Hardee's in North and South Carolina." http://bldbrands.com/?page_id=58

56.     The Franchise Times named Serazen, LLC the ninety-fifth largest restaurant franchise in the United States in 2015.

57.     Serazen, LLC is an "employer" of Plaintiffs and similarly situated delivery drivers as that term is defined by the FLSA and Section 34a.

58.     Upon information and belief, Serazen, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, clock in/out procedures, and reimbursement of automobile expenses.

59.     Serazen, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, expense reimbursements, and other practices.

60.     Serazen, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

61.     Serazen, LLC's gross revenue exceeds $500,000 per year.

**BLD Brands, LLC**

62.     Defendant BLD Brands, LLC is a foreign limited liability company, incorporated in Delaware, with its headquarters in California.

63. BLD Brands, LLC's owner and Chief Executive Officer is Doug Pak.

64. BLD Brands, LLC is headquartered at 20377 SW Acacia Street, 2nd Floor, Newport Beach, CA 92660.

65. According to their website, bldbrands.com, BLD Brands, LLC owns and operates three companies: (1) Serazen, LLC, which owns and operates 73 Papa John's franchises and 50 Hardee's franchises, (2) Spaghetti WHS, which is a 15-unit chain of full-service Italian restaurants, and (3) Ark09, a restaurant and retail management application developed and operated by BLD Brands.

66. BLD Brands, LLC is an "employer" of Plaintiffs and similarly situated delivery drivers as that term is defined by the FLSA and Section 34a.

67. Upon information and belief, BLD Brands, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, clock in/out procedures, and reimbursement of automobile expenses.

68. BLD Brands, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, expense reimbursements, and other practices.

69. BLD Brands, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

70. BLD Brands, LLC's gross revenue exceeds $500,000 per year.

**PJ Pizza Ohio, LLC**

71.     Defendant PJ Pizza Ohio, LLC is a foreign limited liability company, incorporated in Delaware, with its headquarters in California.

72.     PJ Pizza Ohio, LLC's owner and Chief Executive Officer is Doug Pak.

73.     PJ Pizza Ohio, LLC is headquartered at 20377 SW Acacia Street, 2nd Floor, Newport Beach, CA 92660.

74.     PJ Pizza Ohio, LLC is an "employer" of Plaintiffs and similarly situated delivery drivers as that term is defined by the FLSA and Section 34a.

75.     Upon information and belief, PJ Pizza Ohio, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, clock in/out procedures, and reimbursement of automobile expenses.

76.     PJ Pizza Ohio, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, expense reimbursements, and other practices.

77.     PJ Pizza Ohio, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

78.     PJ Pizza Ohio, LLC's gross revenue exceeds $500,000 per year.

**PJ Las Vegas, LLC**

79.     Defendant PJ Las Vegas, LLC is a foreign limited liability company, incorporated in Nevada, with its headquarters in California.

80.     PJ Las Vegas, LLC's owner and Chief Executive Officer is Doug Pak.

81.     PJ Las Vegas, LLC is headquartered at 20377 SW Acacia Street, 2nd Floor, Newport Beach, CA 92660.

82.     PJ Las Vegas, LLC is an "employer" of Plaintiffs and similarly situated delivery drivers as that term is defined by the FLSA and Section 34a.

83.     Upon information and belief, PJ Las Vegas, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, clock in/out procedures, and reimbursement of automobile expenses.

84.     PJ Las Vegas, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, expense reimbursements, and other practices.

85.     PJ Las Vegas, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

86.     PJ Las Vegas, LLC's gross revenue exceeds $500,000 per year.

**PJ North Carolina, LLC**

87.     Defendant PJ North Carolina, LLC is a foreign limited liability company, incorporated in Delaware, with its headquarters in California.

88.     PJ North Carolina, LLC's owner and Chief Executive Officer is Doug Pak.

89.     PJ North Carolina, LLC is headquartered at 20377 SW Acacia Street, 2nd Floor, Newport Beach, CA 92660.

90.     PJ North Carolina, LLC is an "employer" of Plaintiffs and similarly situated delivery drivers as that term is defined by the FLSA and Section 34a.

