IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | |
|---|---|
| Tammy Hatmaker, *et al.*, *On behalf of themselves and others similarly situated*, Plaintiffs, v. PJ Ohio, LLC, *et al.*, Defendants. | Case No. 3:17-cv-146<br><br>Judge Thomas M. Rose |

PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiffs move for partial summary judgment. Plaintiffs contend that Defendants paid pizza delivery drivers less than minimum wage because Defendants under-reimbursed the drivers for their vehicle expenses. Minimum wages must be paid "free and clear" of job-related expenses, including vehicle expenses. 29 C.F.R. § 531.35. Plaintiffs contend that in calculating minimum wage, Defendants must either (1) track and pay delivery drivers' actual expenses or (2) pay the mileage reimbursement rate set by the Internal Revenue Service. For the reasons set forth more fully in the Memorandum in Support of Motion, Plaintiffs respectfully request that the Court issue summary judgment in their favor.

1

Respectfully submitted,

*/s/ Andrew P. Kimble*
Andrew R. Biller (0081452)
BILLER & KIMBLE, LLC
OF COUNSEL TO MARKOVITS, STOCK
& DEMARCO, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (0093172)
Philip J. Krzeski (0095713)
Louise M. Roselle (0014844)
BILLER & KIMBLE, LLC
OF COUNSEL TO MARKOVITS, STOCK
& DEMARCO, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*
*lroselle@billerkimble.com*

www.billerkimble.com

Mark Potashnick, Mo. Bar # 41315
(admitted *pro hac vice*)
WEINHAUS & POTASHNICK
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150 ext. 2
Facsimile: (314) 997-9170
Email: markp@wp-attorneys.com

*Counsel for Plaintiff*

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

1. **Introduction**

Pursuant to the Parties' Rule 26(f) Report, the Court ordered the parties to file "Cross-Motions for Partial Summary Judgment on the question of what constitutes a proper measure of minimum wage compliance for pizza delivery drivers..." Doc. 113. For the reasons set forth below, Plaintiffs contend that (1) the determination of the measure of minimum wage compliance is a question of law and (2) because the Defendants failed to maintain records of actual expenses incurred, the proper measure of minimum wage compliance is the IRS mileage rate applicable at the time of the deliveries. The current IRS mileage rate is $0.58/mile.

2. **Procedural Posture**

Plaintiffs, a group of pizza delivery drivers, commenced this case on April 27, 2017 and allege violations of the Fair Labor Standards Act ("FLSA") and the state wage laws of Ohio, North Carolina, and Nevada. *See* Doc. 84, Third Amended Complaint. On October 25, 2017, the Court granted the parties' Joint Motion to Approve Stipulated Form of Collective Action. Doc. 30. Over 800 employees have opted-in to this collective action. Defendants filed a Motion to Dismiss the Third Amended Complaint on April 11, 2018 (Doc. 94), which the Court denied on March 26, 2019 (Doc. 112). No formal discovery has been done in this case.

On March 22, 2019, the Parties filed the Rule 26(f) Report of the Parties. *See* Doc. 111. As part of the Rule 26(f) Report, the parties agreed that cross-motions for partial summary judgment are an appropriate procedure for the Court to consider what evidence is required for computation

3

of the FLSA's minimum wage requirements. This is an important threshold issue because, as described below, the issue drastically affects discovery's scope, expense, and burden.

### 3. Law and Argument

#### 3.1. Standard for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The Court's purpose in considering a summary judgment motion is not to 'weigh the evidence and determine the truth of the matter' but to 'determine whether there is a genuine issue for trial.'" *Davis v. United States,* 302 F. Supp. 3d 951, 954 (S.D. Ohio Sept. 29, 2017) (citing *Anderson v Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party bears the initial burden of showing the absence of any such genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986). Once the moving party has met its burden of production, the nonmoving party must present evidence on which a jury could reasonably find for the non-movant. *Anderson,* 477 U.S. at 252. "The mere existence of a scintilla of evidence to support [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id*. at 252.

The Court is tasked with answering one question:

> Should the DOL Field Operations Handbook's reimbursement methodology for pizza delivery drivers apply as a matter of law?

