**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| Tammy Hatmaker, Stephen Hatmaker, Kendall Peyton, Alan Huxford, Derek Green, and Bobby White, | Case No. 3:17-cv-146 |
| *On behalf of themselves and those similarly situated*, | |
| Plaintiffs, | Judge Thomas Rose |
| v. | |
| PJ Ohio, LLC, BLD Brands, LLC, Serazen, LLC, PJ Pizza Ohio, LLC, PJ Las Vegas, LLC, PJ North Carolina, LLC, Doug Pak, and Darcie Mangus, | |
| Defendants. | |

## CROSS-MOTION FOR DECLARATORY SUMMARY JUDGMENT

Pursuant to the April 8, 2019 Scheduling Order and the Rule 26(f) Report, Defendants PJ Ohio, LLC, BLD Brands, LLC, Serazen, LLC, PJ Pizza Ohio, LLC, PJ Las Vegas, LLC, PJ North Carolina, LLC, Doug Pak, and Darcie Mangus hereby move the Court to answer the question of "what constitutes a proper measure of minimum wage compliance for pizza delivery drivers" as follows:

(1)    That the IRS business standard mileage rate is not legally mandated;

(2)    That the proper measure of minimum wage compliance is whether, in a given workweek, an employee's net weekly wages, meaning the wages the employee received less the employee's unreimbursed work-related expenses, equaled or exceeded the applicable minimum wage;

(3)    That if the employee's net weekly wages did equal or exceed the applicable minimum wage, the employer complied; that if the employee's net weekly wages did not equal or

FPDOCS 35298759.2

exceed the applicable minimum wage, the employer did not comply (unless the reimbursement "reasonably approximated" expenses as in (4) below); and that the burden of proving non-compliance, by a preponderance of the evidence, is on the employee; and

(4)     That in addition to proving non-compliance, the employee must also prove, by a preponderance of the evidence, that the reimbursement for work-related expenses the employer provided did not "reasonably approximate" the employee's expenses.

The legal arguments and authority in support of this cross-motion are set forth in the accompanying Memorandum In Support.

Respectfully submitted,

**FISHER & PHILLIPS LLP**

/s/ Mathew A. Parker
Mathew A. Parker (0093231)
250 West Street, Suite 400
Columbus, OH  43215
Telephone:  (614) 453-7608
Facsimile:  (614) 221-1409
mparker@fisherphillips.com

Kathleen McLeod Caminiti (*pro hac vice*)
430 Mountain Avenue, Suite 303
Murray Hill, New Jersey 07974
Telephone: (908) 516-1062
Facsimile: (908) 516-1051
kcaminiti@fisherphillips.com

J. Hagood Tighe (*pro hac vice*)
1320 Main Street, Suite 750
Columbia, South Carolina 29201
Telephone: (803) 225-0000
Facsimile: (803) 255-0202
htighe@fisherphillips.com

*Attorneys for Defendants*

2

<u>**MEMORANDUM IN SUPPORT**</u>

**PRELIMINARY STATEMENT**

In its April 8, 2019 Scheduling Order, the Court instructed the parties, pursuant to their Rule 26(f) Report, to file cross-motions for partial summary judgment on "the question of what constitutes a proper measure of minimum wage compliance for pizza delivery drivers," i.e., the Plaintiffs in this case. (Sched. Order, Doc. 113; Rule 26(f) Report of the Parties, Doc. 111, ¶6 pp.2-4.)

It is clear from Plaintiffs' Third Amended Complaint (cited herein as "Compl.") that they believe the proper measure is the Internal Revenue Service's ("IRS") business standard mileage rate. That is wrong. The IRS rate does not bind employers, employees, or courts in wage and hour cases. It is simply a safe harbor that the IRS permits taxpayers to use, in lieu of actual expenses, in computing the costs they may deduct from their taxable income, no more, no less.

Instead, in answer to the Court's question, **the drivers must prove two things by a preponderance of the evidence to prevail on their minimum wage claim.** First, under the Fair Labor Standards Act ("FLSA"), the regulations of the United States Department of Labor ("DOL"), and the controlling case law, to prevail on a minimum wage claim, the drivers must prove by a preponderance of the evidence that, **in a given workweek, the difference between (1) their wages and (2) their unreimbursed pizza delivery expenses (3) was less than the applicable minimum wage in that workweek**. That requires the drivers to establish (1) what their wages were in a given workweek, (2)(a) what their pizza delivery expenses were, (b) what reimbursement they received from their employers, and (3) what the difference was between (1) and (2) (the drivers' "net weekly wages"), if any. If the drivers' net weekly wages are equal to or exceed the applicable minimum wage, the drivers have failed to meet their burden of proof and

3

their minimum wage claims fail.

Second, the DOL regulations also require the drivers to show that the reimbursement they received from their employers did not even "reasonably approximate" their expenses. That is a question of fact. Plaintiffs' assertion in the Third Amended Complaint that a reimbursement rate other than the IRS mileage rate is unreasonable has no basis in the regulations or the FLSA.

