**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | |
|---|---|
| Tammy Hatmaker, Stephen Hatmaker, Kendall Peyton, Alan Huxford, Derek Green, and Bobby White, *On behalf of themselves and those similarly situated*, | Case No. 3:17-cv-146 |
| Plaintiffs, | |
| v. | Judge Thomas Rose |
| PJ Ohio, LLC, BLD Brands, LLC, Serazen, LLC, PJ Pizza Ohio, LLC, PJ Las Vegas, LLC, PJ North Carolina, LLC, Doug Pak, and Darcie Mangus, | |
| Defendants. | |

**DEFENDANTS' BRIEF IN RESPONSE**
**TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

**INTRODUCTION**

In its April 8, 2019 Scheduling Order, the Court instructed the parties to file cross-motions for partial summary judgment on "the question of what constitutes a proper measure of minimum wage compliance for pizza delivery drivers." (Sched. Order, Doc. 113.)  The cross-motions raise purely legal questions, discovery has not been conducted, and there is not a full record before the Court.[1]  The answer to the Court's question, as set forth in Defendants' moving brief (Defs.' Br., Doc. 117), is that the minimum wage requirement has been complied with in either of the following

---

[1] Defendants have not yet had the opportunity to conduct discovery and it is their understanding that the Court's question to the parties raises a question of law. Nevertheless, in an abundance of caution, accompanying this memorandum are: (1) Declaration of Kathleen McLeod Caminiti pursuant to Rule 56(d) ("Caminiti Decl."); and (2) Declaration of Darcie Mangus, COO of Defendant Serazan ("Mangus Decl.").  Also accompanying this memo is the Declaration of Heidi Skatrud ("Skatrud Decl."), former Senior Vice President of Product Management & Operations of Runzheimer, explaining the components of the IRS business rate, which Runzheimer developed on behalf of the IRS.

1

situations:

- In a given workweek, the difference between (1) the delivery drivers' wages and (2) their unreimbursed pizza delivery expenses is (3) equal to or greater than the applicable minimum wage (Defs.' Br. at 8-12, 17-18); or

- In a given workweek, (1) the delivery drivers' wages are equal to or greater than the applicable minimum wage, and (2) the employer's reimbursement to the drivers for their pizza delivery expenses "reasonably approximate" those expenses (Defs.' Br. at 19-21).

Plaintiffs have the burden of proving, by a preponderance of the evidence, that they were improperly compensated; they therefore have the burden of proving both that the unreimbursed portion of their expenses reduced their wages below the minimum, and that Defendants' reimbursement did not reasonably approximate their actual expenses. (Defs.' Br. at 8-9, 12-16.) Plaintiffs' burden includes producing records of their expenses, since the regulations of the United States Department of Labor ("DOL") implementing the Fair Labor Standards Act ("FLSA") do not require employers to maintain records of employee expenses. (Defs.' Br. at 14-16.)

In their briefing, Plaintiffs restate – or rather misstate – the Court's question as, "Should the DOL Field Operations Handbook's reimbursement methodology for pizza delivery drivers apply as a matter of law." (Pls.' Br., Doc. 116, at 1.) Plaintiffs then answer the question "yes," relying on §30c15 of the Field Operations Handbook (generally, "FOH"), which they profoundly misread. Section 30c15 specifically, and the FOH more broadly, are written in entirely permissive terms and state that the employer "may" – not "shall" – reimburse at the IRS rate. Furthermore, §30c15 does not purport to impose any requirements on employers as to recordkeeping (or mileage reimbursement rates). If it did, it would be superseded by the DOL's FLSA recordkeeping regulations, which do not require employers to maintain records of employee expenses, and which permit reimbursement of a "reasonable approximation" of employee expenses. Notably, the DOL regulations do not even mention the IRS rate, which, as Defendants have already shown at some

length, is not a reasonable proxy for pizza delivery drivers' actual expenses. (Defs.' Br. at 5-8, 20-21.)

Defendants, accordingly, respectfully request that the Court reject Plaintiffs' proposal, and adopt Defendants' measure of minimum wage compliance for pizza delivery drivers.

## LEGAL ARGUMENT

### I. Plaintiffs Misread the DOL's Field Operations Handbook.

According to Plaintiffs, "in the pizza delivery driver context ... determining and maintaining records of each employee's actual expenses is an extremely cumbersome task *for the employer*"; therefore, they say that in §30c15 of the FOH, the DOL gave "employers a choice in order to ease their burden: either (1) keep records of delivery drivers' actual expenses and reimburse them for them or (2) reimburse drivers at the IRS standard business mileage rate." (Pls.' Br. at 6-7; emphasis added.) That is wrong; neither the FOH as a whole nor §30c15 specifically imposes such requirements on employers.

The FOH's introductory section, posted on the Wage and Hour Division's website, describes the FOH as having a very limited purpose; it is "an operations manual that provides Wage and Hour Division (WHD) investigators and staff with interpretations of statutory provisions, procedures for conducting investigations, and general administrative guidance" and "is *not* used as a device for establishing interpretive policy." https://www.dol.gov/whd/foh/ (last visited June 10, 2019) (emphasis added). The Sixth Circuit has observed that the FOH contains mere "interpretations of Department regulations" that "are not subject to the rigors of the Administrative Procedure Act, including public notice and comment, and therefore are not controlling under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-44 (1984)." *Stein v. hhgregg, Inc.*, 873 F.3d 523, 531-32 (6th Cir. 2017). At most, courts

3

may "resort for guidance" to such matter. *Id.* at 532.

