# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**Tammy Hatmaker, et al.,**

    *Plaintiffs,*

v.                                                Case No. 3:17-cv-146
                                                      Judge Thomas M. Rose

**PJ Ohio, LLC, et al.,**

    *Defendants.*

---

**ENTRY AND ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF 116; AND DENYING DEFENDANTS' CROSS-MOTION FOR DECLARATORY SUMMARY JUDGMENT. ECF 117. THE PARTIES ARE ORDERED TO SUBMIT AN AMENDED RULE 26(f) REPORT BY NOVEMBER 29, 2019.**

---

Pending before the Court are Plaintiffs' Motion for Partial Summary Judgment, ECF 116; and Defendants' Cross-Motion for Declaratory Summary Judgment. ECF 117. The two motions ask the Court to define the law that will govern the determination of whether Defendants are liable on Plaintiffs' federal and state minimum wage claims.

## I. Background

This is a wage and hour case brought on behalf of pizza delivery drivers who work for Papa John's franchisees. Defendants own and operate 73 Papa John's locations in Ohio, Nevada, and North Carolina. See Third Amended Complaint, ECF 84, ¶ 60, citing Defendants' website, http://bldbrands.com/?page_id=58. Plaintiffs claim Defendants pay their drivers at–or close to–minimum wage. The drivers use their own cars to complete deliveries. Plaintiffs

allege the cars cost money to purchase, maintain, and operate. Plaintiffs allege that because Defendants have not paid the drivers their actual expenses or the IRS standard business mileage rate, Defendants have failed to pay the drivers at least minimum wage. See, e.g., 29 C.F.R. § 531.35; see also DOL Handbook § 30c15(a).

Defendants required delivery drivers to maintain and pay for operable, safe and legally-compliant automobiles to use in delivering pizza and pay for the cost of a functioning cell phone to make deliveries and other equipment necessary to complete their job duties. Doc. 2-1, ¶¶ 10-11, Doc 2-2, ¶¶ 10-11, Doc. 2-3 ¶¶10-11.

Defendants required delivery drivers to pay for gasoline, oil and other fluids, vehicle parts, auto repair and maintenance, registration costs, licensing and taxes. Doc. 2-1, ¶ 12, Doc 2-2, ¶ 12, Doc. 2-3 ¶ 12. The delivery drivers' cars depreciated in value as a result of the work that was done for Defendants. Doc. 2-1, ¶ 12, Doc 2-2, ¶ 12, Doc. 2-3 ¶ 12. Further, Defendants required the delivery drivers to maintain auto insurance. Doc. 2-1, ¶ 12, Doc 2-2, ¶ 12, Doc. 2-3 ¶ 12. Defendants never attempted to calculate how much money delivery drivers were paying out of pocket and did not require delivery drivers to record or report expenditures for the automobiles, gasoline or other job-related expenses. Doc. 2-1, ¶¶ 14-15, Doc 2-2, ¶¶ 14-16, Doc. 2-3 ¶¶ 15-16. Defendants have neither tracked and paid for their delivery drivers' actual expenses, nor reimbursed their drivers at the IRS rate.

Plaintiffs allege that Defendants violate the Fair Labor Standards Act and state wage and hour laws by under-reimbursing the delivery drivers and that they have met their burden by use of Internal Revenue Service mileage rates. Defendants' position is that the Court should

require drivers to prove by a preponderance of the evidence that, in any given workweek, the difference between their wages and their actual unreimbursed pizza delivery expenses was less than the applicable minimum wage in that workweek.

## II. Standard

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law. Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. Analysis

The FLSA mandates that "'[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce 'a statutory minimum hourly wage…. The DOL regulations require that the minimum wage be paid 'finally and unconditionally' or 'free and clear.'" *Stein v. hhgregg, Inc.*, 873 F.3d 523, 530 (6th Cir.

3

2017) (citing 29 U.S.C. § 206(a) and 29 C.F.R. § 531.35).

The "anti-kickback" regulation implementing the FLSA states:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." The wage requirements of the Act will not be met where the employee "kicks back" directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee. This is true whether the "kickback" is made in cash or in other than cash. For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act. See also in this connection, § 531.32(c).

