UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Tammy Hatmaker, et al.,**

    *Plaintiffs,*

v.                                             Case No. 3:17-cv-146
                                                          Judge Thomas M. Rose

**PJ Ohio, LLC, et al.,**

    *Defendants.*

---

**ENTRY AND ORDER DENYING DEFENDANTS' MOTION FOR STAY, ECF 138, AND GRANTING PLAINTIFFS' MOTION TO COMPEL. ECF 137. PRELIMINARY PRETRIAL CONFERENCE WILL BE SET BY SEPARATE ENTRY.**

---

Pending before the Court are Defendants' Motion for Stay, ECF 138, and Plaintiffs' Motion to Compel Production of Mileage, Pay, and Reimbursement Information. ECF 137. Defendants have asked the Court to stay this lawsuit based on business disruptions related to the coronavirus. Plaintiffs move the Court for an order compelling Defendants to produce records concerning the employers' compliance with minimum wage laws within two weeks. ECF 137, 143.

Defendants' motion is accompanied by an affidavit that details the difficulties of operating pizza restaurants in the current situation, but which lacks an affirmation from someone whose job it is that it is not possible to simply produce records of hours worked, delivery miles and compensation. The affirmation asserts that individuals that respond to discovery have been

left go, but that would justify a permanent delay and that is not acceptable. Defendants' Motion to Stay will be denied.

Next, the Court considers Plaintiffs' motion to compel. Plaintiffs first served the contested discovery requests on May 9, 2018. See ECF 143-2, Ex. 1, 5/9/18 Email. The requests sought a "computer readable list, spreadsheet, or data base" of all delivery drivers' hours worked, wages, reimbursements, and miles driven. See ECF 143-3, Ex. 2, Plaintiffs' First Discovery Requests, Requests 1, 4, 5, 10, 11. Plaintiffs served these requests prior to the parties holding a Rule 26(f) conference. Fed. R. Civ. P. 26(d)(2)(i). Under the rule entitled "Early Rule 34 Requests," "[m]ore than 21 days after the summons and complaint are served on a party, a request under Rule 34 may be delivered … to that party by any other party." Fed. R. Civ. P. 21(d)(2)(i).

In a May 9, 2018 email, Plaintiffs asked Defendants for a date and time to participate in a Rule 26(f) conference. ECF 143-2, Ex. 1. Defendants refused to participate in a Rule 26(f) conference, and, on February 1, 2019, Plaintiffs filed a motion asking the Court to require Defendants to engage in a Rule 26(f) conference so that discovery could begin. See Request for Rule 26(f) Conference, ECF 110.

The Court granted Plaintiffs' request for a conference by a notation order, dated February 5, 2019. The Court scheduled a pretrial conference and ordered the parties to file a Rule 26(f) report via a text order, also dated February 5, 2019.

On March 21, 2019, the parties filed a Rule 26(f) report. See Report, ECF 111. Thus, at least as of March 13, 2019, full opportunity for discovery began. Defendants, however, stated in the Report that discovery should not begin "until after the Court rules on the pending motions

2

to dismiss and the decision of the Ohio Supreme Court on a certified question from the [Northern District of Ohio] in *Buddenberg v. Weisdack*…" Id., at 3. (*Buddenberg* deals with whether a criminal conviction is required in order to assert a claim under R.C. 2307.60. The Ohio Supreme Court has not yet ruled on that case.)

Five days after the parties submitted the Rule 26(f) report, on March 26, 2019, the Court denied Defendants' motion to dismiss. ECF 112. In a separate Order, the Court instructed the parties to brief the issue of "what constitutes a proper measure of minimum wage compliance for pizza delivery drivers." Scheduling Order, ECF 113.

On April 22, 2019, the parties filed their cross-motions for partial summary judgment. ECF 116 and 117. The motions were fully briefed on June 18, 2019. ECF 120 and 121.

