**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| TAMMY HATMAKER, et al., | : | Case No. 3:17-cv-00146 |
| | : | |
|     Plaintiffs, | : | District Judge Thomas M. Rose |
| | : | Magistrate Judge Sharon L. Ovington |
| vs. | : | |
| | : | |
| PAPA JOHN'S OHIO, LLC, et al., | : | |
| | : | |
|     Defendants. | : | |
| | : | |

---

**REPORT AND RECOMMENDATION[1]**

---

Plaintiff Stephen Hatmaker worked as a pizza-delivery driver at a Papa John's restaurant in Dayton, Ohio. (Doc. No. 84, ¶ 187). He claims that Defendants failed to compensate him, and others similarly situated to him, with the minimum wages required by the Fair Labor Standards Act (FLSA) and Ohio wage laws. The case is now before the Court upon Defendants' Motion to Dismiss Mr. Hatmaker's claims (Doc. No. 157), Mr. Hatmaker's Memorandum in Opposition (Doc. No. 161), Defendants' Reply (Doc. No. 164), and the record as a whole.

The questions presented concern the impact, if any, Mr. Hatmaker's past bankruptcy case has on his claims in the present case.

**I.**

Plaintiffs filed their Complaint on April 27, 2017. Nearly three weeks later, on

---

[1]Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

May 15, 2017, Mr. Hatmaker filed a Chapter 7 bankruptcy petition in the U.S. Bankruptcy Court for the Southern District of Ohio.  (Doc. No. 157, PageID 3018-65). That case wrapped up expeditiously:  The Discharge of Debtor issued in September 2017, and the bankruptcy court terminated the case in early October 2017.  *Id*. at 3065-69.

During his bankruptcy proceedings, Mr. Hatmaker did not disclose the existence of the claims he asserts in this case.  He instead reported in his petition that he had no claims pending against third parties.  *Id*. at 3030 (Item 33).  He also represented that he had no contingent or unliquidated claims.  *Id*. (Item 34).  And he electronically signed his petition declaring under penalty of perjury that the information he provided was true and correct.  *Id*. at 3049.

After Defendants filed their Motion to Dismiss Mr. Hatmaker's FLSA and other claims in the instant case, Plaintiffs' attorney emailed the bankruptcy Trustee notifying her about his FLSA and other claims.  (Doc. No. 161, PageID 3142).  This occurred on August 12, 2020, more than three years after the present case began and almost three years after Mr. Hatmaker's bankruptcy case closed.  The Trustee responded to Plaintiffs' attorney that she was "not inclined to reopen…" Mr. Hatmaker's bankruptcy case.  *Id*. at 3140.

Mr. Hatmaker states in his sworn declaration (attached to his Memorandum in Opposition), "I did not mean to mislead anyone through my bankruptcy filing."  *Id*. at 3148.  He explains:

3.  Before filing bankruptcy, I answered questions from a staff member working for my bankruptcy attorney.  When that staff member asked me the questions, I did not realize she was asking me about a claim about vehicle

2

costs or reimbursements.

4.  Later, my bankruptcy attorney's office asked me to sign documents for the bankruptcy case.  I trusted my bankruptcy attorney's office to prepare those forms correctly.

*Id*.

Defendants seek dismissal of Mr. Hatmaker's FLSA and other claims under Fed. R. Civ. P. 12(b)(1) or, alternatively, under Rule 12(c).

## II.

Defendants argue that dismissal of Mr. Hatmaker's claims is proper under Rule 12(b)(1) because for lack of subject matter jurisdiction.  Defendants point out that his claims are assets of his bankruptcy estate and, consequently, he lacks standing to pursue them in this case.

A Chapter 7 bankruptcy trustee "collect[s] and reduce[s] to money the property of the estate for which the trustee serves...."  11 U.S.C. § 704(1)).  Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  *Id*. § 541(a)(1); *see In re RCS Engineered Products Co., Inc.,* 102 F.3d 223, 225 (6th Cir. 1996).  "It is 'well settled that the interests of the debtor in property' includes 'causes of action.'"  *In re Van Dresser,* 128 F.3d 945, 947 (6th Cir. 1997) (quoting *Bauer v. Commerce Union Bank,* 859 F.2d 438, 441 (6th Cir. 1988)); *see RCS Engineered Products,* 102 F.3d at 225; *see also In re Graham Square Inc.,* 126 F.3d 823, 831 (6th Cir. 1997).

