IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Tammy Hatmaker, | |
| *On behalf of herself and those similarly situated*, | Case No. 3:17-cv-146 |
| Plaintiffs, | Judge Thomas Rose |
| v. | Magistrate Judge Sharon L. Ovington |
| PJ Ohio, LLC, *et al*, | |
| Defendants. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL

Plaintiffs Kendall Peyton, Alan Huxford, Derek Green, and Bobby White ask the Court to preliminarily approve the settlement between Plaintiffs and Defendants PJ Ohio, LLC, BLD Brands, LLC, Serazen, LLC, PJ Pizza Ohio, LLC, PJ Las Vegas, LLC, PJ North Carolina, LLC, Doug Pak, and Darcie Mangus. The proposed Settlement Agreement,[1] attached as Exhibit 1, resolves the collective/class-wide claims raised in this lawsuit. Defendants do not oppose this motion and consent to certification of the class and collective for settlement purposes only.

Plaintiffs ask that the Court to:

(1) Preliminarily approve the proposed settlement.

(2) Approve the content, form, and distribution of the class notice.

---

[1] The parties are in the process of obtaining a fully executed copy. They will supplement the record with a fully-executed version as soon as it is available.

(3) Preliminarily approve the service award for the Plaintiffs.

(4) Provisionally approve Class Counsel's request for attorneys' fees and costs.

(5) Schedule a fairness hearing approximately 150 days after preliminary approval.

The arguments in support of Plaintiff's Motion are more fully set forth in the attached memorandum.

Respectfully submitted,

/s/ Andrew R. Biller
Andrew R. Biller
Andrew P. Kimble
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
abiller@billerkimble.com
akimble@billerkimble.com
www.billerkimble.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Tammy Hatmaker, | |
| *On behalf of herself and those similarly situated*, | Case No. 3:17-cv-146 |
| Plaintiffs, | Judge Thomas Rose |
| v. | Magistrate Judge Sharon L. Ovington |
| PJ Ohio, LLC, *et al*, | |
| Defendants. | |

MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY SETTLEMENT APPROVAL

## 1. Introduction

Plaintiffs Kendall Peyton, Alan Huxford, Derek Green, and Bobby White have reached a Settlement Agreement (Exhibit 1) between themselves, the putative class/collective action members (collectively, "Plaintiffs"), and Defendants PJ Ohio, LLC, BLD Brands, LLC, Serazen, LLC, PJ Pizza Ohio, LLC, PJ Las Vegas, LLC, PJ North Carolina, LLC, Doug Pak, and Darcie Mangus (collectively, "Defendants"). If approved, the Agreement will resolve the claims against Defendants that Plaintiffs asserted in the lawsuit. Defendants do not oppose this motion and consent to certification of the class and collective for settlement purposes only.

Plaintiffs now ask the Court to begin the approval process and preliminarily approve the parties' Agreement.

**2. Standard for Settlement Approval**

Courts typically use a three-step procedure for approving class-wide settlements. *Merkner v. AK Steel Corp.*, No. 1:09-cv-423, 2011 U.S. Dist. LEXIS 157375, at *1 (S.D. Ohio Jan. 10, 2011). First, the Court determines whether to preliminarily approve the settlement. *Id.* Second, notice of the settlement is sent to interested persons. *Id.* And third, the Court must decide whether to finalize approval after holding a hearing. *Id.*

In evaluating an FLSA settlement, the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols., LLC*, 2012 U.S. Dist. LEXIS 74994, at *5 (S.D. Ohio May 30, 2012). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *Id.* at *5–6. As described below, the proposed settlement meets this standard.

**3. Background of the Lawsuit and the Claims**

This litigation began on April 27, 2017. *See* Complaint, Doc. 1. Three pizza delivery drivers, Tammy Hatmaker, Stephen Hatmaker, and Kendall Peyton sued Defendants under state and federal wage laws.[2] Defendants include various entities and individuals that Plaintiffs allege own and operate a group of approximately 70 Papa John's franchise locations. Defendants dispute that some of the individuals and/or entities qualify as "employers" for purposes of wage and hour laws.

