IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Tammy Hatmaker, | |
| *On behalf of herself and those similarly situated,* | Case No. 3:17-cv-146 |
| Plaintiffs, | Judge Thomas Rose |
| v. | Magistrate Judge Sharon L. Ovington |
| PJ Ohio, LLC, *et al*, | |
| Defendants. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL SETTLEMENT APPROVAL

Plaintiffs Kendall Peyton, Alan Huxford, Derek Green, and Bobby White ask the Court to approve the settlement between Plaintiffs and Defendants PJ Ohio, LLC, BLD Brands, LLC, Serazen, LLC, PJ Pizza Ohio, LLC, PJ Las Vegas, LLC, PJ North Carolina, LLC, Doug Pak, and Darcie Mangus. The proposed Settlement Agreement, attached as Exhibit 1, resolves the collective/class-wide claims raised in this lawsuit. Defendants do not oppose this motion and consent to certification of the class and collective for settlement purposes only. The arguments in support of Plaintiffs' Motion are more fully set forth in the attached memorandum.

Respectfully submitted,

*/s/ Andrew R. Biller*
Andrew R. Biller
Andrew P. Kimble
BILLER & KIMBLE, LLC

8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
www.billerkimble.com

---

### Memorandum in Support of Plaintiffs' Unopposed Motion for Final Settlement Approval

---

Plaintiffs Kendall Peyton, Alan Huxford, Derek Green, and Bobby White have reached a Settlement Agreement (Exhibit 1) between themselves, the putative class/collective action members (collectively, "Plaintiffs"), and Defendants PJ Ohio, LLC, BLD Brands, LLC, Serazen, LLC, PJ Pizza Ohio, LLC, PJ Las Vegas, LLC, PJ North Carolina, LLC, Doug Pak, and Darcie Mangus (collectively, "Defendants"). If approved, the Agreement will resolve all claims against Defendants that Plaintiffs asserted in the lawsuit. Defendants do not oppose this motion and consent to certification of the class and collective for settlement purposes only. Plaintiffs also submit a declaration of Attorney Andrew Biller in support of this motion. It is attached as Exhibit 2.

### 1. Background of the Lawsuit and the Claims

Three pizza delivery drivers, Tammy Hatmaker, Stephen Hatmaker, and Kendall Peyton,[1] filed this wage and hour lawsuit on April 27, 2017. *See* Complaint, Doc. 1. This lawsuit alleges several wage and hour claims, predominantly centered on Defendants' vehicle reimbursement policy.

Defendants include various entities and individuals that Plaintiffs allege own and operate a group of approximately 70 Papa John's franchise locations. Defendants dispute that some of the individuals and/or entities qualify as "employers" for purposes of wage and hour laws.

---

[1] Ms. Hatmaker was withdrawn as a named plaintiff on August 10, 2020. *See* Doc. 156. Defendants successfully moved to dismiss Mr. Hatmaker as a result of his bankruptcy filing. *See* Doc. 170 and 171.

Plaintiffs allege that Defendants require Plaintiffs and the other delivery drivers to provide their own vehicles to deliver Defendants' pizza and other food. Plaintiffs further allege that the amount that Defendants reimbursed Plaintiffs for the use of their vehicles did not adequately compensate them for their vehicle expenses, thus dropping Plaintiffs' wages below the statutory minimum wage. Defendants contend that Plaintiffs were properly reimbursed for their vehicle-related expenses as required by federal and state law and, therefore, Plaintiffs were compensated at or above minimum wage.

The parties vigorously contested how the law applied to those facts. This Court resolved that dispute for purposes of this case through cross-motions for partial summary judgment and held that "[a]s a matter of law, the proper measure of minimum wage compliance for pizza delivery drivers is to either (1) track and pay delivery drivers' actual expenses or (2) pay the mileage reimbursement rate set by the Internal Revenue Service." *See* Order, Doc. 124.

