In the United States District Court
for the Southern District of Ohio
Western Division

| | |
|---|---|
| Tammy Hatmaker, *On behalf of herself and those similarly situated*, Plaintiffs, v. PJ Ohio, LLC, *et al*, Defendants. | Case No. 3:17-cv-146 Judge Thomas Rose Magistrate Judge Sharon L. Ovington |

Order Granting Final Settlement Approval

This case is before the Court on Plaintiffs' Unopposed Motion for Final Settlement Approval. *See* Doc. 190. On November 16, 2021, this Court held a hearing to evaluate the settlement and any awards therefrom. For the reasons discussed below, this Court grants Plaintiffs' Motion, grants final approval of the settlement, and approves the requests for awards of attorney's fees, expenses, and incentive payments.

**1. Background of the Lawsuit and the Claims**

Three pizza delivery drivers, Tammy Hatmaker, Stephen Hatmaker, and Kendall Peyton,[1] filed this wage and hour lawsuit on April 27, 2017. *See* Complaint, Doc. 1. This lawsuit alleges several wage and hour claims, predominantly centered on Defendants' vehicle reimbursement

---

[1] The named plaintiffs are Kendall Peyton, Alan Huxford, Derek Green, and Bobby White. Ms. Hatmaker was withdrawn as a named plaintiff on August 10, 2020. *See* Doc. 156. Defendants successfully moved to dismiss Mr. Hatmaker. *See* Doc. 170 and 171.

FP 42228270.2

policy. On October 24, 2017, the parties filed a Joint Motion to Approve Stipulated Form of Notice of Collective Action. (Doc. 28). On October 25, 2017, the Court granted the parties' motion, conditionally certified the collective action, and ordered that notice be sent. (Doc. 30).

Plaintiffs allege that Defendants require Plaintiffs and the other delivery drivers to provide their own vehicles to deliver Defendants' pizza and other food. Plaintiffs further allege that the amount that Defendants reimbursed Plaintiffs for the use of their vehicles did not adequately compensate them for their vehicle expenses, thus dropping Plaintiffs' wages below the statutory minimum wage. Defendants deny all allegations of unlawful conduct and expressly deny that they under-reimbursed their delivery drivers. Defendants allege that Plaintiffs were reimbursed for their vehicle-related expenses as required by federal and state law and, therefore Plaintiffs were compensated at or above minimum wage.

The parties represent that they made multiple attempts to settle this dispute, including three mediations with professional mediators and additional settlement discussions at various times throughout the case. The first mediation occurred on September 22, 2017, with Hunter Hughes in Atlanta, Georgia. The second mediation occurred on July 2, 2018, with retired Judge Gene Porter in Las Vegas, Nevada. The third mediation occurred via Zoom on April 1, 2021, with retired federal Magistrate Judge F. Bradford Stillman. Retired Judge Stillman was able to broker the settlement now before the Court.

On May 27, 2021, the parties presented the Settlement Agreement to the Court for preliminary approval. *See* Doc. 185. The Court granted preliminary approval on June 4, 2021. *See* Doc. 186.

**2. Settlement Agreement**

The parties' Settlement Agreement creates a Settlement Fund of $3,250,000.00. The distributions are as follows:

**i.** Opt-In Subclass

a) The Opt-In Subclass consists of approximately 837 Class Members who returned a consent to join form to Plaintiffs' Counsel on or before April 16, 2018. * * *

**ii.** Distribution

a) The amount of the Settlement Amount remaining after the payment of court-approved attorneys' fees, costs, expenses, service awards, and claims administration costs (referred to as the "Class Fund"), will be distributed to the Class Members (including the Opt-in Subclass) who do not exclude themselves as follows:

1. Each Class Member's check will be equal to the Class Member's prorated share of the Class Fund based on an anticipated hybrid formula of Weeks Worked and/or Miles Driven during the Class Period. However, no Class Member shall receive a total of less than $20.00.

2. The exception is that the allocation for the Opt-in Subclass members in the Class Period will count as 1.25x for the period prior to April 16, 2018. The intent of this distribution method is to recognize that the Opt-in Subclass members potentially preserved more of their claims arising prior to April 16, 2018.

3. Within 40 days of the Court granting final approval of this Settlement Agreement, the Administrator will issue the first of two checks to each Class Member who does not exclude themselves according to the above formula, representing a portion of the total amount due.