91. Upon information and belief, PJ North Carolina, LLC applies or causes to be applied substantially the same employment policies, practices, and procedures to all delivery drivers at all of its locations, including policies, practices, and procedures relating to payment of minimum wages, clock in/out procedures, and reimbursement of automobile expenses.

92. PJ North Carolina, LLC maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, expense reimbursements, and other practices.

93. PJ North Carolina, LLC has been and continues to be an enterprise engaged in "the production of goods for commerce" within the meaning of the phrase as used in the FLSA.

94. PJ North Carolina, LLC's gross revenue exceeds $500,000 per year.

**Doug Pak**

95. Defendant Doug Pak is the founder, owner, and operator of all of the Defendant entities.

96. Pak is the owner and CEO of BLD Brands, LLC.

97. Pak is the owner and CEO of Serazen, LLC.

98. Pak is the owner and CEO of Papa John's Ohio, LLC.

99. Pak is the owner and CEO of PJ Ohio, LLC.

100. Pak is the owner and CEO of PJ Pizza Ohio, LLC.

101. Pak is the owner and CEO of PJ Las Vegas, LLC.

102. Pak is the owner and CEO of PJ North Carolina, LLC.

103. Upon information and belief, Pak resides in Newport Beach, California.

104. Upon information and belief, Pak operates and controls the Defendant corporations from their headquarters at 20377 SW Acacia Street, 2nd Floor, Newport Beach, CA 92660.

105. At all relevant times, Pak has been an "employer" of Plaintiffs and similarly situated delivery drivers as that term is defined by the FLSA and Section 34a.

106. At all relevant times, Pak has been actively involved in managing the operations of the Papa John's Pizza restaurants.

107. At all relevant times, Pak has had control over Defendants' pay policies.

108. At all relevant times, Pak has had power over personnel and payroll decisions at the Papa John's Pizza restaurants.

109. At all relevant times, Pak has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

110. At all times relevant, Pak has had the power to transfer the assets and liabilities of each of the named corporate defendants.

111. At all relevant times, Pak has had the power to declare bankruptcy on behalf of each of the named corporate defendants.

112. At all relevant times, Pak has had the power to enter into contracts on behalf of each of the named corporate defendants.

113. At all relevant times, Pak has had the power to close, shut down, and/or sell each of the named corporate defendants.

III. Facts

**CLASSWIDE FACTUAL ALLEGATIONS**

114.    During all relevant times, Defendants have operated seventy-three Papa John's Pizza restaurants in Ohio, North Carolina, and Nevada.

115.    The primary function of the Papa John's Pizza restaurants is to sell pizza and other food items to customers, whether they carry out or have their food delivered.

116.    Each of the Papa John's Pizza restaurants employs delivery drivers who are primarily responsible for delivering pizzas and other food items to customers' homes and workplaces.

117.    Plaintiffs and the similarly situated persons Plaintiffs seek to represent are current and former delivery drivers employed by Defendants at the Papa John's Pizza restaurants.

118.    All delivery drivers employed at the Papa John's Pizza restaurants over the last three years have had essentially the same job duties—deliver pizza and other food items to customers.

119.    When there are no deliveries to make, Defendants' delivery drivers are required to work inside the Papa John's Pizza restaurants building pizza boxes, making pizzas, cleaning, preparing food items, taking orders, and completing other duties inside the restaurant as necessary.

120.    Defendants' delivery drivers are paid minimum wage while working inside the store, but are paid minimum wage minus a tip credit while they are out on the road making deliveries.

121.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

122. Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cellular telephone charges, GPS capability and/or maps, and other equipment necessary for delivery drivers to complete their job duties.

123. Pursuant to such requirements, Plaintiffs and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, and incurred cell phone and data charges all for the primary benefit of Defendants.

124. At all relevant times, Plaintiffs and other similarly situated delivery drivers were reimbursed a flat per delivery amount, no matter how many miles the delivery driver travelled to complete the delivery.

125. At all relevant times, Defendants have failed to pay Plaintiffs and similarly situated delivery drivers the legally required minimum wage and overtime wages because they failed to adequately reimburse them for their automobile expenses or other job-related expenses.