Specifically, the DOL Field Operations Handbook states that the employer must either (1) track and pay delivery driver's actual expenses or (2) pay the mileage reimbursement rate set by the IRS. The alternative that Defendants' advocate involves a case-by-case determination made after extensive discovery and expert testimony. *See* Doc. 111, Rule 26(f) Report.

4

### 3.2. There is no dispute that delivery-related expenses are considered "tools of the trade" under 29 CFR § 531.35.

The FLSA mandates that "'[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce 'a statutory minimum hourly wage…. The DOL regulations require that the minimum wage be paid 'finally and unconditionally' or 'free and clear.'" *Stein v. HHGREGG, Inc.*, 873 F.3d 523, 530 (6th Cir. 2017) (citing 29 U.S.C. § 206(a) and 29 C.F.R. § 531.35).

In the delivery context, the cost associated with delivering food for an employer is a "kickback" to the employer that must be fully reimbursed, lest a minimum wage violation be triggered. *See, e.g., Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707 (E.D. Mo. July 8, 2015).

The DOL "anti-kickback" regulation states:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act. See also in this connection, § 531.32(c).

29 CFR § 531.35.

There is no dispute that pizza delivery drivers' vehicle-related expenses are expenses for "tools of the trade," incurred for the benefit of the company, and therefore must be fully reimbursed lest a minimum wage violation be triggered. *See, e.g., Graham v. The Word Enters. Perry, LLC,* No. 18-cv-0167, 2018 WL 3036313, *4 (E.D. Mich. Jun. 19, 2018) ("An example of such

5

an expense are tools of the trade that the employee must provide which is required to perform the job, such as a personal car that an employee operates to make pizza deliveries."); *Ke v. Saigon Grill, Inc.*, 595 F.Supp.2d 240, 258 (S.D.N.Y. 2008) (holding that deliverymen's bicycles and motorbikes were "tools of the trade," such that costs related to those vehicles had to be reimbursed by the employer where deliverymen otherwise earned minimum wage); *Perrin*, 114 F.Supp.3d at 722 (holding that an employer must reimburse vehicle-related expenses but also applying an erroneous "reasonably approximation" standard).

With that understanding, the question currently before the Court is how to properly determine the expenses incurred by delivery drivers for purposes of enforcing the FLSA.

### 3.3. The Department of Labor ("DOL") requires employers to either reimburse actual expenses incurred or the IRS mileage rate.

Ordinarily, under this "tools of the trade" regulation, an employer must pay the actual expense incurred by the employee. 29 C.F.R. § 531.35 ("…if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act").

As a general principle, employers are not permitted to "guess" or "approximate" a minimum wage employee's expenses for purposes of reimbursing the expenses. To hold otherwise would inevitably result in some employees receiving less than minimum wage, directly contrary to the FLSA's mandates. Instead, as a general proposition, the FLSA requires employers to pay back the actual expenses incurred by the employees.

Ambiguity arises, however, in the pizza delivery driver context because determining and

maintaining records of each employee's actual expenses is an extremely cumbersome task for the employer. The DOL remedied this problem through its Field Operations Handbook ("the DOL Handbook"), by giving employers a choice in order to ease their burden: either (1) keep records of delivery drivers' actual expenses and reimburse for them or (2) reimburse drivers at the IRS standard business mileage rate:

**30c15** <u>Car expenses: employee's use of personal car on employer's business.</u>

> In some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine minimum wage compliance. For example, car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants.

> (a) As an enforcement policy, the IRS standard business mileage rate found in IRS Publication 917, "Business Use of a Car" may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes. The IRS standard business mileage rate (currently 28 cents per mile) represents depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees. In situations where the IRS rate changes during the investigation period, the applicable rates should be applied on a pro-rata basis.

*See* DOL Field Operations Handbook§ 30c15(a)(2000).