Therefore, Defendants respectfully request a ruling that to prevail on their minimum wage claims, Plaintiffs must prove, by a preponderance of the evidence and as set forth above, that in a given workweek (1) their net weekly wages were less than the applicable minimum wage, and (2) the reimbursement Defendants provided to them did not even reasonably approximate their pizza delivery-related automobile expenses.

### SCOPE OF THE CROSS MOTIONS

Though styled as motions for partial summary judgment, the parties' cross-motions do not fit neatly into the Rule 56 paradigm: There are no "material facts" as to which the Court must determine whether there is a "genuine dispute," *see* Fed.R.Civ.P. 56(a), because there has been no discovery whatsoever, not even an exchange of disclosures under Rule 26(a), *cf.* Fed.R.Civ.P. 56(d) (court may defer considering or deny summary judgment motion pending discovery). Rather, the parties will be asking the Court to define the law that will govern the determination of whether Defendants are liable on Plaintiffs' federal and state minimum wage claims, a determination that can take place only after full discovery; the Court's ruling is thus needed to guide the parties as they pursue discovery and develop the record. In essence, the parties are cross-moving for a declaratory summary judgment. Though such a motion is narrower than the run-of-the-mill summary judgment motion, there is nothing novel about it. *See, e.g., Foster v. D.B.S. Collection Agency*, No. 01-514, 2008 WL 755082 (S.D. Ohio Mar. 20, 2008) (granting in part and

4

denying in part declaratory summary judgment motion).[1]

## LEGAL ARGUMENT

## I.     The IRS Mileage Rate Is Not the Proper Measure of Minimum Wage Compliance.

Plaintiffs' Third Amended Complaint suggests they believe they can prevail on their minimum wage claims simply by showing that Defendants did not reimburse them at the IRS business standard mileage rate. If that is their position, it fails as a matter of law. The IRS rate merely is the maximum safe harbor rate that the IRS permits taxpayers to use in computing deductions from taxable income. Simply put, the IRS rate is nothing more than a cap on deductible expense for federal income tax purposes – it is a ceiling on tax deductions under the Internal Revenue Code, not a floor for reimbursements under the Fair Labor Standards Act.

In fact, neither the FLSA nor the DOL's regulations import or even refer to the IRS rate. The only place the IRS rate is mentioned is in §30c15 of the DOL's Field Operations Handbook (or "FOH"), which states, in pertinent part:

> As an enforcement policy, the IRS standard business mileage rate found in IRS Publication 917, "Business Use of a Car" ***may*** be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes. The IRS standard business mileage rate (currently 28 cents per mile) represents depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees. In situations where the IRS rate changes during the investigation period, the applicable rates should be applied on a pro-rate basis.

---

[1] *See also, e.g., Bussinger v. City of New Smyrna Beach, Fla.*, 50 F.3d 922, 924 (11th Cir. 1995) (noting that district court "granted declaratory summary judgment as to the fact that the sole remedy for [plaintiff's] statutory claim was injunctive relief"); *Avoyelles Parish Sch. Bd. v. United States*, No. 08-1374, 2009 WL 1421929, at *4 (W.D. La. May 20, 2009) (granting declaratory summary judgment that "tacit dedication" of property may not operate against the United States); *cf. Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is"); 28 U.S.C. §2201(a) ("[A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration").

FOH §30c15(a) (emphasis omitted & added). The DOL itself does not treat the FOH as authoritative; instead, the FOH's introductory section, posted on the Wage and Hour Division's website, says it is only "an operations manual that provides Wage and Hour Division (WHD) investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance... It is not used as a device for establishing interpretive policy." https://www.dol.gov/whd/foh/ (last visited Apr. 12, 2019). An additional consideration is the language of §30c15 itself, just quoted, which indicates that the IRS reimbursement rate "*may*" be used. It is thus not controlling even of IRS investigators and staff.

The DOL, it bears noting, is perfectly capable of including precise and even elaborate payment requirements in its wage regulations. For example, under the current version of 29 C.F.R. §541.600(a) (which was held invalid in *Nevada v. USDOL*, 275 F. Supp. 3d 795 (E.D. Tex. 2017)):

> To qualify as an exempt executive, administrative or professional employee under section 13(a)(1) of the Act, an employee must be compensated on a salary basis at a rate per week of not less than the 40th percentile of weekly earnings of full-time nonhourly workers in the lowest-wage Census Region. As of December 1, 2016, and until a new rate is published in the Federal Register by the Secretary, such an employee must be compensated on a salary basis at a rate per week of not less than $913 (or $767 per week, if employed in American Samoa by employers other than the Federal government), exclusive of board, lodging or other facilities. Beginning January 1, 2020, and every three years thereafter, the Secretary shall update the required salary amount pursuant to §541.607. Administrative and professional employees may also be paid on a fee basis, as defined in §541.605.