Section 30c15 itself uses permissive, not mandatory, language, providing only that "[a]s an enforcement policy, the IRS standard business mileage rate ... *may* be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes." FOH §30c15(a) (emphasis added). In light of the permissive language of §30c15, the court in *Sullivan v. PJ United, Inc.*, 362 F. Supp. 3d 1139 (N.D. Ala. 2018), rejected an argument just like Plaintiffs' here:

> [Plaintiff] Sullivan reads §30c15 for the proposition that if Defendants did not record and pay Sullivan's actual costs incurred during delivery on behalf of Defendants, then Defendants must reimburse Sullivan at the IRS standard business mileage rate. The text of §30c15, "the IRS standard business mileage rate ... may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes" does not support Sullivan's interpretation. Nowhere does §30c15 require Defendants to record Sullivan's actual costs, the section instead makes a general reference to "associated recordkeeping." ...[T]he FLSA and DOL's regulations do not require employers to track employees' actual expenses incurred. To the extent §30c15 purports to require employers to track their employees' actual expenses, it is not entitled to deference because it has no basis in the DOL's recordkeeping regulations. Nor does it make sense to require the Defendants to reimburse Sullivan at the IRS standard – ... an employer may either pay actual costs or use a reasonable approximation thereof. The IRS rate is arbitrary and has no logical tie to the ultimate question in a minimum wage case – whether Sullivan was paid the federal minimum wage taking into account reimbursements he received for vehicle expenses he incurred.

*Id.* at 1154 (record citation omitted).

As *Sullivan* indicates, and as Defendants discussed at length in their moving brief, nowhere in the DOL's extensive employer recordkeeping regulations, which are set forth in 29 C.F.R. Part 516, is there a provision requiring *employers* to keep records of *employee* expenses. (Defs.' Br. at 14-16.) The DOL has acknowledged there is no such requirement. *See* USDOL Op. Letter FLSA2008-10, 2008 WL 5483046, at *3 (Oct. 24, 2008) ("no record of such private transactions need by kept [by the employer] under the FLSA"). Court decisions besides *Sullivan* likewise have

acknowledged that employers have no such recordkeeping requirement. *See, e.g., Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 302 (E.D.N.Y. 2013) ("the obligation to keep employee records extends to keeping records of *deductions* from wages, not keeping records of employee *expenses*") (citing 29 C.F.R. §516.2(a)(10); emphasis added); *accord, e.g., Garcia v. Koning Rests. Int'l, L.C.*, No. 12-23629, 2013 WL 8150984, at *7 n.9 (S.D. Fla. May 10, 2013). The reason there is no such requirement is that "it would not make sense for the FLSA to impose on an employer the obligation to keep a record when control over that record is exercised by the employee, rather than the employer." *Morangelli*, 922 F. Supp. 2d at 302; *see also, e.g., Wass v. NPC Int'l, Inc.*, 688 F. Supp. 2d 1282, 1289 (D. Kan. 2010)

Finally, while some courts suggest the IRS rate *may* be an appropriate reimbursement rate, they also observe that the appropriate rate in a given case is an issue of fact that, if disputed, must be left to the jury. *E.g., Tyler v. JP Operations, LLC*, 342 F. Supp. 3d 837, 849, 850 (S.D. Ind. 2018); *Young v. Omnicare, Inc.*, No. 16-9788, 2018 WL 3017342, at *3-4 (S.D. W. Va. June 16, 2018), *aff'd*, 750 F. App'x 230 (4th Cir. 2019); *Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707, 721-22 (E.D. Mo. 2015).

Accordingly, Plaintiffs' reading of FOH §30c15 to require *employers* either to maintain records of *employee* expenses, or else to pay the IRS standard business mileage rate, is a baseless *mis*reading, contradicted by the language of the FOH, the relevant DOL regulations, and the case law. It should be rejected.

## II.    The Court Should Not "Give Deference" to Plaintiffs' Misreading of the Field Operations Handbook.

Plaintiffs say "[t]he Court should give deference to the DOL Field Operations Handbook" (Pls.' Br. at 8), but that is not what they really mean. What they really mean is that the Court should give deference to their misreading of FOH §30c15 as requiring rather than permitting use

of the IRS mileage rate. Plaintiffs contend that the FOH is entitled to deference under *Auer v. Robbins*, 519 U.S. 452 (1997), because the anti-kickback regulation, 29 C.F.R. §531.35, is "ambiguous." (Pls.' Br. at 8.) That contention is wrong on multiple levels: The anti-kickback regulation is as clear as could be; the Sixth Circuit does not apply *Auer* to the FOH; and if *Auer* were applicable, Plaintiffs' misconstruction of the FOH would not be entitled to deference.