29 CFR § 531.35.

The anti-kickback regulation," prohibits any arrangement that "'tend[s] to shift part of the employer's business expense to the employees . . . to the extent that it reduce[s] an employee's wage below the statutory minimum.'" *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir. 1972). "The wage requirements of the Act will not be met where the employee 'kicks back' directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee." 464 F.2d at 1199 (quoting 29 C.F.R. § 531.35); see also *Ramos-Barrientos v. Bland*, 661 F.3d 587, 594-95 (11th Cir. 2011) (quoting *Mayhue's*); *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 898 (9th Cir. 2013) (requiring the employer to reimburse for travel and immigration expenses incurred before the employment relationship began because these expenses were "essential for the …

4

employment relationship to come to fruition."); also *Martin v. Petroleum Sales, Inc.*, No. 90-cv-2453-4A, 1992 WL 439740, *15 (W.D. Tenn. Jul. 9, 1992) ("Wage payments must be made 'free and clear' and without 'kickbacks' to the employer or to another person for the employer's benefit. 29 C.F.R. 531.35. Such an attempt to shift part of the employer's cost of doing business [cash shortages] to the employee is illegal.") (citing *Mayhue's*, 464 F.2d at 1199).

In the pizza delivery context, the cost associated with delivering food for an employer is a "kickback" to the employer that must be fully reimbursed, lest a minimum wage violation be triggered. See, e.g., *Perrin v. Papa John's Int'l, Inc.*, 114 F. Supp. 3d 707 (E.D. Mo. July 8, 2015); *Graham v. The Word Enters. Perry, LLC*, No. 18-cv-0167, 2018 WL 3036313, *4 (E.D. Mich. Jun. 19, 2018) ("An example of such an expense are tools of the trade that the employee must provide which is required to perform the job, such as a personal car that an employee operates to make pizza deliveries."); *Ke v. Saigon Grill, Inc.*, 595 F.Supp.2d 240, 258 (S.D.N.Y. 2008) (holding that deliverymen's bicycles and motorbikes were "tools of the trade," such that costs related to those vehicles had to be reimbursed by the employer where deliverymen otherwise earned minimum wage).

Defendants counter that the IRS rate merely is the maximum safe harbor rate that the IRS permits taxpayers to use in computing deductions from taxable income. According to Defendants, the IRS rate is nothing more than a cap on deductible expense for federal income tax purposes – a ceiling on tax deductions under the Internal Revenue Code, not a floor for reimbursements under the Fair Labor Standards Act.

As a general principle, employers are not permitted to "guess" or "approximate" a

minimum wage employee's expenses for purposes of reimbursing the expenses. This would result in some employees receiving less than minimum wage, contrary to the FLSA mandate. Instead, as a general proposition, the FLSA requires employers to pay back the actual expenses incurred by the employees.

In the pizza delivery driver context, however, determining and maintaining records of each employee's actual expenses is a cumbersome task for the employer. The Department of Labor addressed this in its Field Operations Handbook, by giving employers a choice in order to ease their burden: either (1) keep records of delivery drivers' actual expenses and reimburse for them or (2) reimburse drivers at the IRS standard business mileage rate:

> 30c15 Car expenses: employee's use of personal car on employer's business.
>
> In some cases it is necessary to determine the costs involved when employees use their cars on their employer's business in order to determine minimum wage compliance. For example, car expenses are frequently an issue for delivery drivers employed by pizza or other carry-out type restaurants.
>
> (a) As an enforcement policy, the IRS standard business mileage rate found in IRS Publication 917, "Business Use of a Car" may be used (in lieu of actual costs and associated recordkeeping) to determine or evaluate the employer's wage payment practices for FLSA purposes. The IRS standard business mileage rate (currently 28 cents per mile) represents depreciation, maintenance and repairs, gasoline (including taxes), oil, insurance, and vehicle registration fees. In situations where the IRS rate changes during the investigation period, the applicable rates should be applied on a pro-rata basis.

See DOL Field Operations Handbook § 30c15(a)(2000). Defendants emphasize that this is permissive: paragraph (a) stipulates an accounting approach that "may be used."

The Court notes that the Field Operations Handbook is not a regulation, but an "interpretation[] of Department regulations" that was "not subject to the rigors of the Administrative Procedur[e] Act, including public notice and comment"; the Field Operations Handbook is therefore "not controlling or entitled to deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)." *Stein v. hhgregg, Inc.*, 873 F.3d 523, 532 (6th Cir. 2017) (internal quotation marks, parallel & pinpoint citations omitted). The Field Operation Handbook is, however, one of the "interpretations, opinions and explanatory guidelines" of the Department of Labor, to which a court "may properly resort for guidance" under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *Stein*, 873 F.3d at 532. The weight to be given such matter in a particular case "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Id*. (quoting *Skidmore*, 323 U.S. at 140).