On May 13, 2019, Plaintiffs served a second set of discovery requests on Defendants. See ECF 143-4, Ex. 3, 5/13/19 Letter, and Ex. 4, Plaintiffs' Second Discovery Requests. Plaintiffs withdrew their prior requests, which Defendants had never responded to, and replaced them with the new requests. See Ex. 3. Also, these new requests asked for the documents currently at issue—"computer readable list, spreadsheet, or data base" of all delivery drivers, their hours worked, wages, reimbursements, and miles driven. See ECF 143-5, Ex. 4, Requests 1, 2, 3, 6, 7, 8, the same data production now at issue.

A couple of days before Defendants' discovery responses were due, Defendants sent Plaintiffs a letter stating, "it is questionable whether Defendants are obligated at this time to respond to the Discovery." See ECF 143-6, Ex. 5, 6/11/19 Letter from Defendants. The basis for this assertion was that Defendants did not believe the Rule 26(f) meeting "counted" because the parties had different views on discovery. See Id. Moreover, Defendants argued that the

3

cross-motions on summary judgment would affect relevant discovery. Id. The parties may have conferred on June 13, 2019.

On October 18, 2019, Plaintiffs sent a letter to Defendants stating that Plaintiffs believed discovery should proceed with respect to any issue that would not be affected by the Court's anticipated ruling on the parties' cross-motions for summary judgment. See ECF 143-7, Ex. 6, 10/18/19 Letter. The information at issue in Plaintiffs' Motion to Compel would have been relevant and discoverable no matter how the Court ultimately ruled on the cross-motions.

On November 1, 2019, Defendants reiterated that they refused to participate in discovery until the Court ruled on the cross-motions for summary judgment. See ECF 143-2, Ex. 7, 11/1/19 Letter from Defendants.

Four days later, on November 5, 2019, the Court granted summary judgment in favor of Plaintiffs on the proper standard applicable to reimbursing vehicle expenses. Order, ECF 124. On November 15, 2019, Defendants moved for interlocutory appeal of the Court's decision. See Defendants' Motion for Leave to Appeal, ECF 125, denied ECF 129 (Dec. 23, 2019).

On November 18, 2019, Plaintiffs emailed Defendants: "In light of the Court's Order on the IRS issue, Defendants' position that discovery is premature is now moot. Can you please let me know when Defendants intend to answer our discovery requests? Please let me know if a phone call is in order." See Ex. 8, 11/18/19 Email. Defendants did not respond.

On November 21, 2019, Plaintiffs followed up again. See ECF 143-10, Ex. 9, 11/21/19 Email. Defendants responded that their counsel had something unexpected come up, but that Attorney Mathew Parker would discuss the matter with Plaintiffs.

On December 18, 2019, the Court held a conference with the parties. During the conference, Defendants' counsel asked for additional time (until the beginning of February) to respond to Plaintiffs' discovery requests. Plaintiffs agreed to the additional time.

On February 3, 2020, Defendants asked for another two weeks to respond to Plaintiffs' requests (until February 21, 2020). Plaintiffs agreed to the extension. On February 25, 2020, Defendants responded to Plaintiffs' requests, but no documents were produced.

On February 25, 2020, Defendants submitted their discovery responses – which consisted of 176 responses to requests for documents, 54 answers to interrogatories, and an index setting forth 386 pages of documents responsive to Plaintiffs' discovery requests.

The parties recently agreed to the terms of a protective order, which was filed and entered by the Court on April 17, 2020. (ECF 140). Defendants subsequently produced the confidential documents to Plaintiffs after the entry of the protective order.

Defendants requested that the Court deny Plaintiffs' motion as premature and inappropriate under the circumstances, or in the alternative, provide Defendants until June 30, 2020, to produce mileage data for the Plaintiffs and Opt-In Plaintiffs.

Defendants' "responses" refused to produce hours worked, pay, reimbursements and mileage for anyone other than the six named plaintiffs. They also suggested new meet and confer efforts regarding "a representative sampling."