In the present case, Mr. Hatmaker claims that Defendants violated the FLSA and state-law claims based on alleged events during his employment from about November

3

2015 to July 2016. (Doc. No. 157, PageID 3007). These alleged events—and therefore his claims in the present case—arose before he filed his Chapter 7 bankruptcy proceeding in May 2017. Indeed, Mr. Hatmaker knew about these claims the month before—April 2017 at the latest—when he became a plaintiff in the present case. These claims were therefore the property of the bankruptcy Trustee who held "the *exclusive* right to assert [them]." *In re Van Dresser,* 128 F.3d at 947. Mr. Hatmaker consequently lacks standing to pursue his FLSA and state-law claims in the present case. *Id.*; *see Siler v. Wal-Mart Stores Inc.*, No. 3:03cv31, 2005 WL 1185805, at *3 (S.D. Ohio 2005) (Rose, J; Ovington, MJ).

Plaintiffs contend that the Trustee abandoned Mr. Hatmaker's present claims when his attorney contacted her by email. As noted above, this occurred after Defendants filed their pending Motion to Dismiss and after the Trustee responded that she was "not inclined to reopen…" Mr. Hatmaker's bankruptcy case. (Doc. No. 161, PageID 3140).

Abandonment of property by a bankruptcy trustee is not a pure fact question because it is strictly governed by the Bankruptcy Code. Abandonment occurs in three situations governed by statute: First, "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Second, "[o]n request of a party in interest and after a notice and a hearing, the [bankruptcy] court may order the trustee to abandon any property ... that is burdensome ... or that is of inconsequential value and benefit to the estate." *Id.* § 554(b). Third, property that has been "scheduled" in the bankruptcy case but that is "not otherwise administered at the

time of the closing of a case" is deemed abandoned by the debtor. *Id.* § 554(c). The

Bankruptcy Code specifically provides that property of the estate that is not abandoned in

one of these three situations remains property of the estate unless the bankruptcy court

orders otherwise. *Id.* § 554(d). In addition:

> The language of [11 U.S.C. § 554(c)] deems abandoned to the debtor any
> *scheduled* asset of the estate that remains unadministered at the close of the
> case. Any asset concealed from the trustee or not scheduled by the debtor,
> however, will *not* be deemed to have been abandoned.... The word
> 'scheduled' in § 554(c) has a specific meaning and refers only to assets listed
> in a debtor's schedule of assets and liabilities....

*In re McCoy,* 139 B.R. 430, 431-32 (Bkrtcy. S.D. Ohio 1991) (emphasis added); *Rowland*

*v. The Mutual Life Ins. Co. of N.Y.,* 689 F.Supp. 793, 797 (S.D. Ohio 1988) (Spiegel, J)

("As a general rule, there can be no abandonment by mere operation of law of property

that was not listed in the debtor's schedule or otherwise disclosed to the creditors....").

Indeed, "a cause of action that was never scheduled cannot be abandoned to the debtor …

pursuant to 11 U.S.C. § 554(d)." *Anderson v. Acme Markets, Inc.,* 287 B.R. 624, 629

(E.D. Pa. 2002); *see Rowland,* 689 F.Supp. at 797. Because Mr. Hatmaker's claims in

the present case were not scheduled in his bankruptcy case and because the Trustee has

not reopened, and is not inclined to reopen, his bankruptcy case, his claims were not

abandoned pursuant to § 554(d).