This lawsuit alleges several wage and hour claims, all centered on Defendants' vehicle reimbursement policy. Specifically, Plaintiffs allege that Defendants require Plaintiffs and the other delivery drivers to provide their own vehicles to deliver Defendants' pizza and other food.

---

[2] Ms. Hatmaker was withdrawn as a named plaintiff on August 10, 2020. *See* Doc. 156. Defendants successfully moved to dismiss Mr. Hatmaker as a result of his bankruptcy filing. *See* Doc. 170 and 171.

The crux of the parties' dispute is whether the reimbursement provided by Defendants adequately reimbursed Plaintiffs and other drivers for their vehicle expenses.

The parties vigorously contested how the law applied to those facts. This Court resolved that dispute for purposes of this case through cross-motions for partial summary judgment and held that "[a]s a matter of law, the proper measure of minimum wage compliance for pizza delivery drivers is to either (1) track and pay delivery drivers' actual expenses or (2) pay the mileage reimbursement rate set by the Internal Revenue Service." *See* Order, Doc. 124.

Defendants contended then, and still contend now, however, that they are permitted to "reasonably approximate" the employee's expenses and reimburse that amount. *See e.g., Kennedy v. Mountainside Pizza, Inc.*, 2020 U.S. Dist. LEXIS 154792, at *14 (D. Colo. Aug. 26, 2020); U.S. D.O.L., Wage & Hour Div., Opinion Letter FLSA2020-12 (Aug. 31, 2020) (affirming the "reasonably approximate" standard). Defendants further contend that their reimbursement practice met this standard and, accordingly, there has been no underpayment.

Over the course of this 4+ year litigation, the parties briefed numerous issues in the case, including through Defendants' Motion to Dismiss (Doc. 94), several motions to compel/for protective orders (Doc. 130, 137, and 145), Plaintiffs' Motion for Prejudgment Attachment (Doc. 167), and Defendants' Motion to Dismiss Plaintiff Stephen Hatmaker (Doc. 157). The parties also engaged in substantial discovery.

## 4. Settlement Negotiations

The parties have made multiple attempts to settle this dispute, including three mediations with professional mediators and additional settlement discussions at various times throughout the case. The first mediation occurred on September 22, 2017, with Hunter Hughes in Atlanta,

Georgia. The second mediation occurred on July 2, 2018, with retired judge Gene Porter in Las Vegas, Nevada. The third mediation occurred via Zoom on April 1, 2021, with retired federal magistrate judge F. Bradford Stillman. Retired Judge Stillman was able to broker the deal that the parties now present to the Court.

**5. Summary of Settlement Terms**

The Agreement requires Defendants to pay a total of $3,250,000 to resolve Plaintiffs' and the putative class members' claims in this lawsuit. The $3,250,000 is inclusive of expenses, service awards, and attorneys' fees.

In order to facilitate Defendants paying this sum, the settlement payments will be broken int two payments. The first payment of $2,250,000 will occur within 40 days of the Court granting final settlement approval. The second payment of $1,000,000 will occur on or before April 1, 2022.

The fund will be distributed to every class member, without requiring anyone to submit a claim form. Each class member will receive his or her prorated share, based on an anticipated hybrid formula set forth in the Settlement Agreement, which is based on weeks worked and/or miles driven. The 837 class members that have already opted into the case will receive a 1.25 share. All other class members will receive a single share.

**6. The Settlement provides a fair resolution of disputed claims.**

When evaluating a settlement, the most important consideration is the plaintiff's probability of success on the merits. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *20. To assist the Court with that endeavor, Plaintiffs will describe the facts and law underlying his claims.

There are several areas of dispute in this case. Plaintiffs contend that the key facts at issue in this case (basically the miles driven and the reimbursements paid) are discernible from

Defendants' business records, which were provided to Plaintiffs prior to the mediations. Defendants, on the other hand, contend that Plaintiff and the putative class members are in the exclusive possession of records of their business expenses, and that said records would show that Defendants more than likely over-reimbursed Plaintiff and the putative class members. Based upon the records reviewed through discovery and for mediation, Defendants' delivery drivers drove approximately 59 million miles during the relevant time. During that time, Defendants reimbursed the drivers approximately $15.8 million. This is an average reimbursement rate of approximately $0.27 per mile.