Defendants contended then, and still contend now, however, that they are permitted to "reasonably approximate" the employee's expenses and reimburse that amount. *See e.g., Bradford v. Team Pizza, Inc.*, 2021 U.S. Dist. LEXIS 200773 (S.D. Ohio Oct. 19, 2021)*; Kennedy v. Mountainside Pizza, Inc.*, 2020 U.S. Dist. LEXIS 154792, at *14 (D. Colo. Aug. 26, 2020); U.S. D.O.L., Wage & Hour Div., Opinion Letter FLSA2020-12 (Aug. 31, 2020) (allowing employers to "reasonably approximate" vehicle expenses). Defendants further contend that their reimbursement practice met this standard and, accordingly, there has been no underpayment.

Over the course of this 4+ year litigation, the parties briefed numerous issues in the case, including through Defendants' Motion to Dismiss (Doc. 94), several motions to compel/for protective orders (Doc. 130, 137, and 145), Plaintiffs' Motion for Prejudgment Attachment (Doc.

167), and Defendants' Motion to Dismiss Plaintiff Stephen Hatmaker (Doc. 157). The parties also engaged in substantial discovery.

The parties made multiple attempts to settle this dispute, including three mediations with professional mediators and additional settlement discussions at various times throughout the case. The first mediation occurred on September 22, 2017, with Hunter Hughes in Atlanta, Georgia. The second mediation occurred on July 2, 2018, with retired Judge Gene Porter in Las Vegas, Nevada. The third mediation occurred via Zoom on April 1, 2021, with retired federal Magistrate Judge F. Bradford Stillman. Retired Judge Stillman was able to broker the deal that the parties now present to the Court.

On May 27, 2021, the parties presented the Settlement Agreement to the Court for preliminary approval. *See* Doc. 185. The Court granted preliminary approval on June 4, 2021. *See* Doc. 186.

Following approval, the parties employed a professional claims administrator (CAC Services Group) to send a notice of settlement to the putative class members. The Administrator sent notice by first class mail to approximately 7,565 individuals. The Administrator additionally sent email notice to 3,337 of them. Mail was returned as undeliverable for 1,514 of them, 46 of which had a forwarding address. CAC was also able to obtain 1,017 additional addresses through skip tracing. Thus, only 497 out of the 7,565 notices were undeliverable. No class member objected, and only one opted out.

Plaintiffs now ask the Court to provide final approval of the settlement, award fees, reimbursement of costs, and incentive awards.

2. **Standard for Settlement Approval**

Courts typically use a three-step procedure for approving class-wide settlements. *Merkner v. AK Steel Corp.*, 2011 U.S. Dist. LEXIS 157375, at *1 (S.D. Ohio Jan. 10, 2011). First, the Court determines whether to preliminarily approve the settlement. *Id.* Second, notice of the settlement is sent to interested persons. *Id.* Third, the Court must decide whether to finalize approval after holding a hearing. *Id.*

In evaluating an FLSA settlement, the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols., LLC*, 2012 U.S. Dist. LEXIS 74994, at *5 (S.D. Ohio May 30, 2012). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *Id.* at *5–6. As described below, the settlement meets this standard.

When evaluating a settlement, the most important consideration is the plaintiff's probability of success on the merits. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *20. Courts also look at other factors, including (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) any objections from class members; and (6) the public interest. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *20.

3. **Summary of Settlement Terms**

The Agreement requires Defendants to pay a total of $3,250,000 to resolve Plaintiffs' and the putative class members' claims in this lawsuit. The $3,250,000 is inclusive of expenses, service awards, and attorneys' fees.

The fund will be distributed to every class member, without requiring anyone to submit a claim form. Each class member will receive his or her prorated share, based on weeks worked and/or miles driven. The 837 class members that have already opted into the case will receive a 1.25 share to account for those class members having potentially preserved more of their FLSA claims. All other class members will receive a single share.