4. On or before April 15, 2022, the Administrator will issue the second of two checks to each Class Member who does not exclude themselves according to the above formula, representing the remainder of the total amount due.

    b)    Checks may be cashed or negotiated within 160 days of being issued. After 160 days, the check will be void. The face of each check will contain the following language: "Void after 160 days." The proceeds of any voided checks will be distributed to the Contingency Fund.

**iii.** Contingency Fund

    a)    The amount of any uncashed checks from the Class Fund will be retained in QSF and referred to as the "Contingency Fund."

    b)    Class Members may request that the Administrator reissue stale checks (i.e., checks that were not cashed within 160 days) and the Administrator shall reissue said checks upon approval of Class Counsel and Defendants' Counsel.

    c)    Class Members can make a claim against the Contingency Fund via email, U.S. mail, or through Class Counsel by providing name and social security number (or if social security number is not available, such other form of identification as reasonably requested by the claims administrator to confirm the identity of the Class Member). The Administrator may request any additional identifying information or documents (if any) that the Administrator reasonably believes necessary to confirm the identity of the Class Member and status as Class Member.

    d)    Distributions from the Contingency Fund shall be in the amount to replace a check previously distributed (less administrative expenses incurred for such replacements to the extent such are incurred by Claims Administrator) and will be distributed within thirty (30 days) of request for replacement and proof of identity. To the extent that there is a dispute regarding this process, the Parties and their Counsel will attempt to informally resolve the dispute. If informal resolution is unsuccessful, the Parties will submit the dispute to the Mediator and if the dispute cannot be resolved by the Mediator, to the Court for adjudication.

    e)    Checks may be cashed or negotiated within 160 days of being issued. After 160 days, the check will be void. The face of each check will contain the following language: "Void after 160 days."

    f)    The proceeds of any voided and/or uncashed checks after the final April 1, 2024 distributions described above will be distributed *cy pres* to Habitat for Humanity. Said distributions shall be made 200 days after the final distributions are made.

      **iv.**    Each check paid to a Class Member will be treated as expense reimbursement up to the IRS rate, which shall be a blended IRS rate of $.55 for purposes of this settlement the parties have agreed to. Any amounts paid above that will represent liquidated damages and will not be considered wages or subject to withholding. A Form 1099 will issue to Class Members for monies paid as liquidated damages.

Each Class Member who does not opt-out of the Settlement releases all wage and hour claims accrued from April 27, 2014 until April 1, 2021 arising out of the facts asserted in the Lawsuit that were made against Defendants or the Released Parties, including claims relating to the failure to pay wages, the under-reimbursement of mileage and any other business-related expenses, unlawful deductions, "dual jobs/80-20" claims, tip credit notice claims, wage notification, posting, deduction, withholdings, recordkeeping and paycheck claims, untimely payment claims and any related common law and equitable claims (e.g., breach of contract, unjust enrichment, etc.), including any related claims for liquidated damages, penalties, attorneys' fees and costs (including claims administration fees), taxes (if applicable), service awards, and interest, that could be pursued under the wage and hour laws of Ohio, Nevada, North Carolina and Indiana, and any applicable federal, state, local or municipal law or regulation, whether known or unknown; and any and all derivative claims relating to unpaid wages, minimum wage or overtime compensation against the Defendants or Released Parties relating to the facts asserted in this Lawsuit, including the right to arbitrate said claims and any costs or sanctions in connection with the Court Order dated July 7, 2020 (ECF Nos. 148-154).

The Settlement Agreement also allows any class member who does not timely cash their check to request the Claims Administrator reissue their check at any time until April 1, 2024.

The Court retains continuing jurisdiction over the Lawsuit to enforce, interpret, and otherwise implement the Settlement.

The parties employed a professional claims administrator (CAC Services Group) to send a notice of settlement to the putative class members. Defendants also complied with the Class Action Fairness Act ("CAFA") by sending notices to the appropriate government officials.

The Settlement Agreement provides for payment of attorney fees in the amount of 1/3 of the Settlement Fund, reimbursement of litigation expenses, administrative costs, and service awards of $10,000 to each of the four remaining Named Plaintiffs.