126. At all relevant times, Defendants have failed to take reasonable steps to ensure Plaintiffs and other similarly situated delivery drivers were adequately reimbursed for automobile expenses and other job-related expenses.

127. Defendants have not attempted to reasonably approximate the automobile and other expenses incurred by Plaintiffs and similarly situated delivery drivers for Defendants' benefit.

128.     Defendants have not determined Plaintiffs and similarly situated delivery drivers'

per delivery pay based on an attempt to calculate the actual out of pocket expenses of Plaintiffs

and similarly situated delivery drivers.

129.     In or about the spring or summer of 2016, Defendants began requiring drivers to

track the number of miles they drive on each shift to complete their deliveries. However, no

matter the number of miles driven by the drivers, they receive the same delivery reimbursement.

130.     Defendants have not monitored or required delivery drivers to monitor the

gasoline purchases made by delivery drivers, or any other out of pocket expenses incurred by

delivery drivers.

131.     Plaintiffs and similarly situated delivery drivers typically average four to five miles

per delivery.

132.     Plaintiffs and similarly situated delivery drivers typically make approximately 2-5

deliveries per hour.

133.     According to the Internal Revenue Service, the standard mileage rate for the use

of a car during the relevant time periods have been:

      **a.**    2014: 56 cents/mile
      **b.**    2015: 57.5 cents/mile
      c.    2016: 54 cents/mile
      d.    2017: 53.5 cents/mile

134.     As a result of the automobile and other job-related expenses incurred by Plaintiffs

and other similarly situated delivery drivers, they were deprived of minimum wage and overtime

wages guaranteed to them by the FLSA and Ohio law.

135.     Defendants' managers at times also clock delivery drivers out onto their lower,

"delivery pay rate" before a delivery order is ready to go out the door and while the delivery

drivers are still completing tasks inside the store. As a result, delivery drivers were regularly required to work in a non-tipped capacity while being paid at a tipped wage rate.

136.     Defendants have failed to give proper notice to delivery drivers that they would be taking a tip credit from delivery drivers' wages.

137.     Defendants have failed to maintain records of delivery drivers' compensation, particularly their delivery reimbursement amounts.

138.     At all relevant times, Defendants apply the same pay policies, practices, and procedures to all delivery drivers at the Papa John's Pizza restaurants.

139.     Defendants have willfully failed to pay federal and Ohio state minimum wage and overtime to Plaintiff and similarly situated delivery drivers at the Papa John's Pizza restaurants.

## PLAINTIFFS' INDIVIDUAL FACTUAL ALLEGATIONS

140.     Consistent with their policies, patterns, and practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

**Tammy Hatmaker**

141.     Tammy Hatmaker worked at the Papa John's Pizza restaurant located on Brandt Pike in Dayton, Ohio from June to September 2016.

142.     Tammy Hatmaker typically worked approximately 20 hours per week for Defendants.

143.     As a delivery driver, Tammy Hatmaker delivered pizza and other food items to Defendants' customers' homes and businesses.

144.     When she was not making deliveries, Tammy Hatmaker worked inside the restaurant, completing tasks such as taking orders, making pizza, building pizza boxes, taking out

trash, sweeping up the food line, mopping and sweeping, and completing other general tasks within the store.

145.    At all times during her employment, Tammy Hatmaker was qualified to perform the essential functions of her job and performed her duties competently.

146.    Defendants paid Tammy Hatmaker minimum wage minus a tip credit for all hours worked while he was making deliveries, and minimum wage while she worked inside. Tammy Hatmaker's hourly wage rate is $4.50 per hour while she was on the road.

147.    Tammy Hatmaker regularly makes approximately two to four deliveries per hour during the hours she works as a delivery driver.

148.    During Tammy Hatmaker's employment with Defendants, Defendants failed to adequately reimburse Tammy Hatmaker for automobile and other job-related expenses.

149.    As a result of unreimbursed automobile expenses and other job-related expenses, Defendants have failed to pay Tammy Hatmaker minimum wage as required by law.