As documented in the Declarations of Tammy Hatmaker (Doc. 2-1) Stephen Hatmaker (Doc. 2-2) and Kendall Peyton (Doc. 2-3), Defendants required delivery drivers to maintain and pay for operable, safe, and legally-compliant automobiles to use in delivering pizza and pay for the cost of a functioning cell phone to make deliveries and other equipment necessary to complete their job duties. Doc. 2-1, ¶¶ 10-11, Doc 2-2, ¶¶ 10-11, Doc. 2-3 ¶¶10-11. Defendants required delivery drivers to pay for gasoline, oil and other fluids, vehicle parts, auto repair and maintenance, registration costs, licensing and taxes. Doc. 2-1, ¶ 12, Doc 2-2, ¶ 12, Doc. 2-3 ¶ 12. The delivery drivers' cars depreciated in value as a result of the work that was done for Defendants. Doc. 2-1, ¶

7

12, Doc 2-2, ¶ 12, Doc. 2-3 ¶ 12. Further, Defendants required the delivery drivers to maintain auto insurance. Doc. 2-1, ¶ 12, Doc 2-2, ¶ 12, Doc. 2-3 ¶ 12. Defendants never attempted to calculate how much money delivery drivers were paying out of pocket and did not require delivery drivers to record or report expenditures for the automobiles, gasoline or other job-related expenses. Doc. 2-1, ¶¶ 14-15, Doc 2-2, ¶¶ 14-16, Doc. 2-3 ¶¶ 15-16. Defendants have neither tracked and paid for their delivery drivers' actual expenses, nor reimbursed their drivers at the IRS rate.

### 3.3.1. The Court should give deference to the DOL Field Operations Handbook.

The process for determining if the Court should give deference to the DOL Field Operations Handbook is two-fold.

First, the Court should determine if the DOL regulation is unclear. 29 C.F.R. § 531.35 does not set forth a methodology for calculating mileage rates, or provide any other guidance as to how to determine or put a value on the expenses related to operating an automobile for work. Thus, there is ambiguity as to how to calculate the mileage rate.

Second, if the methodology for calculating the mileage rate is unclear, and the DOL Field Operations Handbook has provided a procedure, then the Court should next determine if the DOL Handbook interprets the regulation in a manner that is neither plainly erroneous nor inconsistent with the regulation. The Court should consider whether deference is appropriate for the DOL's interpretations of its own regulations, where the regulations give specificity to a statutory scheme that DOL enforces. Here, there is good reason to give deference to the DOL Field Operations Handbook.

Many courts have considered when it is appropriate for the court to give deference to the DOL. In *Skidmore v. Swift & Co.,* the Supreme Court looked at Wage and Hour Interpretative

8

Bulletin No. 13, which provided "a practical guide to employers and employees as to how the office representing the public interest in its enforcement will seek to apply it." 323 U.S. 134, 138, 65 S. Ct. 161, 89 L.Ed. 124 (1944). The Supreme Court observed:

> There is no statutory provisions as to what, if any, deference courts should pay to the Administrator's conclusions….[T]he Administrator's policies are made in pursuance of official duty, based upon more specialized experience and broader investigations and information than is likely to come to a judge in a particular case. They do determine the policy which will guide applications for enforcement by injunction on behalf of the Government. Good administration of the Act and good judicial administration alike require that the standards of public enforcement and those for determining private rights shall be at variance only where justified by very good reasons. The fact that the Administrator's policies and standards are not reached by trial in adversary form does not mean that they are not entitled to respect. This Court has given considerable and in some cases decisive weight to Treasury Decisions and…of other bodies that were not of adversary origin.

*Id.* at 139-140.

Fifty years after *Skidmore*, the Supreme Court addressed this issue again. In *Auer v. Robbins*, the Court wrote that where the rule to be interpreted is a "creature of the Secretary's own regulations, his interpretation of it is, under our jurisprudence, controlling *unless 'plainly erroneous or inconsistent with the regulation.*'" 519 U.S. 452, 461 (1997) (emphasis added).

"This type of *Auer* deference is appropriate for DOL interpretations of its own regulations, where the regulations "g[i]ve specificity to a statutory scheme the Secretary [of the DOL] [i]s charged with enforcing and reflect[] the considerable experience and expertise of the Department of Labor ha[s] acquired over time with respect to the complexities of Fair Labor Standards Act." *Fast v. Applebee's Intern., Inc.*, 638 F.3d 872, 878 (8th Cir. 2011) (citing *Gonzalez v. Oregon*, 546 U.S. 243, 255-56 (2006)). In *Fast*, the court was asked to apply the DOL's Handbook's interpretation of dual jobs regulations. The court determined that the regulations did not define "occasionally" or "part of [the] time" and that "the ambiguity supports the DOL's attempt to

9

further interpret the regulation. We believe that the DOL's interpretation contained in the Handbook…is a reasonable interpretation of the regulations. It is certainly not 'clearly erroneous or inconsistent with the regulation.'" *Id.* at 880-881.