*See also, e.g., Defining & Delimiting the Exemptions for Exec., Admin., Prof'l, Outside Sales & Computer Emps.*, 84 Fed. Reg. 10900, 10968-69 (Mar. 22, 2019) (proposed amendment of 29 C.F.R. §541.600(a)[2]). The absence of such a regulation addressing automobile expense

---

[2] The amended regulation would read: "To qualify as an exempt executive, administrative or professional employee under section 13(a)(1) of the Act, an employee must be compensated on a salary basis at a rate of not less than $679 per week (or $455 per week if employed in the Commonwealth of the Northern Mariana Islands, Guam, Puerto Rico, or the U.S. Virgin Islands by employers other than the Federal Government, or $380 per week if employed in American

FPDOCS 35298759.2

reimbursement rates simply emphasizes the non-binding nature of the FOH's reference to the IRS mileage rate.

And, of course, it does not bind courts. The Sixth Circuit has observed that the FOH is not a regulation, but an "interpretation[] of Department regulations" that was "not subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment"; the FOH is therefore "not controlling or entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)." *Stein v. hhgregg, Inc.*, 873 F.3d 523, 532 (6th Cir. 2017) (internal quotation marks, parallel & pinpoint citations omitted). The FOH is merely among the "interpretations, opinions, and explanatory guidelines" of the DOL, to which a court "***may*** properly resort for guidance" under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *Stein*, 873 F.3d at 532 (emphasis added). The weight to be given such matter in a particular case "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Id.* (quoting *Skidmore*, 323 U.S. at 140).

FOH §30c15 is entitled to no special weight. With all due respect to the DOL, it is anything but thorough. It was last updated on June 30, 2000. *See* https://www.dol.gov/whd/foh/# (last visited Apr. 12, 2019). It relies on IRS Publication 917, which was last published in 1995, and is not a current IRS publication. *See* https://apps.irs.gov/app/picklist/list/priorFormPublication.html?value=publ+917&criteria=formNumber&submitSearch=Find (last visited Apr. 12, 2019). The most current IRS statement of policy on the standard mileage rate is Revenue Procedure 2010-51, 2010-51 I.R.B. 883, 2010

---

Samoa by employers other than the Federal Government), exclusive of board, lodging or other facilities."

WL 4922210 (Dec. 20, 2010). Notably, the IRS itself does not make that rate mandatory; standard mileage rates are "optional" for "computing the deductible costs of operating an automobile." Rev. Proc. 2010-51 §1 (noting also that "[t]axpayers are not required to use the substantiation methods described in this revenue procedure"); *see also id.* §4.01 ("A taxpayer *may* use the business standard mileage rate") (emphasis added). There is no way to comment on the "validity" of §30c15's "reasoning," because it does not offer any; nor are there any "earlier or later pronouncements" by the DOL on the matter against which to measure §30c15's "consistency."

One does not have to go quite so far as one recent district court decision, which opined that "[t]he IRS rate is arbitrary and has no logical tie to the ultimate question in a minimum wage case – whether [the plaintiff] was paid the federal minimum wage taking to accounts reimbursements he received for vehicle expenses he incurred." *Sullivan v. PJ United, Inc.*, No. 13-1275, ___ F. Supp. 3d ___, 2018 WL 6220114, at *9 (N.D. Ala. July 19, 2018). It is enough to recognize that the IRS rate is not legally binding, not particularly persuasive, and certainly not "the proper measure of minimum wage compliance for pizza delivery drivers" that the Court instructed the parties to supply. (Doc. 113.) Rather, as discussed in the next section, the proper measure of minimum wage compliance is to determine whether the drivers were paid the minimum wage.

## II. Minimum Wage Compliance Is Measured by Determining Whether Plaintiffs' Job-Related Expenses Unlawfully "Cut Into" the Minimum Wage.

It must be noted at the outset, and is discussed in more detail below, that Plaintiffs have the burden of proving they were not paid the applicable minimum wage. An "FLSA plaintiff must prove by a preponderance of the evidence that he or she performed work for which he or she was not properly compensated." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 602 (6th Cir. 2009) (internal quotation marks & brackets omitted); *accord, e.g., Anderson v. Mt. Clemens*

*Pottery Co.*, 328 U.S. 680, 686-87 (1946)*; Robinson v. Roberts Hotels Mgmt. Detroit, LLC*, 661 F. App'x 890, 891 (6th Cir. 2016); *Oldham v. USPS*, 465 F. App'x 440, 444 (6th Cir. 2012).

**A.    Minimum Wage Compliance Is Measured by the Week.**

Whether an employer is paying an employee the applicable minimum wage is determined by the week:

> [T]he minimum wage requirement is generally met when an employee's total compensation for the week divided by the total number of hours worked equals or exceeds the required hourly minimum wage, and the overtime requirements are met where total compensation for hours worked in excess of the first forty hours equals or exceeds one and one-half times the minimum wage.

*Stein*, 873 F.3d at 537 (citing, *cum alio*, *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960)); *accord, e.g., In re Amazon.com, Inc., Fulfillment Ctr. FLSA Wage & Hour Litig.*, 905 F.3d 387, 406 (6th Cir. 2018), *pet. for cert. docketed*, No. 18-1154 (Mar. 6, 2019). As stated in the seminal *Klinghoffer* decision,

> the Congressional purpose is accomplished so long as the total weekly wage paid by an employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement. Hence so long as this weekly requirement is met, 206(a) is not violated....

*Klinghoffer*, 285 F.2d at 490.