A. **The Anti-Kickback Regulation Is Unambiguous.**

Plaintiffs argue that §531.35 is ambiguous because it "does not set forth a methodology for calculating mileage rates, or provide any other guidance as to how to determine or put a value on the expenses related to operating an automobile for work. Thus, there is ambiguity as to how to calculate the mileage rate." (Pls.' Br. at 8.) There is no ambiguity. Section 531.35 simply interprets the FLSA's minimum wage and overtime provisions, 29 U.S.C. §§206 and 207, to mean there is "a violation of the Act in any workweek when the cost of [tools of the trade] cuts into the minimum or overtime wages required to be paid to [the employee] under the Act." 29 C.F.R. §531.35. Under the regulation, then, the question is solely whether Plaintiffs' work-related expenses "cut into" their minimum wage in a given workweek. "[A] defendant would not be in violation of the minimum wage laws merely by failing to reimburse plaintiffs for expenses; rather such failure must be in an amount great enough to bring plaintiffs' wages for a particular time period below the legal minimum." *Wass*, 688 F. Supp. at 1288.

Therefore, under the regulation each Plaintiff must prove that in a given workweek the unreimbursed portion of his or her work-related expenses was great enough to reduce his or her wages in that workweek below the legally-mandated minimum, or as the regulation puts it, to "cut into" the minimum wage. (Defs.' Br. at 9-12, 17.) *See, e.g., Sullivan*, 362 F. Supp. 3d at 1146 (plaintiff must prove that "Defendants' reimbursement method undercompensates the amount of

6

actual expenses that [plaintiff] incurred delivering for Defendants," such that the expenses "reduce[ed] [plaintiff's] hourly wage below the federal minimum wage"); *Smith v. Pizza Hut, Inc.*, 694 F. Supp. 2d 1227, 1230 (D. Colo. 2010) (to state a minimum wage claim, the complaint must allege what plaintiffs "were paid on an hourly basis, what amounts they expended delivering pizzas, what they were reimbursed per-delivery, or any other facts that would allow this Court to infer that Plaintiffs have actually received less than the minimum wage"); *Wass*, 688 F. Supp. 2d at 1288 (dismissing complaint where plaintiffs failed to allege, among other things, "their actual vehicle and other job-related expenses"). This point should be emphasized: **Plaintiffs have the burden of proof**. *See, e.g., O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 602 (6th Cir. 2009) (An "FLSA plaintiff must prove by a preponderance of the evidence that he or she performed work for which he or she was not properly compensated"); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946)*; Robinson v. Roberts Hotels Mgmt. Detroit, LLC*, 661 F. App'x 890, 891 (6th Cir. 2016); *Oldham v. USPS*, 465 F. App'x 440, 444 (6th Cir. 2012). (*See generally* discussion in Defs.' Br. at 12-17.)

Plaintiffs' argument about "ambiguity," and a "methodology for calculating mileage rates," should not divert the Court's attention from the only relevant question under the anti-kickback regulation: Can Plaintiffs prove by a preponderance of the evidence that the unreimbursed portion of their expenses, if any, reduced their wages below the statutory minimum in any particular workweek? As discussed in Point III, below, only if the answer to that question is "yes" does the further question arise of mileage rates and the estimation of work-related automobile expenses. (*See also* Defs.' Br. at 19-21.)

    **B.**    **The Sixth Circuit Does Not Apply *Auer* Deference to the DOL's Field Operations Handbook.**

Plaintiffs say "[t]he Sixth Circuit has determined the DOL Handbook [is] worthy of *Auer*

FPDOCS 35603633.1

deference," citing in support of that proposition *Stein v. hhgregg, Inc.*, *supra*. (Pls.' Br. at 10.) That could not be more wrong. *Stein* does not even mention *Auer*, but rather "recognize[s]" that "the DOL Field Operations Handbook" and the "several DOL opinion letters" the opinion refers to "are not controlling under *Chevron*." *Stein*, 873 F.3d at 531-32. Instead of *Auer*, *Stein* cites *Skidmore v. Swift & Co*, 323 U.S. 134 (1944), under which "interpretations, opinions, and explanatory guidelines," like the FOH and DOL opinion letters, "'constitute a body of experience and informed judgment to which courts and litigants *may* properly resort for guidance.'" *Stein*, 873 F.3d at 532 (quoting *Skidmore*, 323 U.S. at 140; emphasis added). "The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* (quoting *Skidmore*, 323 U.S. at 140).

In *Stein*, the question was whether the employer's draw-recovery practice with respect to commissioned employees violated the portion of 29 C.F.R. §531.35 that prohibits kickbacks of wages already "delivered" to employees. *Stein* analyzed the regulation and held that the employer's practice did not violate it. *Stein*, 873 F.3d at 531. Only after conducting its own independent analysis did the court add, "Our determination that this [draw-recovery] policy is lawful finds support in the DOL Field Operations Handbook as well as several DOL opinion letters" that reflected "a longstanding position of the DOL." *Id.*

The portion of §531.35 at issue in this case simply prohibits an employee's unreimbursed work-related expenses from "cutting into" the employee's minimum wage in a given workweek. The regulation does not and need not mention reimbursement rates, which is why §30c15 of FOH uses terminology that is entirely permissive. Moreover, Plaintiffs' position is not

8

supported by any DOL opinion letters, let alone a line of opinion letters going back nearly 40 years as in *Stein*. There is no reason to "defer" to §30c15 as it is written, and certainly no reason to defer to Plaintiffs' misinterpretation of it. (*See also* Defs.' Br. at 7-8.)