The process for determining whether to give deference to the DOL Field Operations Handbook is two-fold. First, the Court should determine if the DOL regulation is unclear. 29 C.F.R. § 531.35 does not set forth a methodology for calculating mileage rates, or provide any other guidance as to how to determine or put a value on the expenses related to operating an automobile for work. Thus, there is ambiguity as to how to calculate the mileage rate.

Second, if the methodology for calculating the mileage rate is unclear, and the DOL Field Operations Handbook has provided a procedure, then the Court should next determine if the DOL Handbook interprets the regulation in a manner that is neither plainly erroneous nor

inconsistent with the regulation. The Court considers whether deference is appropriate for the Department of Labor's interpretations of its own regulations, where the regulations give specificity to a statutory scheme that the Department enforces.

Defendants urge that the Field Operations Handbook § 30c15 is entitled to no special weight. Defendants key on the fact that it was last updated on June 30, 2000; see https://www.dol.gov/whd/foh/# (last visited Apr. 12, 2019); and that it relies on IRS Publication 917, which was last published in 1995, and is not a current IRS publication. See https://apps.irs.gov/app/picklist/list/priorFormPublication.html?value=publ+917&criteria=formNumber&submitSearch=Find (last visited Apr. 12, 2019). The Court can imagine that pizza delivery may have been revolutionized since these dates, but Defendants present no evidence of this. C.f. *Fast v. Applebee's Intern., Inc.*, 638 F.3d 872, 878-81 (8th Cir. 2011) (citing *Gonzalez v. Oregon*, 546 U.S. 243, 255-56 (2006)) ("We believe that the DOL's interpretation contained in the Handbook…is a reasonable interpretation of the regulations. It is certainly not 'clearly erroneous or inconsistent with the regulation.'"); and *Marsh v. J. Alexander's, LLC*, 905 F.3d 610, 623 (9th Cir. 2018). (citing *Fast*, 638 F.3d at 880-81). Here, there is good reason to give deference to the DOL Field Operations Handbook.

Plaintiffs have the burden of proving they were not paid the applicable minimum wage. An "FLSA plaintiff must prove by a preponderance of the evidence that he or she performed work for which he or she was not properly compensated." *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 602 (6th Cir. 2009) (internal quotation marks & brackets omitted); accord, e.g., *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946); *Robinson v. Roberts Hotels*

*Mgmt. Detroit, LLC*, 661 F. App'x 890, 891 (6th Cir. 2016); *Oldham v. USPS*, 465 F. App'x 440, 444 (6th Cir. 2012). Thus, if Plainitffs show that Defendants' compensation dropped drivers below minimum wage, they have met their burden.

Plaintiffs have the burden of proving they "performed work for which [they] were not properly compensated." *Monroe v. FTS USA, LLC*, 860 F.3d 389, 398 (6th Cir. 2017), cert. denied, 138 S Ct. 980, 200 L. Ed. 2d 248 (2018). Moreover, minimum wage violations generally must be proven on a week-by-week basis. The burden for proper payment, however, falls on the employer. *Caserta v. Home Lines Agency, Inc.*, 273 F.2d 943, 946 (2d Cir. 1956) (the "obligation of [FLSA compliance] is the employer's and it is absolute."). Once a violation is shown, it is the employer's burden to prove it acted with good faith and a reasonable belief that it complied with the law. 29 U.S.C. § 260.

Failure to pay the IRS rate is not, in and of itself, a violation. However, because Papa John's pays at or very close to minimum wage, Defendants have little room when it comes to reimbursement; they are near the minimum wage fault line. Thus, under-reimbursement puts the drivers at risk to have their wage rights violated under the FLSA's anti-kickback regulation. 29 C.F.R. § 531.35.

In this case, the DOL Handbook states that when actual expenses have not been maintained, the IRS mileage rate is used to determine minimum wage compliance. Defendants, knowing they would ask their employees to incur substantial expenses on their behalf, could have paid a wage rate safely above minimum wage. In such a circumstance, their reimbursement policy might never come into question.

Defendants also could have paid the workers their actual costs for delivering pizza. Again, Defendants chose not to. This leaves the DOL Handbook's second method of reimbursing vehicle-related expenses as Defendants' only remaining option to comply with the FLSA's minimum wage requirement— reimburse delivery drivers at the IRS mileage rate.

The IRS mileage rate is a data-driven and systematic methodology for estimating the cost of driving a mile. The IRS mileage rate is:

> a rate determined by the IRS that a taxpayer can deduct per mile driven for business, charitable activities, moving or medical purposes. The standard mileage rate changes regularly to keep up with inflation….The IRS bases these rates on cost data and analysis compiled every year by Runzheimer International, an independent research firm that contracts to the IRS. Runzheimer International uses data from across the country and measures auto insurance premiums, gas prices, maintenance costs, depreciation and other costs that go into operating a vehicle.