On February 27, 2020, Plaintiffs emailed Defendants about the specific issue of Defendants' refusal to provide any information regarding the more than eight hundred opt-ins:

> Moreover, you have listed as 'confidential' mileage and payroll data. This information is at the heart of the case and will need to be filed with the Court on the public record. Can you explain why this information is 'confidential'? You have also,

5

> apparently, elected to withhold any information relating to the 800 people who have joined this case. I am trying to figure out how you propose we calculate damages for those people without any information.

See Ex. 10, 2/27/20 Email.

Defendants responded by email on March 6, 2020 to set up a call to discuss. See Ex. 11, Series of Emails. What followed was a series of emails to set up a time to discuss the discovery issues raised in Plaintiffs' February 27, 2020 email. Id. The parties ultimately scheduled a call for March 17, 2020. Id.

During the March 17th call, Defendants addressed an upcoming Rule 26(f) report at the start of the phone call. See Biller Dec. ¶ 5. The parties then discussed whether Plaintiffs would agree to a protective order. Id., ¶ 6. Plaintiffs' counsel stated that they would reconsider their position on a general protective order and get back to Defendants by the end of the week. Id.

Plaintiffs' counsel Andrew Biller also brought up the issue of the work time, pay, reimbursement, and mileage data for the opt-in Plaintiffs. Id., ¶ 7. Defendants' counsel's initial reaction was that this was not the purpose of the call, Defendants were not prepared to discuss this issue, that Plaintiffs' counsel was interjecting an issue without warning, and any discussion should happen at a later date. Id. Mr. Biller pressed Defendants to discuss it because it was his understanding that that was the purpose of the call. Id. Moreover, Mr. Biller stated that Defendants' counsel must have thought about their objections to producing this information and, accordingly, they should be prepared to discuss it. Id. Further, Mr. Biller stated that he did not think it was appropriate to delay discussing this issue because it was fundamental to the case. Id.

The parties did discuss Defendants' objections, but Defendants' attorney said that additional time was needed to provide a definite response on whether they would stand on their

6

objections. Id.   Plaintiffs asked Defendants how much time they needed to get a firm answer back to Plaintiffs. Id.   Defendants stated that they could let Plaintiffs know in a week (Tuesday, March 24, 2020). Id.   Plaintiffs said that this was acceptable, but that Plaintiffs wanted to move this along; if Defendants intended to stand on their objections, then Plaintiffs wished to promptly file a motion to compel. Id.   Plaintiffs stated that there was no need to endlessly go back and forth on this issue. Id.

The next day, on March 18, 2020, Plaintiffs followed up with Defendants on two points. See Ex. 12, 3/18/20 Email.   First, Plaintiffs agreed to limit their requests to the opt-ins for now. Id.   Second, Plaintiffs asked Defendants to "Please let me know by next Tuesday, March 24, whether Defendants will comply with this production, i.e., produce responsive documents for all opt-ins." Id.

On March 20, 2020, the parties filed an Amended Rule 26(f) report. ECF 136.   In the Report, Defendants stated that they are only willing to produce a "sampling" of records for opt-in plaintiffs. Id.   March 24, 2020 came and went with no response from Defendants regarding whether they would stand on their objections or produce time, pay, reimbursement and mileage data for all of the opt-ins, other than Defendants' statement in the Rule 26(f) report that they would only produce a 20% sampling.   Plaintiffs waited an extra week for Defendants to respond.   They did not.   Thus, on March 31, 2020, Plaintiffs filed their Motion to Compel. ECF 137.   As of that time, Defendants had only agreed to produce work time, pay, reimbursement and mileage data for the six named Plaintiffs and a 20% sampling of the opt-ins.

On April 9, 2020, Defendants emailed Plaintiffs to ask if they could discuss the motion to compel.   On April 10, 2020, Defense Counsel Parker discussed the motion to compel with

Plaintiffs' counsel. Parker asked Plaintiffs to agree to hold in abeyance their motion to compel until around June, during which time the parties would discuss whether Defendants would agree to produce data for all of the opt-ins. See Biller Dec. ¶ 8.