Plaintiffs oppose this conclusion. They contend—based on *Hardesty v. Haber* [*In*

*re Haber*], No. 2:16cv247, 2017 WL 1017731, at *2 (S.D. Ohio 2017)—that the

Trustee's email message expressly abandoned Mr. Hatmaker's FLSA and state-law

claims. But *Haber* does not assist Mr. Hatmaker. The issue in *Haber* concerned whether

the trustee abandoned surplus proceeds from the sale of real property that he had effectively abandoned. *Id*. at \*2-\*3. Unlike the present case, there was no concern in *Haber* over whether the Trustee had abandoned the real property itself in one of the three situations delineated in 11 U.S.C. § 554(a)-(c). This is seen both in *Haber* and in the underlying bankruptcy court's decision, which reports, "the Trustee in this case abandoned the Real Property pursuant to 11 U.S.C. § 554(a) as evidenced by the Abandonment that was filed." *In re Haber*, 547 B.R. 252, 259 (Bkrtcy. S.D. Ohio 2016). No similar abandonment occurred in Mr. Hatmaker's bankruptcy case, and as a result, *Haber* provides no support for Plaintiffs' argument that the Trustee has abandoned Mr. Hatmaker's causes of action.

Accordingly, Mr. Hatmaker lacks standing to proceed with his claims in the present case. Even if Mr. Hatmaker has standing in this case, another stubborn barrier blocks his way forward.

**III.**

Defendants contend that dismissal of Mr. Hatmaker's claims is warranted under Fed. R. Civ. P. 12(c) because he did not report their existence during his bankruptcy proceedings. They reason that the doctrine of judicial estoppel bars his FLSA and other claims due to his sworn representations to the bankruptcy court that no such claims existed.

A Rule 12(c) motion for judgment on the pleadings generally animates the same standards as its close cousin, Fed. R. Civ. P. 12(b)(6). *Jackson v. City of Cleveland*, 925 F.3d 793, 806 (6th Cir. 2019).

6

Courts must accept as true all well-pleaded factual allegations, but they need not accept legal conclusions. And the well-pleaded factual allegations must "plausibly give rise to an entitlement to relief." Pleaded facts will do so if they "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Pleaded facts will not do so if they "are 'merely consistent with' a defendant's liability."

*Bates v. Green Farms Condominium Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).

"The doctrine of judicial estoppel 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *White v. Wyndham Vacation Ownership, Inc.,* 617 F.3d 472, 476 (6th Cir. 2010) (quoting *New Hampshire v. Maine,* 532 U.S. 742, 749 (2001)). Its goal is "to preserve the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Browning v. Levy,* 283 F.3d 761, 776 (6th Cir. 2002); *see New Hampshire,* 532 U.S. at 750 ("Because the rule is intended to prevent 'improper use of judicial machinery,' judicial estoppel 'is an equitable doctrine invoked by a court at its discretion[.]'").

In the bankruptcy context, "'judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *White,* 617 F.3d at 476 (quoting *Browning,* 283 F.3d at 775-76).

Mr. Hatmaker's circumstances fit well within these. First, he did not disclose his extant FSLA and other claims in his bankruptcy proceedings even though he raised them

7

in this case less than one-month before filing his bankruptcy petition. "'[A] cause of action is an asset that must be scheduled under § 521[a](1).' A debtor is required to disclose all potential causes of action, and, because this duty to disclose is continuous, this includes even those of which the party becomes aware after filing for bankruptcy." *Couch v. Certified Flooring Installation, Inc*., 439 F.Supp.3d 964, 971-72 (S.D. Ohio 2020) (Cole, J) (quoting *Lewis v. Weyerhaeuser Co.*, 141 F. App'x 420, 424 (6th Cir. 2005)). Second, the bankruptcy court's discharge accepted Mr. Hatmaker's statement that he had no potential causes of action. *Holoman v. Stoneridge, Inc.,* No. 1:09 CV 1025, 2009 WL 10713888, at *5 (N.D. Ohio 2009) ("[plaintiff's] pursuit of her claims against defendant is 'contrary to' her sworn bankruptcy petition ... [and] the Bankruptcy Court confirmed [the plaintiff's] plan ... [and] thereby 'accepted' the prior assertions"); *Davis v. Fiat Chrysler Automobiles U.S., LLC*, 747 F. App'x 309, 314 (6th Cir. 2018) ("The bankruptcy court confirmed Davis's bankruptcy plan without the potential claim listed as an asset, which is sufficient to satisfy the second consideration.").