One key area of dispute in this case centers on determining the appropriate legal standard. As noted above, this Court held that the proper methodology for reimbursing delivery drivers is to either (1) track and reimburse the drivers' actual expenses or (2) reimburse the drivers at the IRS business mileage rate. *See* Order, Doc. 124. Following this Court's November 5, 2019 decision, Defendants requested permission to appeal the decision on an interlocutory basis, which was denied by the Court. *See* Defendants' Motion, Doc. 125. If this action is not resolved, Defendants intend to pursue their appeal rights relating to, among other things, the November 5, 2019 decision concerning the appropriate legal standard for reimbursing pizza delivery drivers.

On August 31, 2020, the Department of Labor issued an Opinion Letter, FLSA2020-12 ("Letter"), which rejected this Court's decision in this case as the operative legal standard. Instead, the Letter endorsed Defendants' proposed "reasonable approximation" standard.

On May 7, 2021, this Court declined to defer to the Letter and affirmed the legal standard adopted in this lawsuit. *Waters v. Pizza to You, LLC*, 2021, U.S. LEXIS 87604, at *27–28 (S.D.

Ohio May 7, 2021). This guidance was published *after* the parties reached the settlement agreement in this case.

Although Plaintiffs are confident in the correctness of the Court's decision, Defendants will appeal it. A successful appeal would dramatically affect Plaintiffs' potential damages. If Defendants successfully appealed the legal standard, they would argue that what they paid—$.27 per mile on average—"reasonably approximated" the drivers' expenses and, thus, there is no violation at all. Plaintiffs would argue that $.27 does not "reasonably approximate" the drivers' expenses, and that class suffered damages. Experts would likely opine on what a "reasonably approximate" amount is, resulting in a range of potential damages (with $0 being a possible outcome). Thus, Plaintiffs' ultimate success is uncertain.

Based on Plaintiffs' calculations, which Defendants are likely to dispute in some measure, the approximate IRS rate of $.55 would result in under-reimbursed vehicle expenses of approximately $16.5 million. Additional damages under state law may apply, as might FLSA liquidated damages for the opt-ins. Moreover, the various laws at issue also entitle prevailing plaintiffs to recover their reasonable attorney's fees and costs.

Aside from Defendants' legal and factual arguments (which dispute the merits of Plaintiffs' allegations and claims), and, in Plaintiffs' view, more importantly, Defendants claim that they are unable to withstand a judgment or settlement greater than that which could be reached here. Through discovery, Defendants provided financial information that tends to support Defendants' claim. Plaintiffs obtained additional financial information via a subpoena directed to PNC Bank. Defendants also provided information regarding a loan with PNC Bank for $30 million According to publicly filed documents, PNC sued Defendants for defaulting on the loan on May 2019.

Whether through fighting the merits of this lawsuit through appeal or because of a lack of collectability, Plaintiffs risk a worse result if litigation continued. This risk weighs in favor of settling the case at this time and supports the settlement reached here. As it stands, the Agreement provides substantial relief to the aggrieved workers.

### 7. Additional Fairness Considerations

When evaluating settlements, courts also look at other factors, including (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) any objections from class members; and (6) the public interest. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *20. Plaintiffs address each factor below.

**Complexity, expense and likely duration.** Wage and hour class/collective actions are inherently complex. *See, e.g., Arledge v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018). Pizza delivery driver cases are especially complex and time consuming because of the disputed legal standard that turns on regulations, *Auer/Kisor* deference issues, Department of Labor guidance and case law, and the potential for expert testimony.

Even within the area of pizza delivery driver cases, this litigation is particularly complicated. It encompasses approximately 70 stores, thousands of drivers, three different states, and high potential damages. This factor weighs in favor of approving the settlement.

**Stage of the proceedings/discovery.** The parties have litigated this case for over four years. The parties have filed numerous, substantive motions—including motions for partial summary judgment and to dismiss—and have completed substantial discovery. Conditional

certification was granted, notice was sent, and that process has completed. At this stage, the parties are able to evaluate settlement and value the case for that purpose.