In exchange for these payments, all class members who either opted into the lawsuit or cashes or negotiates a settlement check will release "all wage and hour claims accrued from April 27, 2014 to April 1, 2021, arising out of the facts asserted in the Lawsuit." *See* Agreement, §6 (setting forth the specifics of the release of claims). Regardless of whether a check is cashed, class members release their state law wage claims "arising out of the facts asserted in the Lawsuit." *Id.*

To facilitate Defendants funding the settlement, the payments will be broken into two payments. The first payment of $2,250,000 will occur within 40 days of the Court granting final settlement approval. The second payment of $1,000,000 will occur on or before April 15, 2022.[2]

Any money from uncashed checks will remain available to class members until April 1, 2024. *See* Agreement, § 4(c)(iii).[3] During that time, any class member can request that their check be reissued to them. *Id.*

### 4. The Settlement provides a fair resolution of disputed claims.

There are several areas of dispute in this case, all of which support this settlement.

First, the parties dispute the relevance and importance of certain documents. Plaintiffs contend that the key facts at issue in this case (including the miles driven and the reimbursements

---

[2] The parties identified a discrepancy in the Agreement and corrected the payment date to April 15, 2022 (with the funding date to be no later than April 1, 2022).

[3] The parties identified a typo in the Agreement and changed the end-date of the Contingent Fund to April 2024 (rather than 2023).

paid) are discernible from Defendants' business records, which were provided to Plaintiffs. Defendants, on the other hand, contend that Plaintiff and the putative class members are in the exclusive possession of records of their business expenses, and that said records would show that Defendants more than likely over-reimbursed Plaintiff and the putative class members.

Based upon the records reviewed through discovery and for mediation, Plaintiffs calculate that Defendants' delivery drivers drove approximately 59 million miles during the relevant time. During that time, Defendants reimbursed the drivers approximately $15.8 million. This is an average reimbursement rate of approximately $0.27 per mile.

Second, the parties dispute how to measure Defendants' compliance with the relevant wage laws. As noted above, this Court held that the proper methodology for reimbursing delivery drivers is to either (1) track and reimburse the drivers' actual expenses or (2) reimburse the drivers at the IRS business mileage rate. *See* Order, Doc. 124.

Following this Court's November 5, 2019 decision, Defendants requested permission to appeal the decision on an interlocutory basis, which the Court denied. *See* Defendants' Motion, Doc. 125. If this action is not resolved, Defendants intend to pursue their appeal rights relating to, among other things, the November 5, 2019 decision.

On August 31, 2020, the Department of Labor issued an Opinion Letter, FLSA2020-12, which rejected this Court's decision in this case regarding the operative legal standard. Instead, the Letter endorsed Defendants' proposed "reasonable approximation" standard.

On May 7, 2021, this Court declined to defer to the Letter and affirmed the legal standard adopted in this lawsuit. *Waters v. Pizza to You, LLC*, 2021, U.S. LEXIS 87604, at *27–28 (S.D. Ohio May 7, 2021). The *Waters* decision was decided after the parties settled this case.

On October 19, 2021, another judge in this District adopted Defendants' position that they can "reasonably approximate" expenses. *Bradford v. Team Pizza, Inc.*, 2021 U.S. Dist. LEXIS 200773, (S.D. Ohio Oct. 19, 2021). The *Bradford* decision was also decided after the parties settled this case.

Although Plaintiffs are confident in the correctness of the Court's decision, Defendants will appeal it. A successful appeal could dramatically affect Plaintiffs' potential damages. If Defendants successfully appealed the legal standard, they would argue that what they paid—$.27 per mile on average—"reasonably approximated" the drivers' expenses and, thus, there is no violation at all. Plaintiffs would argue that $.27 does not "reasonably approximate" the drivers' expenses and that the class suffered damages. Experts would likely opine on what a "reasonably approximate" amount is, resulting in a range of potential damages (with $0 being a possible outcome). Thus, Plaintiffs' ultimate success is uncertain.

Based on Plaintiffs' calculations, which Defendants are likely to dispute in some measure, the approximate IRS rate of $.55 would result in under-reimbursed vehicle expenses of approximately $16.5 million. Additional damages under state law may apply, as might FLSA liquidated damages for the opt-ins. Moreover, the various laws at issue also entitle prevailing plaintiffs to recover their reasonable attorney's fees and costs.