**3. Discussion**

The Court acknowledges that Defendants have (a) asserted a number of separate and affirmative defenses to this action; (b) agreed to the settlement without admission of liability or wrongdoing; and (c) consented to class certification pursuant to Fed. R. Civ. P. 23 for settlement purposes only.

**A.  Class Certification is Appropriate for Settlement Purposes.**

The Court hereby certifies the following Rule 23 settlement class:

> All current and former Delivery Drivers employed by PJ Ohio, LLC,
> PJ North Carolina, LLC, or PJ Las Vegas, LLC, or Serazen, LLC from
> April 27, 2014 to April 1, 2021 who do not exclude themselves.

The Settlement Class meets all of the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)(3) for the purposes of settlement.[2]

Federal Rule of Civil Procedure 23(a)(1) is satisfied because there are approximately 7,565 class members, and thus joinder is impracticable.

---

[2] The Court acknowledges that Defendants agreed to class certification pursuant to Rule 23 for settlement purposes only.

6

Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(2) because Plaintiffs and the class members share common issues of fact and law. Plaintiffs allege that Defendants' reimbursement policy harmed all the class members in the same way. Defendants do not contest that commonality is satisfied for settlement purposes.

For the same reason, Plaintiffs satisfy the typicality requirement in Federal Rule of Civil Procedure 23(a)(3) because Plaintiffs' claims arise from the same factual and legal circumstances that form the basis of the class members' claims. Defendants do not contest that typicality is satisfied for settlement purposes.

Plaintiffs satisfy Federal Rule of Civil Procedure 23(a)(4) because there is no evidence that they have interests antagonistic to or at odds with those of the class members.

Plaintiffs also satisfy Federal Rule of Civil Procedure 23(b)(3). Class members' common factual allegations and legal theory—that Defendants under-reimbursed the delivery drivers—predominate over any factual or legal variations among class members. Defendants do not contest predominance is satisfied for settlement purposes.

The Court appoints Biller & Kimble, LLC and Weinhaus & Potashnick as class counsel because they meet all of the requirements of Rule 23(g).

Finally, the Court finds that the Class Notice and process undertaken by the Claims Administrator met the requirements of Rule 23(e)(1), and the government notices provided me the requirements of CAFA.

The Court GRANTS certification of a Rule 23 settlement class of Defendants' delivery drivers allegedly employed by Defendants from April 27, 2014 to April 1, 2021.

B.     **The Settlement provides a fair resolution of disputed claims.**

Rule 23(e) requires court approval for a class action settlement so that it is procedurally and substantively fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2). As evidenced by the docket and described in Plaintiffs' Motion, this case was highly contested. The parties disputed the relevance and importance of the available documents, the applicable legal standards, and how to apply those standards to this case.

Plaintiffs estimate that the drivers have unpaid wages of approximately $16.5 million. Defendants, however, dispute that the drivers have been underpaid at all. Moreover, Defendants dispute that Plaintiffs' calculations are correct. Assuming Plaintiffs' calculations are correct, however, the settlement results in a 20.5% recovery of Plaintiffs' alleged unpaid wages. Given that the underlying amount is disputed in multiple ways, this represents a substantial recovery.

Plaintiffs also represent that there are collectability concerns in this case, further tempering any expectations of a higher recovery, had the litigation continued. Collectability is an important concern when evaluating a settlement. Any settlement must be measured by what can be *actually* recovered rather than what can hypothetically be recovered.

Plaintiffs obviously risk a worse result if litigation continued. This risk weighs in favor of approving the settlement. As it stands, the Agreement provides a fair, reasonable, and adequate resolution of disputed claims.

Courts also consider other factors,[3] addressed below.

**Complexity, expense, and likely duration.** Wage and hour class/collective actions are inherently complex. *See, e.g., Arledge v. Domino's Pizza, Inc.*, 2018 U.S. Dist. LEXIS 179474, at *5

---

[3] *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *20.

(S.D. Ohio Oct. 17, 2018). As evidenced by this case, pizza delivery driver cases are especially complex and time consuming because of the disputed legal standard that turns on regulations, *Auer/Kisor* deference issues, Department of Labor guidance and case law, and the potential for expert testimony.

Even within the area of pizza delivery driver cases, this litigation is particularly complicated. It encompasses approximately 70 stores, thousands of drivers, three different states, and high potential damages. This factor weighs in favor of approving the settlement.