**Stephen Hatmaker**

150.    Stephen Hatmaker worked at the Papa John's Pizza restaurant located on Brandt Pike in Dayton, Ohio from November 2015 to July 2016.

151.    Stephen Hatmaker typically worked between 20 and 40 hours per week for Defendants.

152.    As a delivery driver, Stephen Hatmaker delivered pizza and other food items to Defendants' customers' homes and businesses.

153.    When he was not making deliveries, Stephen Hatmaker worked inside the restaurant, completing tasks such as taking orders, making pizza, building pizza boxes, taking out

trash, sweeping up the food line, mopping and sweeping, and completing other general tasks within the store.

154. At all times during his employment, Stephen Hatmaker was qualified to perform the essential functions of his job and performed his duties competently.

155. Defendants pay Stephen Hatmaker minimum wage minus a tip credit for all hours worked while he was making deliveries, and minimum wage while he worked inside. Stephen Hatmaker's hourly wage rate is $4.50 per hour while he was on the road.

156. Beginning in or about the spring or summer of 2016, Defendants have required Stephen Hatmaker to record his miles driven at the end of his shift. Despite recording his miles, Stephen Hatmaker made the same delivery reimbursement rate on all deliveries.

157. Stephen Hatmaker regularly makes approximately two to four deliveries per hour during the hours he works as a delivery driver.

158. During Stephen Hatmaker's employment with Defendants, Defendants failed to adequately reimburse Stephen Hatmaker for automobile and other job-related expenses.

159. As a result of unreimbursed automobile expenses and other job-related expenses, and a result of Defendants' clock in/out policies, Defendants have failed to pay Stephen Hatmaker minimum wage as required by law.

**Kendall Peyton**

160. Peyton has worked at the Papa John's Pizza restaurant located in the Airway Shopping Center in Dayton, Ohio since January 2017.

161. Peyton typically works between 20 and 40 hours per week for Defendants.

162.     As a delivery driver, Peyton delivers pizza and other food items to Defendants' customers' homes and businesses.

163.     When he is not making deliveries, Peyton works inside the restaurant, completing tasks such as taking orders, making pizza, building pizza boxes, taking out trash, sweeping up the food line, mopping and sweeping, and completing other general tasks within the store.

164.     At all times during his employment, Peyton has been qualified to perform the essential functions of his job and has performed his duties competently.

165.     Defendants pay Peyton minimum wage minus a tip credit for all hours worked while he was making deliveries, and minimum wage while he worked inside.  Plaintiff's hourly wage rate is $4.75 per hour while he was on the road.

166.     Recently, Defendants have required Peyton to record his miles driven at the end of his shift. Instead of recording actual miles driven, Peyton is instructed by his managers to estimate that each delivery is five miles.

167.     Peyton regularly makes approximately three to six deliveries per hour during the hours he works as a delivery driver.

168.     During Peyton's employment with Defendants, Defendants failed to adequately reimburse Peyton for automobile and other job-related expenses.

169.     Peyton is regularly clocked out by management onto his "delivery payrate" when a delivery order is made, but before it was completed. As a result, Peyton regularly spends 5-15 minutes working inside the store, completing non-tipped duties, while being paid minimum wage minus a tip credit.

170.     As a result of unreimbursed automobile expenses and other job-related expenses, and a result of Defendants' clock in/out policies, Defendants have failed to pay Peyton minimum wage as required by law.

## IV.     Collective Action Allegations

171.     Plaintiffs bring the First Count on behalf of themselves and all similarly situated current and former delivery drivers employed at the Papa John's Pizza restaurants owned, operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

172.     At all relevant times, Plaintiffs and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiffs and the FLSA Collective minimum wage for all hours worked, failing to reimburse delivery drivers for automobile expenses and other job-related expenses, and for Defendants' clock in/out policies.  Plaintiffs' claims are essentially the same as those of the FLSA Collective.

173.     Defendants' unlawful conduct is pursuant to a corporate policy or practice of minimizing labor costs by failing to properly pay Plaintiffs and the FLSA Collective.