In 2018, an *en banc* panel of the Ninth Circuit extensively analyzed whether the DOL's interpretation of the ambiguous dual jobs regulation should be given deference pursuant to *Auer*. *Marsh v. J. Alexander's, LLC,* 905 F.3d 610, 623 (9th Cir. 2018). The *Marsh* Court concluded that "because the dual jobs regulation is ambiguous and the Guidance's interpretation is both reasonable and consistent with the regulation, we agree with the Eighth Circuit that the Guidance is entitled to *Auer* deference." *Id.* (citing *Fast,* 638 F.3d at 880-81).

The Sixth Circuit has determined the DOL Handbook worthy of *Auer* deference. In *Stein*, the Court wrote that:

> Our determination that this policy is lawful finds support in the DOL Field Operations Handbook….We recognize that these interpretations of Department regulations are "'not subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment,'" and therefore are not controlling or entitled to deference under *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-844, 104 S. Ct. 2778, 81 L.Ed.2d 694 (1984) (citations omitted)….However, interpretations, opinions and explanatory guidelines "do constitute a body of experience and informed judgment to which courts and litigations may properly resort for guidance." *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S. Ct. 161, 89 L.Ed. 124 (1944); *see also Myers v. Copper Cellar Corp.,* 192 F.3d 546, 554 (6th Cir. 1999) (noting the persuasive authority of the Field Operations Handbook, which is "issued by the government agency responsible for enforcement of the federal wage and hour laws.") "The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore,* 323 U.S. at 140, 65 S. Ct. 161.

*Stein*, 873 F.3d at 531-532. The Sixth Circuit found the DOL Handbook

> to be persuasive, not only because [the materials from the DOL Handbook] demonstrate that the DOL has maintained a consistent position for several decades, but also because their reasoning demonstrates that the DOL considered the legality of these provisions in light of the exact same regulation at issue here, that is, the "free and clear" regulation.

*Id.* at 534.

The DOL Field Operations Handbook can be beneficial to the employer as well as the employee. For example, in *Schafer v. Walker Bros. Enterprises, Inc.*, the employer relied on the Field Operations Handbook, and the employees did not contest that the court should give deference to the DOL Handbook. 829 F.3d 551, 554 (7th Cir. 2016).

### 3.3.2. The DOL Handbook has a valid methodology for determining reimbursements for vehicle-related expenses.

In this case, the Court should give deference to the DOL Handbook's calculation of mileage expenses. The DOL Handbook states that when actual expenses have not been maintained, the IRS mileage rate is used to determine minimum wage compliance.

Defendants, knowing they would ask their employees to incur substantial expenses on their behalf, could have paid a wage rate safely above minimum wage. In such a circumstance, their reimbursement policy might never come into question. But they chose not to. Defendants also could have paid the workers their actual costs for delivering pizza. Again, Defendants chose not to. This leaves the DOL Handbook's second method of reimbursing vehicle-related expenses as Defendants' only remaining option to comply with the FLSA's minimum wage requirement—reimburse delivery drivers at the IRS mileage rate.

The IRS mileage rate is a data-driven and systematic methodology for estimating the cost of driving a mile. The IRS mileage rate is:

> a rate determined by the IRS that a taxpayer can deduct per mile driven for business, charitable activities, moving or medical purposes. The standard mileage rate changes regularly to keep up with inflation….The IRS bases these rates on cost data and analysis compiled every year by Runzheimer International, an independent research firm that contracts to the IRS. Runzheimer International uses data from across the country and measures auto insurance premiums, gas prices, maintenance costs, depreciation and other costs that go into operating a vehicle.

Julia Kagan, *Standard Mileage Rate*, Investopedia, (June 13, 2018).[1]

"Since 1980, the IRS has worked with Runzheimer to calculate the business mileage deduction rate, using a consistent method and statistical analysis of vehicle cost components…. [The rate] reflect[s] the movement of prices in the marketplace." *IRS Announces 2018 Business Mileage Rate of 54.5 Cents-Per-Mile with Cost Data and Analysis by Runzheimer*, Business Wire, (December 14, 2017, 3:13 PM).[2] The IRS mileage rate is the real cost of driving a vehicle. It does not include any cost components that are inapplicable to the costs that the pizza delivery drivers incur. There is no reason not to use the IRS mileage rate in this case; it is neither plainly erroneous nor inconsistent with the regulation.