**B.    Minimum Wage Compliance Is Measured Pursuant to the DOL's "Anti-Kickback" Regulation.**

Here, Plaintiffs allege Defendants under-reimbursed them for the automobile expenses they incurred in delivering pizzas, with the result that their net hourly wage fell below the federal and state minimums. In such a case, the DOL's "anti-kickback" regulation must be consulted. *E.g., Graham v. Word Enters. Perry, LLC*, No. 18-0167, 2018 WL 3036313, at *4 (E.D. Mich. June 19, 2018); *Sullivan*, 2018 WL 6220114, at *2; *Tyler v. JP Operations, LLC*, 342 F. Supp. 3d 837, 847 (S.D. Ind. 2018); *Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 712 (E.D. Mo.

2015).

The anti-kickback regulation provides, in pertinent part, that

"wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the [Fair Labor Standards] Act will not be met where the employee "kicks-back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kick-back" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act *in any workweek* when the cost of such tools purchased by the employee *cuts into the minimum* or overtime *wages* required to be paid him under the Act.

29 C.F.R. §531.35 (emphasis added).

Thus, Plaintiffs must prove, by a preponderance of the evidence, that "Defendants' reimbursement method undercompensates the amount of actual expenses that [Plaintiffs] incurred delivering for Defendants, such that the kick-back given to Defendants reduce[d] [Plaintiffs'] hourly wage below the federal [or state] minimum wage" in one or more workweeks. *Sullivan*, 2018 WL 6220114, at *2; *see also, e.g., Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010) (to state a minimum wage claim and survive a Rule 12(b)(6) motion, the complaint must allege what plaintiffs "were paid on an hourly basis, what amounts they expended delivering pizzas, what they were reimbursed per-delivery, or any other facts that would allow this Court to infer that Plaintiffs have actually received less than the minimum wage"); *Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1288 (D. Kan. 2010) (dismissing complaint where plaintiffs failed to allege, among other things, "their actual vehicle and other job-related expenses"). Plaintiffs would not meet their burden of proof merely by showing they were not fully reimbursed for their work-related vehicle expenses; "rather, such failure must be in an amount great enough to bring plaintiffs' wages for a particular time period [i.e., a given workweek] below the legal minimum." *Wass*, 688 F.

10

Supp. 2d at 1288; *see* 29 C.F.R. §531.35.

This requires Plaintiffs to introduce highly specific individual evidence. To illustrate, the Third Amended Complaint alleges that Defendants paid Plaintiffs wages of up to $1.00 per hour above the minimum wage and reimbursed them at a flat rate of up to $1.60 per delivery. (Compl. ¶¶162-65, 175.)[3] Plaintiffs allege that they average four to 10 miles "per round-trip delivery." (Compl. ¶178.) Though Plaintiffs allege they "make approximately 2-4 deliveries per hour" (Compl. ¶179), they do not allege that each of these was a "round trip" – one from the store to the customer and back again – and such an allegation would be highly implausible in light of the obvious inefficiency. Thus, depending on the municipality and neighborhood where each store was located, multiple deliveries could involve anything from a matter of mere feet or yards between customers, to blocks, to miles; the consumption of gasoline would accordingly vary widely.

Besides "gasoline expenses," Plaintiffs allege a plethora of vehicle-related expenses (Compl. ¶¶171-72) that also must vary widely from individual to individual, including:

- Automobile costs: Some Plaintiffs would buy new cars, some used; some expensive models, some inexpensive; some would not have purchased anything at all, for example high school or college students borrowing their parents' cars for their part-time pizza delivery jobs.

- Depreciation: The rate could be significant for new cars; virtually nonexistent for older vehicles.

- Maintenance and parts: More maintenance is required for older cars, less for newer vehicles; maintenance and parts can be far more expensive for some makes and models than others.

- Insurance: Rates are higher for newer and more expensive automobiles, and for drivers with spotty driving records; some drivers may not pay for insurance at all, as in the case of students borrowing their parents' cars.

---

[3] Because there has been no discovery, Defendants are relying on the allegations of the Third Amended Complaint, though only for this motion.

Moreover, as the regulations, *Sullivan*, *Smith*, and *Wass* point out, the burden is on Plaintiffs to demonstrate what portion, if any, of the foregoing expenses are allocable to their pizza delivery activities for Defendants, rather than their personal activities.

**C.    The Burden of Proof Always Remains with the Plaintiffs.**

The burden of proof is squarely on Plaintiffs.  To repeat, an "FLSA plaintiff must prove by a preponderance of the evidence that he or she performed work for which he or she was not properly compensated." *O'Brien*, 575 F.3d at 602; *Robinson*, 661 F. App'x at 891; *Oldham*, 465 F. App'x at 444.  "An employee who brings suit under §16(b) of the Act [29 U.S.C. §216(b)] for unpaid minimum wages or unpaid overtime compensation ... has the burden of proving that he performed work for which he was not properly compensated." *Mt. Clemens*, 328 U.S. at 686-87; *accord, e.g., Monroe v. FTS USA, LLC*, 860 F.3d 389, 398 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 980 (2018); *see also, e.g., Amazon*, 905 F.3d at 406 (plaintiffs are "required to identify a particular workweek in which, taking the average [hourly] rate, they received less than the minimum wage per hour").  It is important to emphasize that, under *Mt. Clemens* and its progeny, the burden of proof on *liability* always remains on plaintiffs.  The burden of proof on *damages* can partially shift to defendants, but only if the defendants have failed to maintain adequate records in accordance with the FLSA, which is not applicable here, as Defendants were not required to maintain records of drivers' vehicle expenses.