Finally, Plaintiffs cite out-of-circuit decisions granting *Auer* deference to the FOH's interpretation of the DOL's dual jobs regulation, 29 C.F.R. §531.56(e). (Pls.' Br. at 9-11.) Since such decisions employ an inapplicable standard of deference to an unrelated regulation construed in irrelevant sections of the FOH, they are inapposite. Moreover, the Northern District of Ohio has recently rejected the FOH's interpretation of the dual jobs regulation and the out-of-circuit decisions relying on it:

> The Court recognizes that the Sixth Circuit has not afforded the FOH any type of deference or binding effect in relation to its interpretation of the FLSA. There is no reason for this Court to deviate from the holdings of the Sixth Circuit based on non-binding decisions by other courts outside this Circuit. Indeed, this is consistent with the WHD [i.e., Wage and Hour Division] of the DOL itself, which states that the FOH "is not used as a device for establishing interpretative policy."

*Matusky v. Avalon Holdings Corp.*, No. 17-1535, 2019 WL 1428212, at *8 (N.D. Ohio Mar. 29, 2019) (citing *Stein*; other citations & footnote omitted). Under the controlling authority of the Court of Appeals, courts in the Sixth Circuit do not apply *Auer* deference to the Field Operations Handbook. There is no reason for this Court to depart from circuit precedent.

    **C.**     **The Field Operations Handbook, as Misconstrued by Plaintiffs, Would Not Be Entitled to *Auer* Deference.**

According to Plaintiffs, FOH §30c15 requires employers to "either (1) keep records of delivery drivers' actual expenses and reimburse for them or (2) reimburse drivers at the IRS standard business mileage rate." (Pls.' Br. at 6-7.) As discussed at length above, that is a misreading of the Handbook provision and is not entitled to *Auer* deference. Furthermore, the DOL imposes no obligation on employers to keep records of employee expenses.

The DOL's recordkeeping regulations, adopted under 29 U.S.C. §211(c) and contained in 29 C.F.R. Part 516, impose extensive recordkeeping requirements on employers. (*See* Defs.' Br. at 14-16.) Noticeably absent from those regulations is a requirement for *employers* to maintain records of *employees'* expenses. The absence of such a requirement is to be expected, since "it would not make sense for the FLSA to impose on an employer the obligation to keep a record when control over that record is exercised by the employee, rather than the employer," *Morangelli*, 922 F. Supp. 2d at 302; *accord, e.g., Wass*, 688 F. Supp. 2d at 1289 – which leads to the conclusion that the absence of such a requirement is deliberate.

Another road to that conclusion is the canon of construction *expressio unius est exclusio alterius*, which the Supreme Court translates as "expressing one item of an associated group or series excludes another left unmentioned." *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017) (internal quotation marks & brackets omitted). The canon applies "when the items expressed are members of an associated group or series, justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (internal quotation marks omitted). The recordkeeping regulations impose a multitude of recordkeeping requirements on employers; a requirement to maintain records of employee expenses is not among them. Therefore, under the *expressio unius* canon, the appropriate inference is that such a requirement was "excluded by deliberate choice."

Both logic and the canons of construction, then, lead to the conclusion that the regulations' exclusion of any requirement for employers to maintain records of employee expenses was deliberate. This must be considered in light of *Auer*'s holding that deference is *not* owed to an agency's interpretation of its regulation if the interpretation is "plainly erroneous or inconsistent with the regulation." *Auer*, 519 U.S. at 461 (internal quotation marks omitted). If, as Plaintiffs

mistakenly maintain, FOH §30c15 required employers either to keep records of employee expenses or to pay the IRS standard business mileage rate, the requirement would be inconsistent with the recordkeeping regulations that deliberately omit such a requirement. Accordingly, even if *Auer* were applied to the DOL's Field Operations Handbook, FOH §30c15, as misconstrued by Plaintiffs, would not be entitled to deference.

As the *Sullivan* court observed, "[t]o the extent §30c15 purports to require employers to track their employees' actual expenses, it is not entitled to deference because *it has no basis in the DOL's recordkeeping regulations*." *Sullivan*, 362 F. Supp. 3d at 1154 (emphasis added).