Julia Kagan, Standard Mileage Rate, Investopedia, (June 13, 2018).

"Since 1980, the IRS has worked with Runzheimer to calculate the business mileage deduction rate, using a consistent method and statistical analysis of vehicle cost components…. [The rate] reflect[s] the movement of prices in the marketplace." IRS Announces 2018 Business Mileage Rate of 54.5 Cents-Per-Mile with Cost Data and Analysis by Runzheimer, Business Wire, (December 14, 2017, 3:13 PM). The IRS mileage rate is the real cost of driving a vehicle. It does not include any cost components that are inapplicable to the costs that the pizza delivery drivers incur. There is no reason not to use the IRS mileage rate in this case; it is neither plainly erroneous nor inconsistent with the regulation.

Since 2000, the DOL Handbook has provided that in the absence of actual costs, the IRS

mileage rate applies. The Department's approach recognizes that—when an employer is standing on the minimum wage fault line—an employer cannot and should not be allowed to guess, estimate, or come "close enough" to reimbursing for these substantial expenses. Instead, the law should provide a clear directive of how to comply with the minimum wage laws. The Department's approach creates a bright line for employers to follow. The "IRS rate or actual expenses" method is the appropriate measure.

> Because the vehicles owned by the delivery drivers are considered "tools of the trade," 29 C.F.R. § 531.35, and required by Cousin Vinny's as a condition of being hired as a delivery driver, there needed to be an adequate reimbursement rate, using either the IRS mileage rate or actual reimbursement of cost, in order to avoid a decrease in the minimum wage and overtime paid.

*Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2018 WL 5800594, *4 (S.D. Ohio Nov. 6, 2018) (granting Rule 23 class certification of same Ohio claims asserted here); see also *Zellagui v. MCD Pizza, Inc*., 59 F.Supp.3d 712, 716 (E.D. Pa. Nov. 3, 2014); and *Cornish v. Deli Mgmt., Inc.*, No. WMN-16- 672, 2016 WL 5934077, at *3 (D. Md. Oct. 12, 2016).

The Department's approach to mileage is consistent with the FLSA's remedial goals. The FLSA is a remedial statute that is designed to "protect all covered workers from substandard wages and oppressive working hours." *Encino Motorcars, LLC v Navarro*, 579 U.S. ____, 136 S. Ct. 2117, 2121, 195 L.Ed.2d 382 (2016) (quoting *Barrentine v. Arkansas–Best Freight System, Inc*., 450 U.S. 728, 739 (1981)). To meet that goal, both employees and employers must have clear rules to follow. The Fair Labor Standards Act's remedial goals are defeated if employees have no way of knowing whether they are being paid properly. See, e.g., 29 U.S.C. 203(m) (requiring tipped employees to receive notice of the FLSA's tip credit provisions). This is likely

11

one of the reasons the DOL implemented a very clear standard for pizza delivery drivers—the public and accessible IRS rate.

The Department's rule for pizza delivery drivers results in clarity for both delivery drivers and their employers. Employers can choose to take on the task of tracking delivery drivers' actual expenses or pay a set per-mile reimbursement rate. A neutral arbiter—the IRS—creates, monitors, and updates the rate, and it favors neither employers nor employees. Both employers and employees can readily access the rate. Moreover, employers, employees, and courts can precisely determine whether an employer is complying with the employer's minimum wage obligations. This can be done at relatively low litigation cost, likely through a motion for judgment on the pleadings or at summary judgment.

Absent an employer who has tracked actual expenses, the IRS standard business mileage rate set forth in the Department's Field Operations Handbook properly applies when enforcing the minimum wage requirements of the FLSA. It provides employers with a clear directive for minimum wage compliance and allows them to avoid the substantial costs of keeping records of their employees' actual expenses. It likewise provides employees a clear understanding of how the minimum wage laws apply to them. Plaintiffs ask the Court to hold, as a matter of law, that the proper measure of minimum wage compliance for pizza delivery drivers is to either (1) track and pay delivery drivers' actual expenses or (2) pay the mileage reimbursement rate set by the Internal Revenue Service.

In meeting their burden, delivery drivers may rely on a reasonable company-wide estimate of per-mile vehicle costs because that is how the employers reimburse delivery drivers.