Plaintiffs' counsel said that (1) Plaintiffs would not hold in abeyance or withdraw their motion to simply discuss this production, (2) Plaintiffs would, however, work with Defendants on a reasonable production schedule, and (3) because Defendants forced Plaintiffs to have to file a motion to compel on such basic documents, Plaintiffs expected Defendants to pay Plaintiffs' attorney's fees. Id. Parker said he would discuss the issue internally and respond. Id.

Later that day, Defendants emailed that they proposed (1) they would produce the "mileage data for the opt-ins" by June 30, 2020, and (2) Plaintiffs would withdraw their motion to compel. See Ex. 13, 4/10/20 Email from Parker.

Plaintiffs responded by email the same day:

> I assume by "mileage data" you also mean payroll data, right?
>
> With respect to the other parts, it is not acceptable. You need to explain why it would take more than two and a half months to produce information pulled from a computer query. Maybe I don't understand what goes into producing this data, so please let me know. But based on what seems to be simply exporting data to a spreadsheet, the timeframe is not acceptable.
>
> Further, as I mentioned, we will need the defendants to pay our fees incurred in having to deal with and brief this issue. This data is the fundamental evidence in the case. There is no reason it should have been withheld in the first place.

See Ex. 14, 4/10/20 Email from Biller.

Defendants responded by clarifying that "mileage data" did not, apparently, refer to all of the relevant data (i.e., pay data, hours worked, etc.). See Ex. 15, 4/10/20 Second Email from

8

Parker. Defendants also gave ambiguous information about how long it takes to produce electronic records. Defendants also disputed that they should have to pay any attorney's fees. Id.

On April 13, 2020, Plaintiffs responded to Defendants' email by asking for specifics about the production and stating Plaintiffs' position regarding fees and the production in general. See Ex. 16, 4/13/20 Second Email from Biller.

Defendants did not respond to Plaintiffs' request for details regarding why it would take so long to produce the records at issue. Instead, later that day, they filed their motion to stay the case until June 30, 2020. ECF 138.

On April 14, 2020, Plaintiffs sent Defendants a discovery deficiency letter on Defendants' other failures to produce information. See Ex. 17, 4/14/20 Discovery Letter. The letter specifically notes the issues related to the 800 opt-ins is addressed separately and in Plaintiffs' outstanding Motion to Compel. Id.

**Analysis**

Federal Rule of Civil Rule 37(a)(5) mandates that the Court award a party their attorney's fees and costs if either (1) a motion to compel is granted, or (2) "the disclosure or requested discovery is provided after the motion was filed." Fed. R. Civ. P. 37(a)(5)(A). Here, Defendants did not produce the discovery after the motion to compel was filed. Rather, after the motion to compel was filed, they merely promised to produce the discovery sought at a future date. That promise of production first occurred 10 days after Defendants forced Plaintiffs to file the motion to compel to obtain discoverable data. See also, e.g. *Idaho Waste Sys. v. USAF*, 2019 WL 4777286, *4 (D. Idaho Sept. 30, 2019) (sanctioning party for "render[ing] discovery a miserable

slog" for its opponent, forcing opponent to make repeated demands and ultimately to file a motion to compel).

This rule discourages parties from objecting to discovery, forcing an opponent to expend time and effort addressing the objections, including filing a motion to compel, only to, in the face of that motion, finally agree to produce the documents and declare "no harm, no foul." That is what has happened here.

There are only three exceptions to the rule that a Court "must" award fees: (1) the movant filed the motion "before attempting in good faith to obtain the disclosure or discovery without court action," (2) "the opposing party's nondisclosure, response, or objection was substantially justified," or (3) "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii).

Defendants focus on the first exception—that Plaintiffs did not do enough to obtain the documents without court action. Plaintiffs acted appropriately in this situation. Within two days of Defendants' response that objected to producing any information regarding the opt-ins, Plaintiffs emailed Defendants' about the issue. The parties then met and conferred on the subject. Defendants initially refused to discuss the matter. Finally, Defendants agreed to provide a definite response by a certain date. Defendants did not do so. Plaintiffs gave Defendants an extra week. Having heard nothing, Plaintiffs filed their motion. This was all in the context of Defendants already having refused to engage in discovery for two years and Plaintiffs' counsel demanding the same production for two years.

Defendants argue that Plaintiffs did not jump through enough hoops to get them to finally agree to what they should have produced in the first place. It is unclear what more Defendants

thought Plaintiffs should have done. Plaintiffs asked Defendants to either stand on their objections or not. Defendants agreed to make a final decision by a certain date, but then did not do so.

Defendants say they "thought" that the Rule 26(f) Report set forth their position. Defendants claim that, in light of the Defendants' statements in the Rule 26(f) Report, "no further dialogue was needed with Plaintiffs on these issues." ECF 142, at 9. If true, Plaintiffs were justified in filing a motion because, apparently, Defendants set forth their final position—they would not produce the data as to all of the opt-ins. An award of fees is appropriate here and no exception under Rule 37(a)(5) applies.

Because Defendants must produce work time, pay, reimbursement, and mileage data, Defendants go with a "poisoning the well" strategy of claiming (1) Plaintiffs have not met their own burden to produce discovery and (2) Defendants have now produced 386 pages of documents.

Defendants are correct that Plaintiffs have objected to Defendants' discovery questions regarding vehicle expenses, bankruptcies, and unlimited disclosure of social media posts. None of this information is relevant. The Court granted Plaintiffs' motion for a protective order relating to Defendants' demand that Plaintiffs produce records of vehicle expenses. Order, ECF 135 ("Defendants are prohibited from propounding discovery related to the delivery drivers' individual vehicle expenses or whether Defendants' 'reasonably approximated' those expenses."at 8.). The Court recognized that "[t]here is no information that an opt-in plaintiff can provide that will bear on these issues" and "[a]ll necessary information is in Defendants' possession." Id., at 5.

Defendants still demand that Plaintiffs produce the information that the Court protected Plaintiffs from producing. See ECF 143-19, PageID 2717, Ex. 18, 4/21/20 Letter from Defendants; Order, ECF 124 and Order, ECF 135. Defendants wrote:

> Here, Plaintiffs cannot bypass their initial burden to prove liability nor can they bypass their burden to establish damages. They must proffer discovery related to their claims, including evidence that they incurred expenses related to their vehicles.

Id., at 2; compare to Order, ECF 135, at 2 ("The fact that the parties agree that motor vehicles were used to deliver the pizzas suffices to prove that costs were incurred in their delivery. The pizzas were not walked to homes and we are not dealing with bicycle delivery.").

On April 21, 2020, Defendants argued:

> To the extent that [ ] calendars, documents and records demonstrate that Plaintiffs used their cars for reasons other business purposes (such as driving for Uber or delivering for Door Dash) or other personal use (such as driving the carpool or hobbies involving length[y] drives) they would be relevant to determining the vehicle costs attributable to those other activities such that fixed costs (such as insurance, registration and licensing fees) be apportioned among the parties.
>
> This information is relevant, please respond to these discovery demands.

Id. PageID 2717-18, Id., at 3–4.

Defendants seek to avoid and delay their own discovery duties based on Plaintiffs' objection to requests for individualized information previously disallowed under the Court's protective order. When Defendants say that Plaintiffs objected to Defendants' requests, Defendants are correct. That is because Defendants are still demanding documents and information that is not relevant to this lawsuit, despite the Court prohibiting the very same discovery.

**Conclusion**

The Court **GRANTS** Plaintiffs' Motion to Compel and Award Fees under Rule 37. Defendants are **ORDERED** to produce the relevant documents by July 18, 2020. Plaintiffs are to submit a bill of costs by July 18, 2020. Defendants will be granted until July 28, 2020 to file any objection to the bill of costs.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, July 6, 2020.

    s/Thomas M. Rose

    _____
    THOMAS M. ROSE
    UNITED STATES DISTRICT JUDGE