The news so far has been foreboding for Mr. Hatmaker. But his claims might still survive. When the party—the contrarian—did not act in bad faith, judicial estoppel is nullified. *White,* 617 F.3d at 476. Thus, judicial estoppel does not apply "'when the conduct amounts to nothing more than mistake or inadvertence.'" *Id*. (quoting *Browning*, 283 F.3d at 776) (other citation omitted). "Two circumstances in which a debtor's failure to disclose might be deemed inadvertent are: (1) 'where the debtor lacks knowledge of the factual basis of the undisclosed claims,' and (2) where 'the debtor has no motive for concealment.'" *Id*. (quoting *Browning,* 283 F.3d at 776) (omitting parenthetical).

Mr. Hatmaker did not lack knowledge of his present FSLA claims or related state-law claims.  Instead, Plaintiffs—including Mr. Hatmaker—initiated this FLSA case less than a month before he filed his bankruptcy petition.  He also had a motive to conceal his FLSA claims and related state-law claims during his bankruptcy proceedings.  "[C]ourts have repeatedly held that the financial incentive to avoid disclosing the claim in bankruptcy (thus allowing the debtor potentially to keep the proceeds for him- or herself) is sufficient evidence of a 'motive for concealment' (prong 2)."  *Couch*, 439 F.Supp.3d at 972 (citations omitted).

Plaintiffs contend that Mr. Hatmaker's sworn Declaration constitutes evidence that establishes his lack of bad faith or, at a minimum, the presence of a genuine factual issue regarding his bad faith.  He first points to his statement, "I did not mean to mislead anyone through my bankruptcy filing."  (Doc. No. 161, PageID 3184).  Accepting this as true does not counter the fact that he did mislead the bankruptcy court by not including his FLSA and other claims in his petition.  These omitted claims misled the bankruptcy court even if he did not mean to mislead it.  More significantly, he did nothing to correct his petition during the pendency of his bankruptcy case.  Such efforts might in some instances show an absence of bad faith, but "[s]ince the bankruptcy system depends on accurate and timely disclosures, the extent of these efforts, together with their effectiveness, is important."  *White*, 617 F.3d at 480.  Mr. Hatmaker attempted to correct the bankruptcy record only once—and quite belatedly.  He waited until well after his bankruptcy case closed and his debts were discharged to contact the trustee (through his attorney's emails) to inform her about his FLSA and other claims.  This occurred nearly

9

three years after his bankruptcy case closed and after Defendants asserted judicial estoppel in their pending Motion to Dismiss his claims in this case. This limited and belated effort provides no foundation for finding an absence of bad faith. "To allow a party to avoid judicial estoppel by rectifying omissions after a motion to dismiss has been filed 'would encourage gamesmanship' and defeat the purpose of the doctrine." *Newman v. University of Dayton*, 751 F. App'x 809, 815 (6th Cir. 2018) (citing *White*, 617 F.3d at 481).

Mr. Hatmaker also states, "Before filing bankruptcy, I answered questions from a staff member working for my bankruptcy attorney. When that staff member asked me the questions, I did not realize she was asking me about a claim about vehicle costs or reimbursements. Later, my bankruptcy attorney's office asked me to sign documents for the bankruptcy case. I trusted my bankruptcy attorney's office to prepare those forms correctly." (Doc. No. 161, PageID 3148, ¶s 3-4). Accepting these statements as true does not assist Plaintiff in showing an absence of bad faith. *See Newman*, 751 F. App'x at 815 (rejecting the plaintiff's argument that he relied upon the advice of counsel when he did not disclose his employment claims to the bankruptcy court); *White*, 617 F.3d at 483-84 (finding unpersuasive the plaintiff's argument that the bankruptcy attorney failed to include her harassment claim in the bankruptcy filings and that her attorney's mistake should excuse her omission of her harassment claim to be unpersuasive); *Lewis*, 141 F. App'x at 427 (holding that the plaintiff was bound by the errors of her attorney).

Tacking in another direction, Plaintiffs argue that Defendants have waived judicial estoppel by not including it as an affirmative defense in their pleadings. "But judicial

estoppel is not an affirmative defense within the meaning of the federal rules, it is 'an equitable doctrine invoked by the court at its discretion.'"  *Green v. Liberty Insurance Corp.*, 220 F.Supp.3d 842, 849 (E.D. Mich. 2016) (quoting *New Hampshire*, 532 U.S. at 750); *see Mirando v. U.S. Dept. of Treasury*, 766 F.3d 540, 544 (6th Cir. 2014) (applying judicial estoppel when doctrine first raised by defendant in its reply brief for summary judgment).  Because of this, Defendants could not, and have not, waived judicial estoppel as to Mr. Hatmaker's claims.  *Green*, 220 F.Supp.3d at 849.

To avoid this conclusion, Plaintiffs rely on two district-court cases—*Cotton v. City of Cincinnati*, No. 1:11cv00389, 2013 WL 1438030, at *4 (S.D. Ohio 2013) and *E.E.O.C. v. New Breed Logistics*, 962 F.Supp.2d 1001, 1022 (W.D. Tenn. 2013)—which describe judicial estoppel as an affirmative defense.  Neither *Cotton* nor *New Breed Logistics* mentions the equitable nature of judicial estoppel.  *Green*, the case credited in the previous paragraph, does by relying on the Supreme Court's description of judicial estoppel as "'an equitable doctrine invoked by the court at its discretion.'"  220 F.Supp.3d at 849 (quoting *New Hampshire*, 532 U.S. at 750).  Consequently, on this point of law *Green* holds more water than *Cotton* or *New Breed Logistics*.

Lastly, Plaintiffs rely on laches—"the negligent and unintentional failure to protect one's rights …."  *Elvis Presley Enterprises, Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991).  They contend that laches bars Defendants attempt to invoke judicial estoppel to support dismissal of Mr. Hatmaker's claims because Defendants waited more than three years after filing this case to assert this defense.  This prejudices Mr. Hatmaker, according to Plaintiffs, due to the time and money he has spent litigating

11

this case as a representative of the conditionally certified collective.

To successfully apply laches, Plaintiffs must show: (1) a lack of diligence by Defendants in asserting judicial estoppel, and (2) prejudice to them (Plaintiffs) caused by Defendants' lack of diligence.  *See Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc*., 270 F.3d 298, 320-21 (6th Cir. 2001).

This case began in late April 2017.  Defendants filed their present Motion asserting judicial estoppel in August 2020.  This three-plus-year gap in time seems too long, and laches-like, at first glance.  But the delay was due to the large size of this conditionally certified FLSA collective action (Doc. No. 30), potentially involving "over 800 delivery drivers who have joined the case and, if certified, an Ohio Rule 23 Class." (Doc. No. 161, PageID 3128).  This large size has led to an unusual procedural history that has included an extensive period of time for delivery drivers to opt into the conditionally certified collective, and two stays of the case (4 months in 2017; 2 months in 2018) to give the parties time to mediate and possibly settle their disputes.  More significantly, Defendants' Interrogatories in May 2018 asked Mr. Hatmaker if he had ever been a party to other civil litigation, including bankruptcy.  He did not reveal his previous bankruptcy case when he answered the interrogatories on or about February 7, 2020.  (Doc. No. 164, PageID 3172, 3188-89).  It was not until May 12, 2020 that Mr. Hatmaker informed Plaintiffs about his bankruptcy.[2]  *See id*. at 3194.  Only three months

---

[2]Plaintiffs' attorney's letter on April 24, 2020 indicates that "Plaintiffs [sic] Hatmaker" (perhaps meaning Tammy and Stephen Hatmaker) and "Plaintiff Hatmaker" filed for bankruptcy in 2017.  (Doc. No. 164, PageID 3194).  Plaintiffs' attorney clarified by email on May 12 that Tammy Hatmaker had not filed for bankruptcy but Mr. Hatmaker had in 2017.  *Id*. at 3196.

passed between the date Plaintiffs informed Defendants about Mr. Hatmaker's bankruptcy and the date Defendants asserted judicial estoppel against Mr. Hatmaker (in their Motion to Dismiss). This relatively brief period of time fails to show a lack of diligence by Defendants. Consequently, laches does not bar Defendants' present reliance on judicial estoppel.

## IT IS THEREFORE RECOMMENDED THAT:

Defendants' Motion to Dismiss Mr. Hatmaker's claims (Doc. No. 157) be GRANTED.

November 4, 2020          *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).