**Trial counsel's judgment.** Plaintiffs' counsel supports the settlement and believes that it is a fair, adequate, and reasonable resolution.

**Negotiations.** As addressed above, the parties negotiated this case through three formal mediations with three different mediators and had numerous, informal settlement discussions. This process, along with the obviously contested docket entries, demonstrates that the settlement was reached through arms-length negotiations. This factor weighs in favor of approval.

**Class member objections.** The class members have not yet received notice, so this factor will need to be evaluated at final approval.

**The public interest.** The public has an interest in both resolving complex class actions, which require significant Court resources that could be allocated to other matters. Moreover, the public has an interest in ensuring that minimum wage workers receive a just and speedy resolution to claims for unpaid wages. Both weigh in favor of approving the settlement.

### 8. The proposed attorneys' fee award is reasonable and should be approved.

Class Counsel applies for an award of one-third of the settlement fund as attorneys' fees ($1,083,333). Defendants have agreed not to object to this award, which is a standard amount in this type of case. *See, e.g., Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *5 (An award of one-third "is a normal fee amount in a wage and hour case."); *see also Dewald v. Time Warner Cable Inc.*, 2021 U.S. Dist. LEXIS 32459, at *14 (S.D. Ohio Feb. 16, 2021) ("When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are 1/3 of the total settlement."). "Absent compelling reasons to the contrary, this Court prefers the

percentage-of-the-fund method, as it best reflects the FLSA's employee-protection objective."
*Dewald*, 2021 U.S. Dist. LEXIS 32459, at *16.

The Settlement Agreement is not conditioned on an award of attorneys' fees. Thus, the
Court need not make a final decision as to fees and costs now. Instead, Plaintiffs ask that the Court
provisionally approve the fee award, subject to any objections from Class Members prior to final
approval. Provisionally approving the fee award at this stage serves a useful function, however,
because the Class Members can be accurately informed in the notice as to what to expect with
respect to attorneys' fees and costs.

Regardless, Class Counsel will expend additional time on this case during the notice and
approval process, which would affect the Court's final evaluation of the final fee award, to the
extent that the Court conducts a lodestar crosscheck. Likewise, Class Counsel will incur additional
expenses between now and final approval, including, for example, costs of sending notice to the
Class Members. At the final fairness hearing, the Court will have a full record to be able to evaluate
Class Counsels' request for fees and a reimbursement of expenses.

**9. The incentive payment is reasonable, and similar payments are routinely awarded.**

Plaintiffs requests a $10,000 incentive/service award for each of the four remaining named
plaintiffs. "Courts routinely approve incentive awards to compensate named plaintiffs for the
services they provide and the risks they incurred during the course of the class action litigation."
*In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).

Incentive awards account for the fact that "[b]ut for an individual worker coming forward
to advocate for his fellow workers, many, if not most, wage and hour issues would go unaddressed.
A worker who advocates for his or her colleagues assumes substantial risk, including the risk that

a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such information through a simple internet search, this risk is very real." *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 U.S. Dist. LEXIS 204371, at *21 (S.D. Ohio Nov. 25, 2019). The same considerations apply to this case as well.

The incentive award proposed here is typical in these types of cases. *See, e.g., Chrismon v. Meadow Greens Pizza*, 2020 U.S. Dist. LEXIS 119873, at *14 (E.D.N.C. July 7, 2020) (collecting cases approving a $10,000 service award in pizza delivery driver cases).

**10. For settlement purposes, the Court should certify a class and collective action.**

Rule 23 allows one or more individuals to act on behalf of a class of individuals with similar claims. Representative actions can be appropriate in wage and hour lawsuits where individual claims may be relatively small, but substantial in the aggregate. For settlement purposes, Plaintiffs asks the Court to certify the following hybrid class/collective:

> All current and former Delivery Drivers employed by PJ Ohio, LLC, PJ North Carolina, LLC, PJ Las Vegas, LLC, or Serazen, LLC from April 27, 2014 to April 1, 2021, who do not exclude themselves.

Defendants consent to certification of the above class for settlement purposes only. In doing so, Defendants do not waive any arguments they have opposing class/collective action certification, should the Court decline to approve the settlement.

"A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). As described below, all the requirements for class certification are met.

While the FLSA requires similarly-situated workers to affirmatively "opt-in" before becoming a party plaintiff to an action for unpaid wages, Ohio law does not contain such a requirement. *See* Ohio Const. Art. II, Sec. 34a; O.R.C. 4111.03 and 4111.10. Consequently, plaintiffs may maintain class actions for unpaid wages under Civ. R. 23. *See, e.g., Castillo v. Morales, Inc.*, 302 F.R.D. 480, 489–90 (S.D. Ohio Sept. 2014) (certifying a class for Ohio minimum wage claims); *Brandenburg v. Cousin Vinny's Pizza, LLC*, 2018 U.S. Dist. LEXIS 189878 (S.D. Ohio Nov. 5, 2018) (certifying a class asserting similar Ohio minimum wage claims). Likewise, North Carolina and Nevada wage laws do not contain an "opt in" requirement.

Because the standard to certify a collective action is easier to meet than the standard under Rule 23, meeting the Rule 23 standard also meets the collective action standard. Therefore, collective action certification is also appropriate here.

### 10.1. Plaintiffs have satisfied the four Rule 23(a) prerequisites for class certification.

Under Rule 23(a), Plaintiffs must satisfy four prerequisites in order for the Court to certify a class: (1) the class must be "so numerous that joinder of all members is impracticable," (2) "questions of law or fact common to the class" must exist, (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class," and (4) the representative parties must "fairly and adequately protect the interests of the class." As set forth below, for purposes of settlement, Plaintiffs posit that each of these requirements is satisfied here. Defendants have agreed Rule 23 class certification for settlement purposes only.

#### 10.1.1. Numerosity

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. "The plaintiff is not required to establish that it is impossible to join all of the

proposed class , but simply that joinder would be difficult and inconvenient." *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 183 (S.D. Ohio 2012) (internal quotations and punctuation omitted).

Here, during the relevant time, Defendants employed thousands of class members that were subject to the pay policies alleged in the Complaint. This easily meets the numerosity requirement.

### 10.1.2. Commonality

Rule 23(a)(2)'s commonality requirement is satisfied where there are "questions of law or fact common to the class." Commonality exists "as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation." *Sweet v. Gen. Tire & Rubber Co.*, 74 F.R.D. 333, 335 (N.D. Ohio 1976). Individual class members need not be identically situated to meet the commonality requirement. Rather, the "requirement is met where the questions linking the class members are substantially related to the resolution of the litigation even though the individuals are not identically situated." *Swigart*, 288 F.R.D. at 183, *citing DeBoer v. Mellon Mortgage Co.*, 64 F.3d 1171, 1174 (8th Cir. 1995). Moreover, commonality is not required on every question raised in a class action. Rather, Rule 23 is satisfied when the legal question linking the class members is substantially related to the litigation's resolution. *Id.*; *see also Bacon v. Honda of American Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (commonality not required when "[i]t is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue").

Here, Plaintiffs maintain that the legal theories and relevant facts are common to the class because the class consists of workers that were allegedly harmed in the same way. Plaintiffs identified the following common questions of law or fact presented by his claims: (1) how much

Defendants reimbursed delivery drivers for their expenses, (2) whether Defendants adequately reimbursed delivery drivers for their delivery expenses, (3) what legal standard applies to this situation, and (4) what damages and liquidated damages are available to the class members as a result of Defendants' practices. Outside of the settlement context—*i.e.*, when an employer disputed class certification—courts have found that class certification is appropriate for nearly identical claims. *See, e.g., Waters v. Pizza to You, LLC*, 2021 U.S. Dist. LEXIS 11743, at *27 (S.D. Ohio Jan. 22, 2021).

### 10.1.3. Typicality

Rule 23(a)(3) requires that the class representatives' claims be typical of the class members' claims. "Typical does not mean identical, and the typicality requirement is liberally construed." *Swigart*, 288 F.R.D. at 185, *citing Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 57 (N.D.Ill. 1996). "Factual variations in the individual claims will not normally preclude class certification if the claim arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Id.*, *citing Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir.1996). Typicality focuses on the conduct of a defendant and whether a proposed class representative has been injured by the same kind of conduct alleged against the defendant as other members of the proposed class. *Id.*, *citing Clay v. Am. Tobacco Co.,* 188 F.R.D. 483, 491 (S.D.Ill.1999) ("The Court should concentrate on the defendants' alleged conduct and the plaintiffs' legal theory to satisfy Rule 23(a)(3).").

Finding that commonality exists generally results in a finding that typicality also exists. *Violette v. P.A. Days, Inc.,* 214 F.R.D. 207, 214 (S.D. Ohio 2003). Typicality "is generally considered to be satisfied if the claims or defenses of the representatives and the members of the

class stem from a single event or are based on the same legal or remedial theory." *Swigart*, 288 F.R.D. at 185 (internal citations omitted). Where, as here, "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff[s] and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." *Laichev v. JBM, Inc.*, 269 F.R.D. 633, 640–41 (S.D. Ohio 2008). Additionally, differences in the amount of damages allegedly owed each putative class member "is not fatal to a finding of typicality." *Id.* at 641.

Here, Plaintiffs are members of the putative class and their claims are typical of all class members' claims in that they all arise from the same courses of conduct. Plaintiffs maintain that each claim in this lawsuit arises from Defendants' pay practices that were applied to all employees in the same way. For example, the same or similar reimbursement rates applied to all class members. Whether Defendants' pay practices are illegal is a question answerable on a class-wide basis. "The premise of the typicality requirement is simply stated: as goes the claims of the named plaintiff, so go the claims of the class." *Id.* at 640. If Defendants' wage and hour practices violate Ohio, North Carolina, or Nevada law as to Plaintiffs, they violate those laws as to the putative class members; and, accordingly, the typicality requirement is met here.

### 10.1.4. Adequacy of Representatives

Rule 23(a)(4) requires that class representatives must fairly and adequately protect the interests of the class. This requirement calls for a two-pronged inquiry: (1) Do the representatives have common interests with the putative class members? (2) Will the representatives vigorously prosecute the interests of the class through qualified counsel? *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). These two requirements are met here.

14

With respect to the first inquiry, because Plaintiffs are challenging the same conduct and seeking the same relief as would the rest of the class members, Plaintiffs' interests are aligned with those of the class members sufficient to satisfy the first prong of the adequacy requirement. *See, e.g., Swigart*, 288 F.R.D. at 186; *Smith v. Babcock*, 19 F.3d 257, n.13 (6th Cir. 1994); *Thomas v. SmithKline*, 201 F.R.D. 386, 396 (E.D. Pa. 2001). Indeed, Plaintiffs' interests are essentially identical to all putative class members' interests.

With respect to the second inquiry, Plaintiffs have fulfilled the duties of a named plaintiffs to date and is expected to continue to do so. Likewise, Plaintiffs' counsel is well-qualified to handle this matter. This case is one of many "delivery driver lawsuits" that Plaintiffs' counsel is litigating across the nation. Through those cases, counsel have litigated many of the key issues in these cases, including motions to dismiss, motions for summary judgment, and motions for class certification. *See Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371, at *6 (S.D. Ohio Nov. 25, 2019) ("The Court is familiar with Class Counsel's work in this and other cases like it. The '[] delivery driver' cases require substantial expertise and firm resources to pursue. The Court agrees that Class Counsel's work in this area is exemplary…"). Plaintiffs' counsel have actively and vigorously pursued Plaintiffs' (and the putative class members') claims in this case. Plaintiffs' counsel has committed, and will continue to commit, the resources necessary to representing the putative class in this case.

### 10.2. Plaintiffs have satisfied the Rule 23(b)(3) class certification requirements.

When the prerequisites of Rule 23(a) are satisfied, an action may be maintained as a class action when it qualifies under any one of three conditions set forth in Rule 23(b). Courts will certify class actions under Rule 23(b)(3) when common issues of fact and law predominate, and the class

mechanism is superior to other methods of relief. As discussed below, Plaintiffs contend that both of Rule 23(b)(3)'s requirements are met in this case.

### 10.2.1. Common questions of law and fact predominate.

The predominance requirement evaluates whether a proposed class is cohesive enough to merit adjudication by representation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Predominance is established where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002).

Plaintiffs posit that there are numerous common questions of law and fact arising out of Defendants' conduct, making this an appropriate case for resolution by means of a class action. Most notably, liability turns on what the proper reimbursement rate is for delivery drivers and whether Defendants paid that rate. Plaintiffs believe that these issues would be determined based on common proof, and common questions predominate in this case. *See, e.g., Swigart*, 288 F.R.D. at 186. As a result, this case is appropriate for class certification.

### 10.2.2. A class action is a superior method of adjudication.

The superiority question under Rule 23(b)(3) requires the Court to consider whether a class action is superior to other methods of adjudication. Rule 23(b)(3) lists four factors to be considered: (1) the interests of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action.

Here, there is no evidence that putative class members have any interest in maintaining this litigation in separate actions. Indeed, the relative size of the individual claims in this case makes class resolution perhaps the only way these workers can recover their allegedly unpaid wages in an economical way. *See, e.g., Tedrow v. Cowles*, No. 2:06-cv-637, 2007 U.S. Dist. LEXIS 67391, at *8 (S.D. Ohio 2007) ("As Plaintiffs convincingly argue, the majority of putative class members would not likely have their day in court on these claims if a class is not certified because of a lack of sophistication, lack of resources, lack of representation and similar barriers."). Moreover, efficiency favors concentrating the claims in this Court, as there is no record of other, similar litigation pending in Ohio. A final resolution of Defendants' liability is also fair because the case deals with policies affecting large numbers of employees. It avoids competing decisions on the issues and offers finality. There is no device that can resolve these matters as efficiently and fairly as a class action. Finally, no major difficulty is likely to arise in management of the class action as the putative class is a defined size. Class certification here promotes consistent results, giving Defendants "the benefit of finality and repose." *Id.* (internal citations omitted). Adjudicating this matter as a class action is the most efficient and fair manner of resolving these claims.

**11. The proposed notice conforms to federal law.**

The proposed class notice meets the standards set forth in Rule 23(c)(2)(B). The notice clearly and accurately describes the nature of the action, the definition of the class certified, and the class claims and defenses. *See generally* Exhibit 2, Notice of Settlement. The notice also informs putative class members that they may enter an appearance through counsel if the member so desires and explains the binding effect of the release. The notice provides putative class members with an opportunity to file objections to the settlement as required by Rule 23(e)(4)(A).

The Court should direct distribution of the class notice in the manner described in the settlement agreement. The settlement agreement envisions sending the Notice by first class mail and email.

**12. The Court should set a hearing for final approval.**

The parties request that the Court set a hearing for final approval of the settlement to occur approximately 150 days after the Court grants preliminary approval of the proposed settlement. This date will allow a reasonable period for the class notices to be mailed and for class members to object or opt-out of the settlement, but it will not unduly delay the case's adjudication. The timeline envisioned for administration is as follows:

| Time | Event |
|---|---|
| Within 21 days of preliminary approval | Defendants will transmit class contact information to Class Counsel and the Claims Administrator |
| Within 14 days of receiving the class list | The Claims Administrator will send the settlement notice to the class members |
| Up to 60 days after sending the notice | Class members can opt-out or object to the settlement |
| Within 45 days of the close of the notice period | Plaintiffs will draft and file a motion for final approval |
| Approximately 150 days after preliminary approval | The Court will hold a final fairness hearing |

**13. Conclusion**

Plaintiffs ask the Court to enter an Order: (1) granting preliminary approval of the settlement; (2) provisionally approving Class Counsels' request for attorneys' fees and costs; (3) approving Plaintiff's service award; (4) directing distribution of the Class Notice to class members; and (5) setting a final fairness hearing date.

Respectfully submitted,

/s/ Andrew R. Biller
Andrew R. Biller
Andrew P. Kimble
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
www.billerkimble.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will

be sent to all parties by operation of the Court's electronic filing system.

/s/ Andrew Biller
Andrew Biller

19