Aside from Defendants' legal and factual arguments (which dispute the merits of Plaintiffs' allegations and claims), Defendants presented a practical barrier to recovery: whether a judgment would be collectable. Through discovery, Plaintiffs obtained financial information that tends to support Defendants' claim, including information regarding a loan with PNC Bank for $30 million.

According to publicly filed documents, PNC sued Defendants for defaulting on the loan on May 2019. Plaintiffs also obtained financial information via a subpoena directed to PNC Bank.

Whether through fighting the merits of this lawsuit through appeal or because of a lack of collectability, Plaintiffs risk a worse result if litigation continued. This risk weighs in favor of settling the case at this time and supports the settlement reached here. As it stands, the Agreement provides substantial relief to the aggrieved workers.

Courts also consider other factors,[4] which Plaintiffs address below.

**Complexity, expense, and likely duration.** Wage and hour class/collective actions are inherently complex. *See, e.g., Arledge v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018). Pizza delivery driver cases are especially complex and time consuming because of the disputed legal standard that turns on regulations, *Auer/Kisor* deference issues, Department of Labor guidance and case law, and the potential for expert testimony.

Even within the area of pizza delivery driver cases, this litigation is particularly complicated. It encompasses approximately 70 stores, thousands of drivers, three different states, a lengthy class period covering a number of years during which time Defendants' reimbursement practices and rates have changed and high potential damages. This factor weighs in favor of approving the settlement.

**Stage of the proceedings/discovery.** The parties have litigated this case for over four years. The parties have filed numerous, substantive motions—including motions for partial summary judgment and to dismiss—and have completed substantial discovery. Conditional

---

[4] *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *20.

certification was granted, notice was sent, and that process was completed. At this stage, the parties can evaluate settlement and value the case for that purpose.

**Trial counsel's judgment.** Plaintiffs' counsel supports the settlement and believes that it is a fair, adequate, and reasonable resolution.

**Negotiations.** As addressed above, the parties negotiated this case through three formal mediations with three different mediators and had numerous, informal settlement discussions. This process, along with the obviously contested litigation, demonstrates that the settlement was reached through arms-length negotiations. This factor weighs in favor of approval.

**Class member objections.** No class member has objected to the settlement. Class Counsel has fielded numerous phone calls from class members following the notice. The reaction to the settlement has been overwhelmingly positive.

**The public interest.** The public has an interest in both resolving complex class actions, which require significant Court resources that could be allocated to other matters. Moreover, the public has an interest in ensuring that minimum wage workers receive a just and speedy resolution to claims for unpaid wages. Both weigh in favor of approving the settlement.

### 5. Certification of a Settlement Class is appropriate.

Plaintiffs explained why Rule 23 class certification is appropriate in their Motion for Preliminary Approval and incorporate those arguments herein. *See* Doc. 185, PageID 3584–91. Defendants consent to class/collective action certification for settlement purposes only. Plaintiffs ask that the Court finally certify the class/collective action for settlement purposes.

### 6. The payment of attorneys' fee and costs is reasonable.

Class Counsel applies for an award of one-third of the settlement fund as attorneys' fees ($1,083,333). An award of one-third "is a normal fee amount in a wage and hour case." *See Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 U.S. Dist. LEXIS 204371, at *5 (S.D. Ohio Nov. 25, 2019); *see also Dewald v. Time Warner Cable Inc.*, 2021 U.S. Dist. LEXIS 32459, at *14 (S.D. Ohio Feb. 16, 2021) ("When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are 1/3 of the total settlement.").

When assessing the reasonableness of a fee petition in a class action, district courts engage in a two-part analysis. *See In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating fees: either the percentage of the fund approach or the lodestar approach. *Id.* (citation omitted). Second, the court analyzes the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). *Id.*

### 6.1. The Court should adopt the percentage-of-the-fund approach.

The Court must decide if it will award fees based on either the "percentage-of-the-fund" or "lodestar." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 761. "This flexible approach allows the Court to account for the unique and varied circumstances present in each class action." *Arp v. Hohla & Wyss Enters., LLP*, 2020 U.S. Dist. LEXIS 207512, *16 (S.D. Ohio Nov. 5, 2020).

"Absent compelling reasons to the contrary, this Court prefers the percentage-of-the-fund method, as it best reflects the FLSA's employee-protection objective." *Dewald*, 2021 U.S. Dist. LEXIS 32459, at *16.[5] The "percentage approach is 'the most appropriate method for

---

[5] In wage cases, the "compelling circumstances" that justify the lodestar method usually involve a situation where the employees' damages are relatively small. In such a circumstance, counsel can accrue fees many times greater than the

10

determining reasonable attorneys' fees' in wage and hour cases." *Id.*, *quoting Hebert v. Chesapeake Operating, Inc.*, 2019 U.S. Dist. LEXIS 160792, at *11 (S.D. Ohio Sept. 20, 2019), *and Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, at *14-15 (S.D. Ohio July 11, 2014). It is, therefore, the "preferred method in this district." *Id.*

"[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class []." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 762. "While the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure.'" *Id.*

Plaintiffs ask the Court to adopt the percentage-of-the-fund approach and award class counsel 1/3 of the settlement fund in attorneys' fees. An award of one-third "is a normal fee amount in a wage and hour case." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *14-15; *see also, e.g.*, *McConnell v. EUBA Corp.*, 2021 U.S. Dist. LEXIS 92836 (S.D. Ohio May 17, 2021); *Carr v. Bob Evans Farms, Inc.*, 2018 U.S. Dist. LEXIS 228221, *10-11 (N.D. Ohio July 27, 2018) ("In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund.").

### 6.2. The *Ramey* Factors

Courts also analyze the six *Ramey* factors to ensure the attorneys' fee award is reasonable: (1) the value of the benefits rendered to the class; (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (3) whether the services were

---

value of the underlying claims. It is essential to the proper functioning of wage laws that lawyers who undertake these cases be compensated for these efforts. This is the type of "compelling circumstance" that argues in favor of applying a lodestar method in a wage and hour class/collective action settlement. *See Arp*, 2020 U.S. Dist. LEXIS 207512, n. 1; *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 615 (6th Cir. 2021).

undertaken on a contingent fee basis; (4) the value of the services on an hourly basis (the lodestar cross-check); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Arledge*, 2018 U.S. Dist. LEXIS 179474, at \*11. There is not a formula for weighing the factors. *See NorCal Tea Party Patriots v. Internal Revenue Serv.*, 2018 U.S. Dist. LEXIS 139769, at \*7 (S.D. Ohio Aug. 17, 2018). Moreover, "the Court should be mindful that each case presents a unique set of circumstances and arrives at a unique settlement, and thus different factors could predominate depending on the case." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 764. Here, each of these factors weighs in favor of granting the requested fee.

First, the settlement results in a substantial benefit to the class. As described above, this is a case that might well result in a worse result for Plaintiffs if litigation continued. This is for a variety of reasons, including the factual and legal issues in the litigation itself and the likelihood of collecting a judgment.

As it stands, the class members recovered about 20.5% of unpaid wages, as calculated by Plaintiffs (which Defendants dispute as an accurate reflection of the potential unpaid wages, if any). This is an excellent result considering this case's circumstances. *Compare Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding settlement of 10% of the total amount sought is adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, 2016 U.S. Dist. LEXIS 140759, \*21 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth v. Case Farms Processing Inc.,* 2010 U.S. Dist. LEXIS 20446, \*20 (N.D. Ohio Mar. 8, 2010) (finding recovery of one-third

of owed wages for class members, before deducting attorney's fees and costs, is "well above…
average."). This factor supports the requested fee award.

Second, there is a benefit to society in ensuring that claimants with smaller claims may pool
their claims and resources, and "the societal benefit is particularly acute in wage and hour cases
brought on behalf of minimum wage workers." *Arp*, 2020 U.S. Dist. LEXIS 207512, *17-18. "The
attorneys who take on class action cases enable this." *Id.*, *citing Moore v. Aerotek, Inc.*, 2017 U.S.
Dist. LEXIS 102621, *26-27 (S.D. Ohio June 30, 2017). Society has a stake in rewarding attorneys
who achieve a result that the individual class members probably could not obtain on their own. *Id.*
(citation omitted). This factor supports the requested fee award.

Third, class counsel's services were provided on a contingency fee basis. *See* Biller Dec. at
¶ 12. This factor supports the requested fee award.

Fourth, while a lodestar cross-check is not required,[6] it supports the requested attorneys'
fees award. Class counsel worked a total of 2,215.5 hours on this case thus far, for a total lodestar
of $943,279 Class counsel's hours and rates are listed in the below chart, taken from Class
Counsel's contemporaneous time records:[7]

---

[6] *Arp*, 2020 U.S. Dist. LEXIS 207512, at *18.

[7] The rates reflected herein are current rates rather than the historical, lower rates, that might have applied had
Plaintiffs sought a fee award at the start of the litigation in 2017. *See, e.g., Barnes v. City of Cincinnati*, 401 F.3d 729,
745 (6th Cir. 2005) (approving the use of current rather than historical rates). That said, the rates for Biller & Kimble's
attorneys were approved in 2019. *See, e.g., Brandenburg*, 2019 U.S. Dist. LEXIS 204371, *17 (approving rates of $600
per hour for myself, $550 per hour for Andrew Kimble, and $350 per hour for Philip Krzeski).

| Timekeeper | Rate | Hours | Lodestar |
|---|---|---|---|
| Erica Blankenship | $350 | 249.7 | $87,395 |
| Andrew Biller | $600 | 403.2 | $241,902[8] |
| Andrew Kimble | $550 | 392.9 | $216,095 |
| Riley Kane | $200 | 1.1 | $220 |
| Philip Krzeski | $350 | 243.3 | $85,155 |
| Louise Roselle | $500 | 45.2 | $22,600 |
| Nathan Spencer | $350 | 17.6 | $6,160 |
| Mark Potashnick | $600 | 370.4 | $222,240 |
| BK Paralegal | $125 | 492.1 | $61,512 |
| Totals | | 2,215.5 | $943,279 |

If it would assist the Court, Class Counsel can make their time records available for the Court's review. Given the voluminous nature of those records, length of litigation, number of docket entries evidencing substantial work, and time it would take to compile and review those records, Class Counsel suggest that such a detailed review is not necessary here. "In determining fee awards, courts should not 'become green-eyeshade accountants[,]' but instead must content themselves with 'rough justice[.]'" *Rembert*, 986 F. 3d 613, at 618.

Class counsel's hourly rates have been approved as reasonable in numerous cases. *See McConnell*, 2021 U.S. Dist. LEXIS 92836, at *19 (approving hourly rates for Andy Biller at $600 per hour; Andrew Kimble at $550 per hour; Phil Krzeski at $350 per hour; and Erica Blankenship for $350 per hour); *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *17; *Arp*, 2020 U.S. Dist. LEXIS 207512, at *19. A court in the Southern District of Ohio has not yet evaluated Mark Potashnick's hourly rate, but he has substantial experience in this area of law, having worked on

---

[8] The time for Attorney Biller and Kimble includes an estimate of email time by counting each email as .1 and then imposing an 50% reduction on that amount to account for billing judgment.

pizza delivery driver cases for over a decade. His experience justifies a rate at least equal to that approved for other experts in that field.

Class counsel's work will continue after final approval. "Class Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters." *McConnell*, 2021 U.S. Dist. LEXIS 92836, at \*19. This further supports a lodestar cross-check in this case.

In addition to the hours Class Counsel has worked on this pizza delivery driver case, Biller & Kimble, LLC has worked many thousands of hours on pizza delivery driver cases throughout the country (as has Attorney Potashnick). Class Counsel has "established an expertise in 'pizza delivery driver' litigation, having expended thousands of hours on similar cases which informed and enhanced their representation of Plaintiff here." *Mullins v. S. Ohio Pizza, Inc.*, 2019 U.S. Dist. LEXIS 11019, 2019 WL 275711, at \*5 (S.D. Ohio Jan. 18, 2019); *see also Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at \*6 (discussing Biller & Kimble's expertise in this area). These hours "directly benefited the class in this case." *Arp*, 2020 U.S. Dist. LEXIS 207512, at 20. "A firm's expertise in a niche area provides important context when analyzing the reasonableness of a fees." *Id.* at \*21. "It would be inequitable for a court to reduce a fee award based on a lodestar cross-check without considering a law firm's work other cases raising the same or similar issues." *Id.* Here, Class Counsel's expertise in this niche area enhanced their representation here.

The lodestar multiplier in this case is 1.15. This is well within the range of a reasonable fee award for this type of case. *McConnell*, 2021 U.S. Dist. LEXIS 92836, at \*19-20 (approving lodestar multiplier of 2.9); *Lowther v. AK Steel Corp.*, 2012 U.S. Dist. LEXIS 181476, at \*5 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multipliers ranging from 4.3 to

8.5 to be reasonable); *Arp*, 2020 U.S. Dist. LEXIS 207512, at *19 (approving lodestar multiplier of 5.29). "[G]iven the nature of a contingent fee, a multiplier is generally necessary to attract competent counsel to take on the risk and expense of representing workers who are unable to afford representation on an hourly basis." *McConnell*, 2021 U.S. Dist. LEXIS 92836, at *20. "This is particularly true in wage cases like this one, which are inherently complex, difficult, and expensive to litigate." *Id.*

Fifth, as discussed throughout this Motion, wage and hour class/collective actions are "inherently complex." *Arledge*, 2018 U.S. Dist. LEXIS 179474, at *5. This factor supports approval of the requested fee award. This case involved novel and complex issues of law that have been hotly contested throughout the country.

Sixth, both the class and Defendants are represented by skilled and experienced counsel. As noted above, Class Counsel has substantial experience in pizza delivery driver litigation. Fisher & Phillips LLP also has expertise in pizza delivery driver litigation, representing numerous employers on this issue in cases throughout the country. This factor supports the requested fee award.

Since all the *Ramey* factors support the requested fee award, Plaintiff requests the Court award class counsel 1/3 of the settlement fund as attorneys' fees.

### 6.3. Class Counsel's request for reimbursement of advanced litigation expenses and the administration expenses should be approved.

Class Counsel also seeks reimbursement of advanced litigation expenses and administration costs. In this case, Class Counsel has incurred a total of $37,724.92 in litigation costs and expenses, all of which Class Counsel advanced. The expenses are detailed and itemized

in Attorney Biller's declaration. The expenses include expert fees, travel expenses, and mediation costs.

In addition to the amount of litigation expenses, Class Counsel also asks that the Court award the costs related to administering the settlement and sending notice to the class members. This amount is $36,490.75.

### 7. The incentive payment is reasonable, and similar payments are routinely awarded.

Plaintiffs requests a $10,000 incentive/service award for each of the four remaining named plaintiffs. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).

Incentive awards account for the fact that "[b]ut for an individual worker coming forward to advocate for his fellow workers, many, if not most, wage and hour issues would go unaddressed. A worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such information through a simple internet search, this risk is very real." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *21. The same considerations apply here.

The incentive award proposed here is typical in these types of cases. *See, e.g., Chrismon v. Meadow Greens Pizza*, 2020 U.S. Dist. LEXIS 119873, at *14 (E.D.N.C. July 7, 2020) (collecting cases approving a $10,000 service award in pizza delivery driver cases).

8.  **Conclusion**

Plaintiffs ask the Court to enter an Order: (1) granting final approval of the settlement; (2) approving Class Counsels' request for attorneys' fees and costs; and (3) approving Plaintiffs' service awards.

Finally, to facilitate administering and completing the settlement process, Plaintiffs ask that the Court retain jurisdiction over the settlement.

Respectfully submitted,

*/s/ Andrew R. Biller*
Andrew R. Biller
Andrew P. Kimble
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*abiller@billerkimble.com*
*akimble@billerkimble.com*
www.billerkimble.com

## Certificate of Service

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ Andrew Biller*
Andrew Biller