**Stage of the proceedings/discovery.** The parties litigated this case for over four years. The parties have filed numerous, substantive motions—including motions for partial summary judgment and to dismiss—and have completed substantial discovery. Conditional certification was granted, notice was sent, and that process was completed. All of this allowed the parties to fulsomely evaluate and negotiate a settlement.

**Trial counsel's judgment.** Class Counsel supports the settlement and believes that it is a fair, adequate, and reasonable resolution.

**Negotiations.** The parties negotiated this case through three formal mediations with three different mediators and had numerous, informal settlement discussions. This process, along with the obviously contested litigation, demonstrates that the settlement was reached through arms-length negotiations. This factor weighs in favor of approval.

**Class member objections.** No class member has objected to the settlement. Class Counsel represented that the class members' reaction to the settlement was positive.

**The public interest.** The public has an interest in both resolving complex class actions, which require significant Court resources that could be allocated to other matters. Moreover,

the public has an interest in ensuring that minimum wage workers receive a just and speedy resolution to claims for unpaid wages. Both weigh in favor of approving the settlement.

### C. The payment of attorneys' fee and costs is reasonable.

Class Counsel applies for an award of one-third of the settlement fund as attorneys' fees ($1,083,333) and for reimbursement of advanced litigation costs in the amount of $37,724.92. Defendants do not object to the requested fee or cost award. In granting preliminary approval, the Court provisionally approved Plaintiffs' Counsel's request for fees and costs. The notice period is closed, and no class members objected to the settlement or the requested fees and costs.

An award of one-third "is a normal fee amount in a wage and hour case." *See Brandenburg v. Cousin Vinny's Pizza, LLC*, 2019 U.S. Dist. LEXIS 204371, at *5 (S.D. Ohio Nov. 25, 2019); *see also Dewald v. Time Warner Cable Inc.*, 2021 U.S. Dist. LEXIS 32459, at *14 (S.D. Ohio Feb. 16, 2021) ("When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are 1/3 of the total settlement.").

The Court finds this request for attorney's fees to be fair, adequate, and reasonable and therefore GRANTS Plaintiff's Counsel's request for attorneys' fees in the amount of $1,083,333. The Court also APPROVES Plaintiff's Counsel's request for $37,724.92 in advanced litigation costs and claims administration costs estimate of $36,490.75 as fair, adequate, and reasonable.

### D. Services Awards

The Court also approves the request for service awards in the amount of $10,000 to Kendall Peyton, $10,000 to Alan Huxford, $10,000 to Derek Green, and $10,000 to Bobby White. These Plaintiffs provided valuable insight to Class Counsel throughout the case, and their

efforts resulted in substantial payments to a class of over 7,500 minimum wage pizza delivery drivers. "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997).

Incentive awards account for the fact that "[b]ut for an individual worker coming forward to advocate for his fellow workers, many, if not most, wage and hour issues would go unaddressed. A worker who advocates for his or her colleagues assumes substantial risk, including the risk that a prospective employer may be hesitant to hire an employee who sued a past employer. Given that employers can find such information through a simple internet search, this risk is very real." *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *21. The same considerations apply here.

The requested incentive award is reasonable. *See, e.g., Chrismon v. Meadow Greens Pizza*, 2020 U.S. Dist. LEXIS 119873, at *14 (E.D.N.C. July 7, 2020) (collecting cases approving a $10,000 service award in pizza delivery driver cases). Accordingly, the Court GRANTS Plaintiff's request for service awards.

6. **Conclusion**

The Court hereby GRANTS Plaintiffs' Unopposed Motion for Final Settlement Approval. The Court further GRANTS Plaintiffs' attorney's fee request of $1,083,333, grants an award of class counsel expenses of $37,724.92, reasonable administrative expenses paid to the claims administrator CAC Services Group, and the $10,000 incentive awards for the four class representatives noted above.

The action is hereby **DISMISSED WITH PREJUDICE**, with the Court to retain jurisdiction over the implementation, administration, enforcement of this Judgment and the Settlement Agreement, and all matters ancillary thereto. The Parties are ordered to carry out the settlement according to its terms.

IT IS SO ORDERED, this 18th day of November, 2021.


s/Thomas M. Rose

_____

Judge Thomas Rose