174.     Defendants are aware or should have been aware that federal law required them to pay employees at least full minimum wage for all hours worked in a non-tipped capacity.

175.    Defendants are aware or should have been aware that federal law required them to reimburse delivery workers for expenses relating to "tools of the trade," such as, among other things, automobile costs and gasoline for delivery drivers.

176.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

177.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

178.    The FLSA Collective members are readily identifiable and ascertainable.

179.    For the purpose of notice and other purposes related to this action, the FLSA Collective members' names and contact information are readily available from Defendants' records.

180.    In recognition of the services Plaintiffs have rendered and will continue to render to the FLSA Collective, Plaintiffs will request payment of a service award upon resolution of this action.

## CLASS ACTION ALLEGATIONS

181.    Plaintiffs brings the Second, Third, and Fourth Counts under Federal Rule of Civil Procedure 23, on behalf of themselves and a class of persons consisting of:

> All persons who work or worked as Delivery Drivers and similar employees for Papa John's Ohio, LLC, PJ Ohio, LLC, Serazen, LLC, BLD Brands, LLC, PJ Pizza Ohio, LLC, PJ Las Vegas, LLC, PJ North Carolina, LLC, and Doug Pak in Ohio between April 27, 2014 and the date of final judgment in this matter ("Rule 23 Class").

182.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned

and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

183.    The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.  The hours assigned and worked, the positions held, and the rates of pay and reimbursement for each Rule 23 Class Member are also determinable from Defendants' records.  For the purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under Federal Rule of Civil Procedure 23.

184.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

185.    There are more than 50 Rule 23 Class members.

186.    Plaintiffs' claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

187.    Plaintiffs and the Rule 23 Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay minimum wage, failing to reimburse for expenses, and failing to pay Plaintiffs in a timely manner.

188.    Plaintiffs and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with Section 34a and the Prompt Pay Act.

189.    Plaintiffs and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class

members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class members.

190.    Plaintiffs and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

191.    By seeking to represent the interests of the Rule 23 Class members, Plaintiffs are exercising and intend to exercise their right to engage in concerted activity for the mutual aid or benefit of themselves and their co-workers.

192.    Plaintiffs are able to fairly and adequately protect the interests of the Rule 23 Class and have no interests antagonistic to the Rule 23 Class.

193.    Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

194.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries, and damages suffered by each of the individual Rule 23 Class members are small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Rule 23 Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.

The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in significant saving of these costs. The prosecution of separate actions by individual class members would create a risk of inconsistent and/or varying adjudications with respect to the individual Rule 23 Class members, establishing incompatible standards of conduct for Defendants and resulting in the impairment of the Rule 23 Class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

195. Upon information and belief, Defendants and other employers throughout the state violate Section 34a and the Prompt Pay Act. Current employees are often afraid to assert their rights out of fear of direct and indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

196. This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

197. Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiffs and the Rule 23 Class members individually and include, but are not limited to:

    a. Whether Defendants paid Plaintiffs and the Rule 23 Class members at the proper minimum wage rate for all hours worked;

b. Whether Defendants failed to reimburse automobile expenses, gasoline expenses, and other job-related expenses, as described herein, causing Plaintiffs and the Rule 23 Class members' wages to drop below legally allowable minimum wage and overtime;

c. Whether Defendants failed to pay Plaintiffs and the Rule 23 Class in a timely manner as described by O.R.C. § 4113.15;

d. Whether Defendants' policy of failing to pay Plaintiffs and the Rule 23 Class was instituted willfully or with reckless disregard of the law; and

e. The nature and extent of class-wide injury and the measure of damages for those injuries.

## V. Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiffs and the FLSA Collective)

198. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

199. Plaintiffs and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

200. Defendants required Plaintiffs and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, failed to reasonably calculate the value of said expenses, and failed to adequately reimburse Plaintiff and the FLSA Collective for said expenses.

201. By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiffs and the FLSA Collective.

202. Plaintiffs and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

203. As a result of Defendants' willful violations, Plaintiffs and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

**Count 2**
**Failure to Pay Minimum Wages - Ohio Constitution, Article II, § 34a**
**(On Behalf of Plaintiffs and the Rule 23 Class)**

204. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

205. Defendants paid Plaintiffs and the Rule 23 Class below minimum wage for the hours they worked by requiring them to cover automobile expenses and other job-related expenses.

206. Section 34a requires that employees be paid not less than minimum wage as determined by an inflation index (currently $8.15/hour) for all hours worked.

207. Because Defendants required Plaintiffs and the Rule 23 Class to pay for automobile expenses and other job-related expenses out of pocket, Defendants failed pay Plaintiffs and the Rule 23 Class minimum wage.

208. By not paying Plaintiffs and the Rule 23 Class at least minimum wage for each hour worked, Defendants have violated the Ohio Constitution, Article II, § 34a.

209. As a result of Defendants' violations, Plaintiffs and the Rule 23 Class are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, an additional

two times unpaid wages/unreimbursed expenses in damages under Section 34a, costs, and attorneys' fees.

**Count 3**
**Untimely Payment of Wages – O.R.C. § 4113.15**
**(On Behalf of Plaintiffs and the Rule 23 Class)**

210. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

211. During all relevant times, Defendants were entities covered by O.R.C. § 4113.15, and Plaintiffs and the Rule 23 Class were employees within the meaning of O.R.C. § 4113.15 and were not exempt from its protections.

212. O.R.C. § 4113.15(A) requires that Defendants pay Plaintiffs and the Rule 23 Class all wages, on or before the first day of each month, for wages earned during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month, for wages earned during the last half of the preceding calendar month.

213. Plaintiffs and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

214. In violating Ohio law, Defendants acted willfully, without a good faith basis and with reckless disregard to Ohio law.

215. As a result of Defendants' willful violation, Plaintiffs and the Rule 23 Class are entitled to unpaid wages and liquidated damages, as stated in O.R.C. § 4113.15.

**Count 4**
**Damages Pursuant to O.R.C. § 2307.60**
**(On Behalf of Plaintiffs and the Rule 23 Class)**

216. Plaintiffs restate and incorporate the foregoing allegations as if fully rewritten herein.

217. The Fair Labor Standards Act, 29 U.S.C. § 216(a), imposes criminal penalties for willful violations of the FLSA.

218. By their acts and omissions described herein, Defendants have willfully violated the FLSA, and Plaintiffs and the Rule 23 Class have been injured as a result.

219. O.R.C. § 2307.60 permits anyone injured in person or property by a criminal act to recover damages in a civil action, including exemplary and punitive damages.

220. As a result of Defendants' willful violations of the FLSA, Plaintiffs and the Rule 23 Class are entitled to compensatory and punitive damages pursuant to O.R.C. § 2307.60.

**WHEREFORE**, Plaintiffs Tammy Hatmaker, Stephen Hatmaker, and Kendall Peyton pray for all of the following relief:

A. Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiffs and their counsel to represent the collective action members.

B. Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations;

C. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.     Designation of Plaintiffs as representatives of the Rule 23 Class and counsel of record as Class Counsel;

E.     A declaratory judgment that the practices complained of herein are unlawful under Section 34a and O.R.C. § 4113.15.

F.     An award of unpaid minimum wages and unreimbursed expenses due under Section 34a.

G.     An award of damages under Section 34a, based on Defendants' failure to pay minimum wages pursuant to Section 34a, calculated as an additional two times of back wages.

H.     Liquidated damages under O.R.C. § 4113.15.

I.     Compensatory and punitive damages under O.R.C. § 2307.60.

J.     An award of prejudgment and post-judgment interest.

K.     An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

L.     Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

  /s/ Andrew Kimble
Andrew Biller (0081452)
Andrew Kimble (0093172)
Markovits, Stock & DeMarco, LLC
3825 Edwards Road, Suite 650
513-651-3700 (Phone)
513-665-0219 (Fax)
(*abiller@msdlegal.com*)
(*akimble@msdlegal.com*)
www.msdlegal.com

*Counsel for Plaintiffs and the putative class*

## JURY DEMAND

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

 /s/ Andrew Kimble_____
Andrew Kimble