Since 2000, the DOL Handbook has provided that in the absence of actual costs, the IRS mileage rate applies. The DOL's approach recognizes that—when an employer is standing on the minimum wage fault line—an employer cannot and should not be allowed to guess, estimate, or come "close enough" to reimbursing for these substantial expenses. Instead, the law should provide a clear directive of how to comply with the minimum wage laws. The DOL's approach creates a bright line for employers to follow. The "IRS rate or actual expenses" method is the appropriate measure in this and all cases.

---

[1] https://www.investopedia.com/terms/s/standardmileagerate.asp
[2] https://www.businesswire.com/news/home/20171214006316/en/IRS-Announces-2018-Business-Mileage-Rate-54.5

### 3.3.3. Courts have adopted the IRS rate in pizza delivery driver cases.

Courts have adopted the IRS rate as the proper measure in delivery driver cases. In *Brandenburg v. Cousin Vinny's Pizza, LLC*, Judge Rice recently addressed the very same reimbursement claims asserted here, and adopted the DOL Handbook approach:

> Because the vehicles owned by the delivery drivers are considered "tools of the trade," 29 C.F.R. § 531.35, and required by Cousin Vinny's as a condition of being hired as a delivery driver, there needed to be an adequate reimbursement rate, using either the IRS mileage rate or actual reimbursement of cost, in order to avoid a decrease in the minimum wage and overtime paid.

No. 3:16-cv-516, 2018 WL 5800594, *4 (S.D. Ohio Nov. 6, 2018) (granting Rule 23 class certification of same Ohio claims asserted here).

In *Zellagui v. MCD Pizza, Inc.*, the Eastern District of Pennsylvania held:

> Because Domino's failed to keep detailed contemporaneous records of its delivery drivers' actual expenses, Plaintiff and the Class members are entitled to be reimbursed at the IRS rate. Indeed, Plaintiff and the Class members incurred at least as many vehicle-related expenses as the average business driver owing to the fact that pizza delivery drivers are often required to drive in stop-and-start traffic, in urban areas with parking meters, on a tight schedule, at night, and in inclement weather….As a result, the Court finds that the IRS rate is a reasonable approximation of the actual per mile vehicle expenses incurred by Plaintiff and the Class members….
>
> When minimum wage law requires an employer to reimburse an employee for using the employee's vehicle for the employer's benefit, the employer should reimburse the employee at the IRS per mile rate or keep detailed records of the employees' expenses to justify another reimbursement rate.

59 F.Supp.3d 712, 716 (E.D. Pa. Nov. 3, 2014); *see also Cornish v. Deli Mgmt., Inc.*, No. WMN-16-672, 2016 WL 5934077, at *3 (D. Md. Oct. 12, 2016) ("the Department of Labor (DOL) Field Operations Handbook instructs that, for minimum wage purposes, an employer may either reimburse employees who drive a personal vehicle for business use at the IRS standard business mileage rate or keep accurate, contemporaneous expense records and reimburse the employee

13

accordingly."); *In the Matter of an Arbitration,* 2015 WL 8682313 (AAA) (employer must reimburse minimum wage pizza delivery drivers for vehicle costs at IRS rate); *In the Matter of an Arbitration,* 2015 WL 8682319 (AAA) (employer must reimburse minimum wage pizza delivery drivers for vehicle costs at IRS rate).

Not all courts agree with this approach. In some out-of-district cases, courts have held that Defendants can simply "approximate" vehicle expenses. The genesis of those cases appears to be courts attempting to provide relief to delivery drivers in the face of plaintiffs who did not properly raise the IRS rates. *See Wass v. NPC,* 688 F.Supp.2d 1282, 1287 (D.Kan. Mar. 2, 2010) ("Because plaintiffs have not referred to any IRS rate in the complaint, but instead have pleaded a violation based on a failure to pay actual expenses incurred, the Court does not address this issue."); *see also, Darrow v. WKRP Mgmt. LLC*, No. 09-cv-01613, 2011 WL 2174496, at *3–4 (D. Colo. June 3, 2011) (*citing Wass*). Because Plaintiffs here have properly addressed the DOL's measure for delivery driver mileage, those cases are of little value here.

### 4. The DOL's approach to mileage is consistent with the FLSA's remedial goals.

The FLSA is a remedial statute that is designed to "protect all covered workers from substandard wages and oppressive working hours." *Encino Motorcars, LLC v Navarro,* 579 U.S. \_\_\_\_, 136 S. Ct. 2117, 2121, 195 L.Ed.2d 382 (2016) (quoting *Barrentine v. Arkansas–Best Freight System, Inc.,* 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981)). To meet that goal, both employees and employers must have clear rules to follow. The Fair Labor Standards Act's remedial goals are defeated if employees have no way of knowing whether they are being paid properly. *See, e.g.*, 29 U.S.C. 203(m) (requiring tipped employees to receive notice of the FLSA's tip credit provisions). This is likely one of the reasons the DOL implemented a very clear standard

for pizza delivery drivers—the public and accessible IRS rate.

The DOL's rule for pizza delivery drivers results in clarity for both delivery drivers and their employers. Employers can choose to take on the task of tracking delivery drivers' actual expenses or pay a set per-mile reimbursement rate. A neutral arbiter—the IRS—creates, monitors, and updates the rate, and it favors neither employers nor employees. Both employers and employees can readily access the rate. Moreover, employers, employees, and courts can precisely determine whether an employer is complying with the employer's minimum wage obligations. This can be done at relatively low litigation cost, likely through a motion for judgment on the pleadings or at summary judgment.

In contrast, if, as some courts have held, employers can "approximate" mileage expenses, neither employers nor employees know what the rules are until someone files a lawsuit and receives a verdict. Both are left in the dark as to whether an employer's practices violate the Fair Labor Standards Act. Then, after litigation is filed, each side will need experts to argue over whether a specific rate is a "reasonable approximation" in that case. The Court is well aware of the drastically increased time and cost when experts become necessary: costly discovery, complex motions, and an increased likelihood of appeals. Even a cursory review of Defendants' proposed discovery plan demonstrates just how expansive the discovery could be if Defendants' "reasonable approximation" method is used. *See* Doc. 111, Rule 26(f) Report. Moreover, a verdict in one case will have little effect in another case because both employers and employees can argue the factors in *their* case are different.

A system where no one knows whether they are complying with the FLSA's minimum wage and expense reimbursement requirements defies common sense. The DOL recognized this

15

issue and addressed it through its enforcement guidance. The practical considerations of minimum wage compliance weigh heavily in favor of finding that the DOL's enforcement policy is the proper, clear measure of mileage reimbursement.

5. Conclusion

The IRS standard business mileage rate set forth in the DOL's Field Operations Handbook properly applies when enforcing the minimum wage requirements of the FLSA. It provides employers with a clear directive for minimum wage compliance, and allows them to avoid the substantial costs of keeping records of their employees' actual expenses. It likewise provides employees a clear understanding of how the minimum wage laws apply to them.

Plaintiffs ask the Court to hold, as a matter of law, that the proper measure of minimum wage compliance for pizza delivery drivers is to either (1) track and pay delivery drivers' actual expenses or (2) pay the mileage reimbursement rate set by the Internal Revenue Service.

Respectfully submitted,

*/s/ Andrew P. Kimble*
Andrew R. Biller (0081452)
BILLER & KIMBLE, LLC
OF COUNSEL TO MARKOVITS, STOCK
& DEMARCO, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (0093172)
Philip J. Krzeski (0095713)
Louise M. Roselle (0014844)
BILLER & KIMBLE, LLC
OF COUNSEL TO MARKOVITS, STOCK

        & DeMarco, LLC
3825 Edwards Road, Suite 650
Cincinnati, OH 45209
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*pkrzeski@billerkimble.com*
*lroselle@billerkimble.com*

www.billerkimble.com

Mark Potashnick, Mo. Bar # 41315
(admitted *pro hac vice*)
WEINHAUS & POTASHNICK
11500 Olive Blvd., Suite 133
St. Louis, Missouri 63141
Telephone: (314) 997-9150 ext. 2
Facsimile: (314) 997-9170
Email:  markp@wp-attorneys.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the above document was filed through the Court's ECF system, which will provide notice to all parties.

*/s/ Andrew Kimble*
Andrew Kimble