**1.    In Every Case, the Burden of Proving Liability Is on the Plaintiffs.**

Under *Mt. Clemens*, to establish liability the employee must "prove[] that he has in fact performed work for which he was improperly compensated." *Mt. Clemens*, 328 U.S. at 687.  The burden of proving *liability* is always on plaintiffs.  In the unusual case where records employers are required to maintain under §11(c) of the FLSA, 29 U.S.C. §211(c), are absent, the employee

still must prove liability, but the burden of proving *damages* relaxes: The employee will meet his or her burden of production on damages by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Mt. Clemens*, 328 U.S. at 687.

> The Sixth Circuit has explained this in some detail:
>
> To begin with, a FLSA **plaintiff must prove by a preponderance of evidence** that he or she performed work for which he or she was not properly compensated. To determine the extent of damages, the plaintiff can prove his or her "under-compensation" damages through discovery and analysis of the employer's code-mandated records. However, if the employer kept inaccurate or inadequate records, the plaintiff's burden of proof is relaxed, and, upon satisfaction of that relaxed burden, the onus shifts to the employer to negate the employee's inferential damage estimate.
>
> Plaintiffs imply that their claims should not have been dismissed on summary judgment because they only needed to satisfy this lesser initial burden, as the defendants' records were inaccurate and inadequate. However, *Mt. Clemens Pottery* and its progeny **do not lessen the standard of proof for showing that a FLSA violation occurred**. Rather, *Mt. Clemens Pottery* gives a FLSA plaintiff an easier way to show what his or her damages are. When an employer keeps inaccurate or inadequate records, for a FLSA plaintiff to show what his or her damages were, a FLSA plaintiff does not need to prove every minute of uncompensated work. Rather, she can estimate her damages, shifting the burden to the employer. If the employer cannot negate the estimate, then the "court may award damages to the employee, even though the result be only approximate." In short, *Mt. Clemens Pottery* **does not help plaintiffs show that there was a violation under the FLSA**. It would only allow them to prove damages by way of estimate, **if they had already established liability**.

*O'Brien*, 575 F.3d at 602-03 (quoting *Mt. Clemens*, 328 U.S. at 688; other citations, internal quotation marks, & brackets omitted; emphasis omitted & added); *see also, e.g., Robinson*, 661 F. App'x at 891 ("The employee must satisfy that burden [of proving liability] even where, as here, the employer has failed to record hours as required by the FLSA"); *Morgan v. Zieger Health Care Corp.*, No. 13-14809, 2015 WL 4040465, at *19 (E.D. Mich. June 5, 2015) ("It is clear ... that this 'relaxed' burden of proof does not help a plaintiff establish *liability* under FLSA, it merely relaxes

13

the burden in evidencing damages after liability is established") (court's emphasis); *Shelton v. Techpack Am. Inc.*, No. 10-89, 2011 WL 1813975, at *5 (E.D. Tenn. May 6, 2011) ("The lesser standard of proof applies only to establishing damages, not to proving a violation of the FLSA"); *Bauer v. Singh*, No. 09-194, 2010 WL 5088126, at *9 (S.D. Ohio Dec. 7, 2010) ("the burden shifting framework [is] applicable only to relax the burden of proving damages, not liability").

Therefore, regardless of the state of Defendants' records, the burden is on Plaintiffs to prove that in a given workweek the vehicle expenses they incurred delivering pizzas on Defendants' behalf "cut[] into the minimum ... wages required to be paid [them] under the Act." 29 C.F.R. §531.35; *see also Sullivan*, 2018 WL 6220114, at *2; *Wass*, 688 F. Supp. 2d at 1288.

> **2. Plaintiffs' Burden of Proof on Damages Will Not Be Relaxed Here, Because *Defendants* Are Not Required to Maintain Records of *Plaintiffs'* Automobile Expenses.**

Contrary to what the Third Amended Complaint suggests, neither the FLSA nor the applicable regulations required *Defendants* to maintain records of *Plaintiffs'* automobile expenses. Therefore, the absence of such records will not relieve Plaintiffs of their burden of proving damages, as well as liability, by a preponderance of the evidence.

"[T]he exact records to be retained by Defendants are provided by statute and DOL regulation." *Sullivan*, 2018 WL 6220114, at *4. Section 11(c) of the FLSA provides that every employer

> shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this chapter or the regulations or orders thereunder.

29 U.S.C. §211(c).

The recordkeeping regulations appear at 29 C.F.R. Part 516 – Records to Be Kept By

Employers. Most are irrelevant on their face. The few worth reviewing are revealed, upon examination, to impose no requirement on *employers* to maintain records of *employees*' expenses. 29 C.F.R. §516.2, entitled "Employees subject to minimum wage or minimum wage and overtime provisions pursuant to section 6 or sections 6 and 7(a) of the Act," requires employers to maintain records of each employee's:

- name
- home address
- date of birth
- sex and occupation
- time of day and week on which the employee's workweek begins
- regular hourly rate for any workweek in which overtime compensation is due
- hours worked each day and week
- total daily or weekly straight-time earnings
- total premium pay for overtime hours
- total additions to or deductions from wages paid each pay period
- total wages paid each pay period
- date of payment and pay period covered by payment
- records of retroactive payment of wages
- employees working on fixed schedules

29 C.F.R. §516.5, entitled "Records to be preserved 3 years," requires employers to maintain:

- payroll records
- certain collective bargaining agreements
- certain plans, trusts, and employment contracts
- certificates and notices listed or named in Part 516
- sales and purchase records in the form the employer maintains in the ordinary course of business

29 C.F.R. §516.6, entitled "Records to be preserved 2 years," requires employers to maintain:

- basic employment and earnings records
- wage rate tables
- order, shipping, and billing records
- records of additions to or deductions from wages paid

Nothing in the foregoing regulations, or in any other regulations in Part 516, requires employers to maintain records of employee expenses. The DOL itself has acknowledged there is no such requirement. *See* USDOL Op. Letter FLSA2008-10, 2008 WL 5483046, at *3 (Oct. 24,

2008) (Where employees purchase uniforms that their employer requires them to wear, "no record of such private transactions need by kept [by the employer] under the FLSA"), *also available at* https://www.dol.gov/whd/opinion/FLSA/2008/2008_10_24_10_FLSA.pdf (last visited Apr. 11, 2019).

To put it mildly, "[w]ithout clearer indication from the DOL, it does not appear that Defendants w[ould] violate[] recordkeeping requirements by failing to track [Plaintiffs'] actual expenses." *Sullivan*, 2018 WL 6220114, at *7. To put it bluntly, "the obligation to keep employee records extends to keeping records of *deductions* from wages, not keeping records of employee *expenses*." *Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 302 (E.D.N.Y. 2013) (citing 29 C.F.R. §516.2(a)(10); emphasis added); *accord, e.g., Garcia v. Koning Rests. Int'l, L.C.*, No. 12-23629, 2013 WL 8150984, at *7 n.9 (S.D. Fla. May 10, 2013). The reason for that is virtually self-evident – "it would not make sense for the FLSA to impose on an employer the obligation to keep a record when control over that record is exercised by the employee, rather than the employer." *Morangelli*, 922 F. Supp. 2d at 302; *see also, e.g., Wass*, 688 F. Supp. 2d at 1289 (In dismissing complaint, rejecting plaintiffs' argument that defendant "already must have all of the information about the proper reimbursement of plaintiffs' expenses": "Plaintiffs have not explained how defendant would know plaintiffs' actual expenses for vehicle insurance or depreciation or maintenance, for example, *in the absence of any allegation that plaintiffs have submitted actual expense information to defendant*") (emphasis added).

Consequently, it is up to Plaintiffs, not Defendants, to produce evidence of their work-related vehicle expenses.

### D. Basic Principles for Determining Whether Plaintiffs' Work-Related Vehicle Expenses "Cut Into" the Minimum Wage.

To recap:

16

- Minimum-wage compliance is measured by the workweek (*supra* §II(A)).

- In an expense-reimbursement case, the minimum wage requirement is violated in a given workweek only if plaintiffs prove that their under-reimbursed vehicle work-related expenses were great enough in amount to reduce their wages for that week below the legally-mandated minimum, or as the regulation puts it, to "cut into" the minimum wage (*supra* §II(B)).

- The burden of proving *liability* for underpayment of minimum wages is *always* on the plaintiffs (*supra* §II(C)(1)).

- The plaintiffs' burden of proving *damages* is relaxed *only* when their ability to prove them is compromised by defendants' failure to maintain records in accordance with the FLSA (*supra* §II(C)(2)).

- Neither the FLSA nor the relevant regulations require an *employer* to maintain records of an *employee's* expenses, so the absence of such records cannot relax the plaintiffs' burden of proof (*id.*).

In addition, because what is at issue are the expenses of running and maintaining personally-owned automobiles, not all automobile expenses are going to be work-related; and since the burden of proof is squarely on Plaintiffs, it is up to them to establish **what automobile expenses are attributable to delivering pizzas for Defendants**. *See, e.g., Sullivan*, 2018 WL 6220114, at *2 (plaintiff must show that "Defendants' reimbursement method undercompensates the amount of actual expenses that [plaintiff] *incurred delivering for Defendants*, such that the kick-back given to Defendants reduce[d] [plaintiff's] hourly wage below the federal minimum wage" in one or more workweeks) (emphasis added); *Smith*, 694 F. Supp. 2d at 1230 (plaintiffs must show "what amounts they expended *delivering pizzas*") (emphasis added); *Wass*, 688 F. Supp. 2d at 1288 (plaintiffs must establish "their actual vehicle and other *job-related expenses*") (emphasis added); 29 C.F.R. §778.217(a) (right to reimbursement arises only "[w]here an employee incurs expenses *on his employer's behalf* or where he is required to expend sums *solely by reason of action taken for the convenience of his employer*") (emphasis added); 29 C.F.R. §531.32(c) ("transportation charges" reimbursable only "where such transportation is an *incident*

*of and necessary to the employment*") (emphasis added).[4]

Therefore, minimum wage compliance is properly measured by subtracting each Plaintiff's under-reimbursed pizza delivery-related automobile expenses, if any, from his or her wages in each workweek. If the resulting difference (the Plaintiff's net weekly wages) is greater than the applicable minimum wage for that workweek (defined as applicable hourly minimum wage x hours worked that week), then Defendants have complied with the minimum wage requirement that week with respect to that Plaintiff. If the resulting difference is less than the applicable minimum wage for that workweek, then Defendants have not complied with the minimum wage requirement for that week. This formula can be expressed in the following simple arithmetical equation:

Individual Plaintiff's Weekly wages

−   Under-reimbursed automobile expenses
        (i.e., automobile expenses incurred delivering pizzas
        − reimbursement paid to individual Plaintiff by Defendants)

=   Individual Plaintiff's net weekly wages

▶ If the individual Plaintiff's net weekly wages ***equal or exceed*** the applicable minimum wage for that workweek, then Defendants have ***complied with the minimum wage*** requirement for that workweek;

▶ If the individual Plaintiff's net weekly wages are ***less than*** the applicable minimum wage for that workweek, then Defendants ***have not complied with the minimum wage*** requirement for that workweek.

The foregoing is the measure of minimum wage compliance dictated by the FLSA, the relevant regulations, and the controlling case law. Therefore, pursuant to the Court's Order, it constitutes the "proper measure of minimum wage compliance for pizza delivery drivers." (Order, Doc. 113.)

---

[4] 29 C.F.R. §531.32(c) is cross-referenced in 29 C.F.R. §531.35, the anti-kickback regulation. 29 C.F.R. §778.217 is cross-referenced in 29 C.F.R. §531.32(c).

III.    **Employers Are Only Required to "Reasonably Approximate" Employees' Work-Related Expenses.**

Even if plaintiffs prove their under-reimbursed expenses "cut into" their minimum wage, they have still not prevailed.  Under the DOL regulations, Plaintiffs must also prove that the reimbursement they received from Defendants did not "reasonably approximate" their actual expenses.  29 C.F.R. §§531.35, 531.32(c), 778.217.

Reimbursement by an employer to an employee to cover expenses incurred on the employer's behalf or for the employer's convenience is sufficient if "the reimbursement *reasonably approximates* the expenses incurred."  29 C.F.R. §778.217(a) (emphasis added).  For example, reimbursement can be the "reasonably approximate amount expended by an employee in purchasing, laundering or repairing uniforms or special clothing which his employer requires him to wear," *id.* §778.217(b)(2); or the "reasonably approximate amount expended by an employee, who is traveling 'over the road' on his employer's business, for transportation (whether by private car or common carrier) and living expenses away from home, other travel expenses, such as taxicab fares, incurred while traveling on the employer's business," *id.* §778.217(b)(3).

Thus, courts in pizza delivery cases have acknowledged that the employer need only "reasonably approximate" employees' delivery-related automobile expenses.  "[T]he regulations applicable to the FLSA allow employers to *reasonably approximate* the amount of an employee's expenses incurred on his employer's behalf..."  *Perrin*, 114 F. Supp. 3d at 721 (citing 29 C.F.R. §778.217; emphasis added)[5]; *accord, e.g., Tyler*, 342 F. Supp. 3d at 847-49 (citing *Perrin* and §778.217); *see also, e.g., Smith*, 694 F. Supp. 2d at 1229-30 ("[T]o the extent that Plaintiffs allege

---

[5] The omitted language indicated by the ellipsis is, "in lieu of tracking the employee's actual expenses."  *Id.*  As explained above, however, the employer is under no obligation to track the employee's expenses.

automobile-related expense claims, they should be aware that under the applicable federal regulations, Defendant *may approximate those expenses* in reimbursing them") (emphasis added); *Wass*, 688 F. Supp. 2d at 1283 ("[U]nder the applicable federal regulations, defendant may *reasonably approximate* plaintiffs' vehicle expenses in reimbursing them") (emphasis added).

The IRS rate is *not* a reasonable approximation of a driver's delivery-related expenses, because it includes expenses that under the applicable DOL regulations cannot be attributed in their entirety, or even in significant part, to those expenses. *See* 29 C.F.R. §531.32(c) (employer responsible only for expenses "which are primarily for the benefit or convenience of the employer"); §778.217(a) (employer responsible only for expenses employee "incurs ... on his employer's behalf" or "by reason of action taken for the convenience of his employer"). The IRS's business standard mileage rate (which is the term the IRS uses) includes "[i]tems such as depreciation or lease payments, maintenance and repairs, tires, gasoline (including all taxes thereon), oil, insurance, and license and registration fees." Rev. Proc. 2010-51 §4.02. Insurance, license and registration fees, and other fixed costs must be paid regardless of whether the vehicle is operated for business or personal purposes; the same is true of depreciation. Indeed, depreciation is a significant component of the business standard mileage rate:

- In 2014, the business standard mileage rate was 56 cents per mile, of which 22 cents (39%) was for depreciation. IRS Notice 2013-80 §§3, 4.

- In 2015, the business standard mileage rate was 57.5 cents per mile, of which 24 cents (42%) was for depreciation. IRS Notice 2014-79 §§3, 4.

- In 2016, the business standard mileage rate was 54 cents per mile, of which 24 cents (44%) was for depreciation. IRS Notice 2016-1 §§3, 4.

- In 2017, the business standard mileage rate was 53.5 cents per mile, of which 25 cents (47%) was for depreciation. IRS Notice 2016-79 §§3, 4.

- In 2018, the business standard mileage rate was 54.5 cents per mile, of which 25 cents (46%) was for depreciation. IRS Notice 2018-03 §§3, 4.

In the presence of a genuine dispute, "[q]uestions of reasonableness are quintessentially jury questions." *Am. Coal Sales Co. v. Nova Scotia Power, Inc.*, No. 06-94, 2009 WL 467576, at *34 (S.D. Ohio Feb. 23, 2009); *see also, e.g., United States v. Operation Rescue Nat'l*, 111 F. Supp. 2d 948, 955 (S.D. Ohio 1999) (same); *Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Pa.*, 345 F. App'x 995, 998 (6th Cir. 2009) ("The question of whether [plaintiff's] reimbursement requests were reasonable is ... a question for the jury"); *Clark v. UPS, Inc.*, 400 F.3d 341, 350 (6th Cir. 2005) (whether defendant "exercised reasonable care is a question for a factfinder"). Questions of reasonable approximation are no different. Thus, courts in pizza delivery cases have recognized that what constitutes a reasonable approximation of employee expenses is a question of fact that, if disputed, must go to the jury. In *Tyler*, the court left to the jury the determination of the reasonable rate, because there were "three reimbursement mileage rates at issue in this case: 1) the rate paid by Jack's [the employer]; 2) the rate provided by [plaintiff] Tyler's expert; and 3) the Internal Revenue Service's ('IRS') standard business mileage rate." *Tyler*, 342 F. Supp. 3d at 848. Similarly, in *Perrin*, the court denied summary judgment because three alternative reimbursement rates were in dispute – the one the Papa John's defendants had paid, the IRS rate, and the rate posited by plaintiffs' own expert. The court ruled it would "leave to the jury the determination of whether Defendants' reimbursement rate reasonably approximated Plaintiffs' vehicle expenses." *Perrin*, 114 F. Supp. 3d at 721-22.

It is, accordingly, up to Plaintiffs to prove both that their unreimbursed expenses "cut into" their minimum wage in a given workweek, and also that Defendants' reimbursement rate did not qualify as a "reasonable approximation" of their expenses.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court to rule as follows:

(1)     That the IRS business standard mileage rate is not legally mandated;

(2)     That the proper measure of minimum wage compliance is whether, in a given workweek, an employee's net weekly wages, meaning the wages the employee received less the employee's unreimbursed work-related expenses, equaled or exceeded the applicable minimum wage;

(3)     That if the employee's net weekly wages did equal or exceed the applicable minimum wage, the employer complied; that if the employee's net weekly wages did not equal or exceed the applicable minimum wage, the employer did not comply (unless the reimbursement "reasonably approximated" expenses as in (4) below); and that the burden of proving non-compliance, by a preponderance of the evidence, is on the employee; and

(4)     That in addition to proving non-compliance, the employee must also prove, by a preponderance of the evidence, that the reimbursement for work-related expenses the employer provided did not "reasonably approximate" the employee's expenses.

A proposed order granting Defendants' cross-motion is attached hereto.

Dated:  April 22, 2019                    Respectfully submitted,

                                          **FISHER & PHILLIPS LLP**

                                          /s/ Mathew A. Parker
                                          Mathew A. Parker (0093231)
                                          250 West Street, Suite 400
                                          Columbus, OH  43215
                                          Telephone:  (614) 453-7608
                                          Facsimile:  (614) 221-1409
                                          mparker@fisherphillips.com

                                          Kathleen McLeod Caminiti (*pro hac vice*)
                                          430 Mountain Avenue, Suite 303
                                          Murray Hill, New Jersey 07974
                                          Telephone: (908) 516-1062
                                          Facsimile: (908) 516-1051
                                          kcaminiti@fisherphillips.com

J. Hagood Tighe (*pro hac vice)*
1320 Main Street, Suite 750
Columbia, South Carolina 29201
Telephone: (803) 225-0000
Facsimile: (803) 255-0202
htighe@fisherphillips.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 22, 2019, a copy of the foregoing Cross-Motion for Declaratory Summary Judgement and Memorandum In Support was filed electronically with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all ECF registered parties. Parties may access this filing through the Court's CM/ECF system.

/s/ Mathew A. Parker
Mathew A. Parker (0093231)

*Counsel for Defendants*