## III. The IRS Mileage Rate Is Not the Default in FLSA Cases.

Plaintiffs argue that under FOH §30c15 "[t]he 'IRS rate or actual expenses' method is the appropriate measure in this and all cases" because "an employer cannot and should not be allowed to guess, estimate, or come 'close enough' to reimbursing for these substantial [that is, work-related vehicle] expenses." (Pls.' Br. at 12.) Aside from the other flaws in that assertion, it assumes the IRS rate is appropriately applied to wage and hour questions, while it actually functions simply as a safe harbor the IRS permits taxpayers to use, in lieu of actual expenses, in computing the costs they may deduct from their taxable income. (Defs.' Br. at 20; Skatrud Decl. §1, ¶5.[2])

Under the regulations, which unquestionably control, employers are not faced with the choice of paying *either* actual expenses *or* the IRS mileage rate (which is not even mentioned in the regulations). Instead, the regulations expressly provide that reimbursement of expenses incurred on the employer's behalf or for the employer's convenience is sufficient if "the

---

[2] The Skatrud Declaration is divided into two sections, with the paragraph numbering beginning anew in each section.

reimbursement *reasonably approximates* the expenses incurred." 29 C.F.R. §778.217(a) (emphasis added). For example, reimbursement can be the "reasonably approximate amount expended by an employee in purchasing, laundering or repairing uniforms or special clothing which his employer requires him to wear," *id.* §778.217(b)(2); or the "reasonably approximate amount expended by an employee, who is traveling 'over the road' on his employer's business, for transportation (whether by private car or common carrier) and living expenses away from home, other travel expenses, such as taxicab fares, incurred while traveling on the employer's business," *id.* §778.217(b)(3).[3]

Thus, courts in pizza delivery cases have acknowledged that the employer need only "reasonably approximate" employees' delivery-related automobile expenses. "[T]he regulations applicable to the FLSA allow employers to *reasonably approximate* the amount of an employee's expenses incurred on his employer's behalf...." *Perrin*, 114 F. Supp. 3d at 721 (citing 29 C.F.R. §778.217; emphasis added)[4]; *accord, e.g., Tyler*, 342 F. Supp. 3d at 847-49 (citing *Perrin* and §778.217); *see also, e.g., Smith*, 694 F. Supp. 2d at 1229-30 ("[T]o the extent that Plaintiffs allege automobile-related expense claims, they should be aware that under the applicable federal regulations, Defendant *may approximate those expenses* in reimbursing them") (emphasis added); *Wass*, 688 F. Supp. 2d at 1283 ("[U]nder the applicable federal regulations, defendant may *reasonably approximate* plaintiffs' vehicle expenses in reimbursing them") (emphasis added). In this context, as in all others, "[a]n employee who brings suit pursuant to the FLSA has the burden of proving that he performed work for which he was not properly compensated." *Tyler*, 342 F.

---

[3] 29 C.F.R. §778.217 is cross-referenced in 29 C.F.R. §531.32(c), which is cross-referenced in 29 C.F.R. §531.35.

[4] The omitted language indicated by the ellipsis is, "in lieu of tracking the employee's actual expenses." *Id.* As explained above, however, the employer is under no obligation to track the employee's expenses.

12

Supp. 3d at 845 (internal quotation marks omitted); *accord, e.g.*, *O'Brien*, 575 F.3d at 602; *Anderson*, 328 U.S. at 686-87; *Robinson*, 661 F. App'x at 891; *Oldham*, 465 F. App'x at 444.

Moreover, the IRS rate includes expenses that under the applicable DOL regulations cannot be attributed in their entirety, or even in significant part, to drivers' delivery-related expenses. *See* 29 C.F.R. §531.32(c) (employer responsible only for expenses "which are primarily for the benefit or convenience of the employer"); §778.217(a) (employer responsible only for expenses employee "incurs ... on his employer's behalf" or "by reason of action taken for the convenience of his employer"). The IRS's business standard mileage rate (which is the term the IRS uses) includes "[i]tems such as depreciation or lease payments, maintenance and repairs, tires, gasoline (including all taxes thereon), oil, insurance, and license and registration fees." Rev. Proc. 2010-51 §4.02. Insurance, license and registration fees, and other fixed costs must be paid regardless of whether the vehicle is operated for business or personal purposes; the same is true of depreciation. Indeed, depreciation is a significant component of the IRS business standard mileage rate, comprising between 39% and 47% of the rate during the period 2014 through 2018. *See* §§3 & 4 of IRS Notice 2013-80, IRS Notice 2014-79, IRS Notice 2016-1, IRS Notice 2016-79, IRS Notice 2018-03. (Defs.' Br. at 20.)

Runzheimer, the company that calculates the IRS business standard mileage rate, openly acknowledges that the IRS standard mileage rate "is a national annualized weighted average" (Skatrud Decl. §2, ¶1.), based on various inputs relating to vehicle type, fuel, maintenance, tires, depreciation, insurance, and license and registration fees. However, since such costs vary significantly by region, only those in the regions where Plaintiffs delivered pizzas are relevant; the national average is necessarily irrelevant, especially here because most of the opt-in Plaintiffs worked in Ohio and North Carolina, where certain costs are in fact lower than the national average.

13

The IRS rate is an "optional" rate taxpayers may use in computing the deductibility of business-related automobile costs.  It "is *not designed to represent specific driver mileage costs*."  (*Id.* §1, ¶5; emphasis added.)  A review of the individual items used to calculate the IRS rate make this clear:

- Vehicle Type.  "The IRS standard mileage rate reflects costs associated with a combination of *new vehicle categories*."  (*Id.* §2, ¶2; emphasis added.)  However, most Plaintiffs here drove fully-depreciated older cars.  (Mangus Decl. ¶2 & Ex. A.)

- Depreciation.  As a concept, this refers to "a vehicle's average annual decrease in value from the time it was new until the end of its useful life."  The IRS treats vehicles "as having a *5-year useful life*" for tax purposes.  (Skatrud Decl. §2, ¶3; emphasis added).  However, most Plaintiffs here drove fully depreciated older cars.  (Mangus Decl. ¶2 & Ex. A.)

- Maintenance and Tires.  The IRS rates for these costs are "*based on the prior year's vehicles*."  (Skatrud Decl. §2, ¶7; emphasis added).

- Fuel Cost.  "The IRS standard mileage rate reflects *national fuel price averages*."  (*Id.* §2, ¶4; emphasis added.)  However, fuel prices in individual U.S. cities can vary meaningfully, and the prices in Ohio and North Carolina are substantially lower than the national average.  *See, e.g.,* https://gasprices.aaa.com/ ?state=US.[5]

- Insurance.  The IRS rate is based on a national average that "does not reflect geographical variances."  (Skatrud Decl. §2, ¶5.) However, insurance rates vary significantly from state to state and even within states themselves, and the rates in Ohio and North Carolina are lower than the national average.  *See, e.g.,* https://www.insure.com/car-insurance/car-insurance-rates.html.

- Registration and License Fees.  The IRS rate "reflects national ... averages."  (Skatrud Decl. §2, ¶6.)

As the Court in *Sullivan* observed, the IRS rate "has no logical tie to the ultimate question in a minimum wage case – whether [the plaintiff] was paid the federal minimum wage taking into account reimbursements he received for vehicle expenses he incurred."  *Sullivan*, 362 F. Supp. 3d at 1154.  Some courts have opined that "the IRS standard business mileage rate *may* be a reasonable

---

[5] For example, the national average price of gasoline as of June 17, 2019 was $2.689 per gallon; the price in Ohio was $2.508; and in North Carolina $2.455.  https://gasprices.aaa.com/ ?state=US.

approximation of employee vehicle expenses," but that it is *not* the "*only* reasonable approximation of such expenses"; so "an employer's failure to use the IRS rate in approximating expenses is [not] per se unreasonable." *Perrin*, 114 F. Supp. 3d at 721-22 (court's emphasis); *accord, e.g., Tyler*, 342 F. Supp. 3d at 849.

Whether an employer's reimbursement rate to delivery drivers is a "reasonable approximation" of the drivers' delivery-related vehicle costs is accordingly a question of fact, as courts have recognized. *Tyler*, 342 F. Supp. 3d at 848; *Perrin*, 114 F. Supp. 3d at 721-22. It is also a question about whether Plaintiffs were properly compensated, and so one on which they have the burden of proof by a preponderance of the evidence. *E.g.*, *O'Brien*, 575 F.3d at 602; *Anderson*, 328 U.S. at 686-87; *Robinson*, 661 F. App'x at 891; *Oldham*, 465 F. App'x at 444. And Plaintiffs will not get to a jury unless they produce evidence that can satisfy their burden of proof. *E.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Medison Am., Inc. v. Preferred Med. Sys., LLC*, 357 F. App'x 656, 662 (6th Cir. 2009).

There is nothing special in the FLSA context about the IRS business standard mileage rate. If Plaintiffs want that rate to apply here, they will have to prove as a matter of fact that it "reasonably approximates" their expenses. They cannot have it imposed by judicial fiat.

## IV. The Case Law Plaintiffs Rely on Does Not Support Their Position.

Plaintiffs rely on a small handful of decisions to support their assertion that "[c]ourts have adopted the IRS rate as the proper measure in delivery driver cases." (Pls.' Br. at 13.) In each case, Plaintiffs misread the decisions, the decisions misstate the law, or both.

First, Plaintiffs cite *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 16-516, 2018 WL 5800594 (S.D. Ohio Nov. 6, 2018). *Brandenburg* addressed the delivery driver reimbursement rate in the course of determining whether there were common questions of law or fact on a Rule

23 class certification motion; the court was not making a decision on the merits. Moreover, the court did not even mention the Field Operations Handbook. Rather, the court relied on *evidence*, in the form of a report of the plaintiff delivery driver's expert witness, "who work[ed] in the field of vehicle fleet management consulting services." *Id.* at *4. Thus, the court, in an interlocutory decision on a procedural issue, still did not impose the IRS rate as a matter of law, but rather made a factual finding, based on expert opinion, that the IRS rate was appropriate.

Next, Plaintiffs cite *Zellagui v. MCD Pizza, Inc.*, 59 F. Supp. 3d 712 (E.D. Pa. 2014). *Zellagui* granted the plaintiff delivery driver's motion for a default judgment; consequently, there was no briefing from the defendants. *Zellagui*, like *Brandenburg*, found as a matter of *fact* that the IRS rate was a reasonable approximation of drivers' expenses; but it also, erroneously and quite unnecessarily, imposed the IRS rate as a matter of *law*. Like Plaintiffs here, the *Zellagui* court misread the FOH as imposing on employers the alternative of maintaining records of employees' actual expenses or else reimbursing employees at the IRS rate. Moreover, the decisions *Zellagui* cites do not support its holding: *Darrow v. WKRP Management, LLC*, No. 09-1613, 2011 WL 2174496 (D. Colo. June 3, 2011), arose on a 12(b)(6) motion, and the court did *not* hold the IRS rate is required as a matter of law; and *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal.4th 554, 566, 67 Cal. Rptr.3d 468, 477, 169 P.3d 889, 896 (2007), was decided under California law, relying on the California Labor Commissioner's interpretation of the relevant California statute. *Sullivan* aptly criticized *Zellagui* by observing it "did not examine the particular statutory or regulatory background relevant to §30c15, but appeared to rely on §30c15's interpretation of the FLSA *without even recounting what the FLSA stated*." *Sullivan*, 362 F. Supp. 3d at 1155 (court's emphasis). In short, *Zellagui* rendered a default judgment without the benefit of a full briefing, misconstrued the FOH, and had no basis in the FLSA or the DOL regulations. It

16

is entitled to no weight.

Plaintiffs next cite *Cornish v. Deli Management, Inc.*, No. WMN-16-672, 2016 WL 5934077 (D. Md. Oct. 12, 2016). *Cornish* parrots *Zellagui* and offers the same misreading of FOH §30c15 as *Zellagui* does and as Plaintiffs do here. To quote *Sullivan* again, "*Cornish* simply relied on *Zellagui* and *Gattuso*'s interpretation of §30c15 without taking a fresh look at the regulations themselves." *Sullivan*, 362 F. Supp. 3d at 1155.[6] *Cornish*, too, should be disregarded.

The final two decisions Plaintiffs cite are AAA arbitration awards, both of which make the erroneous assertion (in a near quotation of *Zellagui*) that "[w]hen a minimum wage law requires an employer to reimburse an employee for using the employee's vehicle for the employer's benefit, the employer should reimburse the employee at the IRS standard business mileage rate or it should keep records of the employee's actual vehicle-related costs to support another reimbursement rate as is set forth in Section 30c15 of the [REDACTED] FOH." *In re Arbitration*, 2015 WL 8682313, at *12 (AAA Aug. 13, 2015); *In re Arbitration*, 2015 WL 8682319, at *12 (AAA Aug. 13, 2015). Again, FOH §30c15 does not say that, and it has no support in either the FLSA or the regulations.

Accordingly, the authorities Plaintiffs cite either do not support their position, or rely on a superficial misreading of the DOL's Field Operations Handbook, the FLSA, and the regulations.

## V. The Court Should Decline Plaintiffs' Invitation to Legislate from the Bench.

In the final section of the brief, Plaintiffs argue that because employees must know whether they are being paid properly, "the DOL implemented a very clear standard for pizza delivery drivers – the public and accessible IRS rate." (Pls.' Br. at 15-16.) The DOL "implemented" no "standard." There is no regulation prescribing the IRS rate. There is no interpretive document prescribing the IRS rate – the DOL's Field Operations Handbook itself says it "is not used as a

---

[6] *Gattuso* does not actually cite the DOL's Field Operations Handbook or §30c15.

FPDOCS 35603633.1

device for establishing interpretive policy." All the DOL has done is inform its Wage and Hour Division investigators and staff, via the DOL's Field Operations Handbook, that under certain circumstances the IRS rate "*may* be used." FOH §30c15(a) (emphasis added).

Plaintiffs also argue this is a "DOL[] rule" under which "[e]mployers can choose to take on the task of tracking delivery drivers' actual expenses or pay a set per-mile reimbursement rate," the IRS rate. (Pls.' Br. at 15.) Section 30c15 of the FOH is not a "rule," which would be entitled to *Chevron* deference, *see Stein*, 873 F.3d at 531-32. According to the DOL itself, the FOH does not even establish the agency's interpretive policy. The "rules" – the recordkeeping regulations in 29 C.F.R. Part 516 – do *not* require employers to track employee expenses, deliberately so, as discussed above. Despite Plaintiffs' insistence to the contrary, FOH §30c15 itself does not purport to impose on employers the alternatives of either tracking their delivery drivers' expenses or paying them the IRS standard business mileage rate; and if it did, it would be inconsistent with the regulations, and so properly disregarded even under the highly deferential *Auer* standard, which itself does not apply here.

Plaintiffs fault courts that they say have held "employers can 'approximate' mileage expenses." (Pls.' Br. at 15.) Plaintiffs misrepresent those holdings. Courts have followed the regulations, which expressly provide that reimbursement is sufficient if it "*reasonably approximates* the expenses incurred." 29 C.F.R. §778.217(a) (emphasis added). *See, e.g., Perrin*, 114 F. Supp. 3d at 721 ("[T]he regulations applicable to the FLSA allow employers to *reasonably approximate* the amount of an employee's expenses incurred on his employer's behalf") (citing 29 C.F.R. §778.217; emphasis added); *Tyler*, 342 F. Supp. 3d at 847-49 (citing *Perrin* and §778.217); *Smith*, 694 F. Supp. 2d at 1229-30 ("[T]o the extent that Plaintiffs allege automobile-related expense claims, they should be aware that under the applicable federal regulations, Defendant *may*

18

*approximate those expenses* in reimbursing them") (emphasis added); *Wass*, 688 F. Supp. 2d at 1283 ("[U]nder the applicable federal regulations, defendant may *reasonably approximate* plaintiffs' vehicle expenses in reimbursing them") (emphasis added). And again, the burden is on the employees to show, as a matter of fact, that their reimbursement did not reasonably approximate their expenses. *Perrin*, 114 F. Supp. 3d at 721; *Tyler*, 342 F. Supp. 3d at 845, 847-49; *Smith*, 694 F. Supp. 2d at 1229-30; *Wass*, 688 F. Supp. 2d at 1283; *O'Brien*, 575 F.3d at 602; *Anderson*, 328 U.S. at 686-87; *Robinson*, 661 F. App'x at 891; *Oldham*, 465 F. App'x at 444.

In sum, Plaintiffs are asking the Court to adopt a rule requiring employers to keep records of employee work-related vehicle expenses, or in the alternative to pay the IRS standard business mileage rate. That rule does not appear in the FLSA, or the regulations, or even the Field Operations Handbook. What Plaintiffs are really doing, then, is inviting the Court to legislate from the bench by amending the FLSA to relieve them of their burden of proof. The Court should decline the invitation.

## VI. Plaintiffs' Cross-Motion Should Be Denied Pursuant to Rule 56(d).

Finally, Defendants need discovery to address the factual issues raised by the parties' cross-motions. (*See* Caminiti Decl. ¶¶ 8, 12-13.) Following the Court's ruling on the appropriate legal standard, Defendants will seek to conduct discovery of the named Plaintiffs, the opt-in Plaintiffs, and a sampling of the putative class. (*Id.* at ¶¶12-13.) Under Fed.R.Civ.P. 56(d), where, as here, "the non-movant makes a proper and timely showing of a need for discovery, the district court's entry of summary judgment without permitting him to conduct any discovery at all will constitute an abuse of discretion." *Alspaugh v. McConnell*, 643 F.3d 162, 166-67 (6th Cir. 2011). Accordingly, Plaintiff's cross-motion should be denied pending discovery to be conducted with the benefit of the Court's ruling on the proper measure of minimum wage compliance for pizza

delivery drivers.

## CONCLUSION

There is no basis for Plaintiffs' proposed measure of minimum wage compliance for pizza delivery drivers. Instead, it is clear under the statute, the regulations, and controlling precedent that the minimum wage requirement has been complied with if either of the following situations obtains:

- In a given workweek, the difference between (1) the delivery drivers' wages and (2) their unreimbursed pizza delivery expenses is (3) equal to or greater than the applicable minimum wage; or

- In a given workweek, (1) the delivery drivers' wages are equal to or greater than the applicable minimum wage, and (2) the employer's reimbursement to the drivers for their pizza delivery expenses "reasonably approximate" those expenses.

Defendants therefore respectfully request the Court to rule as follows:

(1) That DOL Field Operations Handbook, §30c15(a), is not controlling as a matter of law and, therefore, the IRS business standard mileage rate is not legally mandated.

(2) That the proper measure of minimum wage compliance is whether, in a given workweek, an employee's net weekly wages, meaning the wages the employee received, less the employee's unreimbursed work-related expenses, equaled or exceeded the applicable minimum wage;

(3) That if the employee's net weekly wages did equal or exceed the applicable minimum wage, the employer complied; that if the employee's net weekly wages did not equal or exceed the applicable minimum wage, the employer did not comply (unless the reimbursement "reasonably approximated" expenses as in (4) below); and that the burden of proving non-compliance, by a preponderance of the evidence, is on the employee; and

(4) That in addition to proving non-compliance, the employee must also prove, by a

preponderance of the evidence, that the reimbursement for work-related expenses the employer

provided did not "reasonably approximate" the employee's expenses.

Dated:  June 18, 2019     Respectfully submitted,

         **FISHER & PHILLIPS LLP**

         /s/ Mathew A. Parker
         Mathew A. Parker (0093231)
         250 West Street, Suite 400
         Columbus, OH  43215
         Telephone:  (614) 453-7608
         Facsimile:  (614) 221-1409
         mparker@fisherphillips.com

         Kathleen McLeod Caminiti (*pro hac vice*)
         430 Mountain Avenue, Suite 303
         Murray Hill, New Jersey 07974
         Telephone: (908) 516-1062
         Facsimile: (908) 516-1051
         kcaminiti@fisherphillips.com

         J. Hagood Tighe (*pro hac vice*)
         1320 Main Street, Suite 750
         Columbia, South Carolina 29201
         Telephone: (803) 225-0000
         Facsimile: (803) 255-0202
         htighe@fisherphillips.com

         *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 18, 2019, a copy of the foregoing DEFENDANTS' BRIEF IN RESPONSE TO PLAINTIFFS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT was filed electronically with the Court. Notice of this filing will be sent by operation of the Court's electronic filing system to all ECF registered parties. Parties may access this filing through the Court's CM/ECF system.

/s/ Mathew A. Parker
Mathew A. Parker (0093231)

*Counsel for Defendants*