The IRS rate is one such estimate. *Perrin v. Papa John's Int'l., Inc.* ("*Perrin II*") examined a request for nation-wide class certification of the same claim. No. 4:09-cv-1335, 2013 WL 6885334, **4-8 (E.D. Mo. Dec. 31, 2013)("Defendants' assertion that individualized showings of each Plaintiff's vehicle expenses will be required to prove Plaintiffs' claims is without merit. Defendants' own reimbursement methodology does not depend upon the drivers' actual expenses and the regulatory framework does not require that reimbursement be based on actual expenses." Id. at *7). *Oregal v. PacPizza, LLC* held that "[t]he appropriate mileage reimbursement rate will … be applied to all class members." Case No. C12-01454 (Sup. Ct. of Contra Costa Cnty., Cal. May 14, 2014) (Ex. 1), at 5 (emphasis added); *Villalpando v. Exel Direct Inc.*, Nos. 12-cv-4137, 13- cv-3091, 2016 WL 1598663 (N.D. Cal. Apr. 21, 2016) (recognizing that showing of reasonable reimbursement rate constitutes proof common to the entire class); *Behaein v. Pizza Hut, Inc.*, No. BC541415 (Sup. Ct. of L.A. Cnty. July 15, 2015) (Ex. 2), at 8-10 (recognizing that common class-wide proof entails estimated vehicle costs, rather than requiring each delivery driver to prove his or her own actual vehicle costs).

Once a violation is shown, it is the employer's burden to prove it acted with good faith and a reasonable belief that it complied with the law. 29 U.S.C. § 260.

Papa John's claims that it has no duty to maintain records of its delivery drivers' expenses. Doc. 117, PageID 1743. Papa John's' position is contrary to the FLSA's requirements. The FLSA requires employers to keep records of employees' "wages, hours, and other conditions and practices of employment maintained by him…" 29 U.S.C. § 211(c). Given that neither party disputes that the drivers' cars are "tools of the trade," the cost of which reduces

13

the drivers' effective wages, employers must maintain records of those costs under either the "wages" or "other conditions and practices of employment" portions of Section 211(c).

Department of Labor regulations require employers to maintain records of employees' expenses, including:

> total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments. Also, in individual employee records, the dates, amounts and nature of the items which make up the total additions and deductions.

29 C.F.R. § 516.2(a)(10). "[T]here is no legal difference between deducting a cost directly from the worker's wages and shifting a cost, which they could not deduct, for the employee to bear." *Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228, 1237 (11th Cir. 2002). The regulations also require employers to maintain records of "total wages paid each pay period." 29 C.F.R. § 516.2(a)(11). Because employee-incurred expenses affect "total wages," this provision also requires employers to maintain records of delivery drivers' vehicle expenses.

In the pizza delivery driver context, a reasonably diligent employer must in some manner maintain records of vehicle costs, even if the FLSA and Regulations did not already require the employee to do so. See *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 389 (6th Cir. 2016) (requiring the exercise of reasonable diligence to determine whether a worker is working uncompensated hours. C.F.R. § 516.6(c) requires the employer to maintain the records for at least two years. The "obligation of [FLSA compliance] is the employer's and it is absolute. He cannot discharge it by attempting to transfer his statutory burdens of accurate recordkeeping, 29 U.S.C. § 211(c), and of appropriate payment, to the employee." *Caserta v. Home Lines Agency, Inc.*, 273 F.2d at 946.

14

### III. Conclusion

Because the IRS standard business mileage rate set forth in the Department of Labor's Field Operations Handbook properly applies when enforcing the minimum wage requirements of the FLSA. It provides employers with a clear directive for minimum wage compliance and allows them to avoid the substantial costs of keeping records of their employees' actual expenses. It likewise provides employees a clear understanding of how the minimum wage laws apply to them. As a matter of law, that the proper measure of minimum wage compliance for pizza delivery drivers is to either (1) track and pay delivery drivers' actual expenses or (2) pay the mileage reimbursement rate set by the Internal Revenue Service. Plaintiffs meet their burden by showing they were not compensated by an amount equal to the minimum hourly wage plus the mileage reimbursement rate set by the Internal Revenue Service. Defendants may rebut this by showing that they tracked and paid actual expenses and paid an amount equal to the minimum hourly wage rate plus actual expenses.

Plaintiffs' Motion for Partial Summary Judgment, ECF 116; is **GRANTED** and Defendants' Cross-Motion for Declaratory Summary Judgment, ECF 117, is **DENIED**. An amended Rule 26 (f) report is to be submitted by the parties by November 29, 2019.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, November 5, 2019.

s/Thomas M. Rose

THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE